James R. Patterson, State Bar No. 211102
Alisa A. Martin, State Bar No. 224037
HARRISON PATTERSON O'CONNOR & KINKEAD LLP
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: (619) 756-6990
Facsimile: (619) 756-6991

Gene J. Stonebarger, State Bar No. 209461
LINDSAY & STONEBARGER
A Professional Corporation
620 Coolidge Drive, Suite 225
Folsom, CA 95630
Telephone: (916) 294-0002
Facsimile: (916) 294-0012

Attorneys for Plaintiff and the Class

FILED
2009 SEP 11 AM 11:53
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ KNK _____DEPUTY

# UNITED STATE DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

MARK WINKLER, on behalf of himself and all others similarly situated,

    Plaintiff,

vs.

CITIGROUP INC., a Delaware corporation; CITIMORTAGE, INC., a New York corporation; and CITIBANK N.A.; and DOES 1 through 50, inclusive,

    Defendants.

CASE NO.: 09 CV 1999 BTM CAB

**CLASS ACTION**

**COMPLAINT FOR:**

1/ **DECLARATORY RELIEF UNDER TILA AND REGULATION Z;**
2/ **VIOLATIONS OF TILA AND REGULATION Z;**
3/ **BREACH OF CONTRACT;**
4/ **BREACH OF IMPLIED COVENANTS;**
5/ **UNJUST ENRICHMENT/RESTITUTION; AND**
6/ **UNFAIR BUSINESS PRACTICES.**

**[DEMAND FOR JURY TRIAL]**

Plaintiff, on behalf of himself, and all others similarly situated, alleges upon personal knowledge as to himself and his acts, and as to all other matters upon information and belief, as follows:

-1-
CLASS ACTION COMPLAINT

## I. INTRODUCTION

1. This class action concerns defendants Citigroup Inc. ("Citigroup"), CitiMortgage, Inc. ("CitiMortgage") and Citibank N.A.'s ("Citibank") (collectively "Citi" or "Defendants") reduction and suspension of home equity lines of credit ("HELOC") across the country. Citi not only violated federal law by significantly reducing and suspending these HELOCs, but also broke contractual promises by continuing to require these same customers to pay all fees, costs, and penalties associated with the HELOCs. Essentially Citi denied these customers access to hundreds of millions of dollars worth of credit at a critical time while continuing to reap unwarranted financial gains.

2. Because Citi engaged in wrongful and unfair conduct, Plaintiff brings this class action on behalf of himself and all others similarly situated for actual and statutory damages, and attorneys' fees under Regulation Z of the Truth-in-Lending Act (15 U.S.C. § 1640(a); 12 C.F.R. § 226.5b), equitable and injunctive remedies under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 et. *seq.*), and damages for breach of contract and breach of the implied covenant of good faith and fair dealing.

## II. NATURE OF ACTION

3. Citi lowered and essentially froze many homeowners' HELOC without first determining if it had a lawful basis to do so. For instance, in 2008 Citi significantly reduced Plaintiff's HELOC, indicating that the reduction was due to a general decline in home values. Citi never disclosed to Plaintiff the present value of his home, the amount by which the home supposedly declined, or the methods used to compute that amount. Plaintiff believes that Citi never assessed the actual value of his home as required by law, but instead relied on a survey of home values in the general area where Plaintiff's home was located (hereinafter referred to as "geographic area survey"). Citi's failure to assess the actual value of Plaintiff's home before significantly reducing his HELOC was unlawful under Regulation Z of TILA.

4. The Truth-in-Lending Act ("TILA") and its implementing regulation (Regulation Z) prohibit Citi from changing any HELOC terms and limits. 15 U.S.C. § 1647(c) (1); 12 C.F.R. § 226.5b (f) (3). There is an exception to that rule: Citi may reduce or freeze HELOC limits

CLASS ACTION COMPLAINT

when "the value of the consumer's principal dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling." 15 U.S.C. § 1647(c) (2) (B); 12 C.F.R. § 226.5b (f) (3) (vi) (A).

5. Thus, Citi cannot reduce or freeze HELOCs absent a "significant decline" in the value of the home securing the credit line. The Official Staff Commentary interpreted "significant decline" to mean a decline in home value so that "the initial difference between the credit limit and the available equity (based on the property's appraised value…) is reduced by fifty percent." The Official Staff Commentary further explained that Regulation Z "does not require a creditor to obtain an appraisal before suspending credit privileges [but] a significant decline must occur before suspension can occur." Furthermore, on August 26, 2008, the Office of Thrift Supervision issued official guidance that warned it would violate Regulation Z to "reduce the credit limits of all HELOC accounts in a geographic area in which real estate values are generally declining without assessing the value of the collateral that secures each affected HELOC account." (Emphasis in original).

6. Citi's HELOC reductions and suspensions are not only illegal, but unconscionable. Citi received approximately $45 billion from an unprecedented $700 billion bailout funded entirely by American taxpayers under the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343. Citi received these funds to help strengthen its capital ratios, to expand available credit to homeowners and businesses, and to fund new lending initiatives. Despite that, Citi intentionally failed to meet its obligations to its customers by depriving them of crucial affordable consumer credit at the critical time.

7. Even assuming Citi was justified in massively reducing, and essentially freezing, its customers' HELOCs, it still engaged in unlawful conduct. Citi breached its contractual obligations with customers by requiring customers to continue paying fees for HELOCs that cannot be meaningfully utilized. To elaborate, before Citi issues a HELOC, it generally requires each recipient to execute a "Home Equity Line of Credit Agreement and Disclosure Statement" or some other similar agreement ("Agreement"). The Agreement typically provides that Citi will advance funds, up to a specified agreed upon amount, to HELOC customers in exchange for one-

time fees, annual fees and/or closing costs, if elected to receive an interest rate reduction. So HELOC customers pay an agreed upon amount in fees and closing costs, if elected, with the understanding that they will be given access to an agreed upon amount in funds.

8. After Citi significantly reduced or froze its customers' HELOCs, Citi continued to collect and retain one-time fees, annual fees, closing costs, early closure fees, and other fees and penalties from customers, despite the fact that Citi prevented its customers from meaningfully utilizing their HELOCs. Citi also made no attempt to reimburse or prorate these fees, costs, and penalties.

9. In sum, this class action arises from Citi's intentional, systematic, mass reduction and suspension of HELOC limits. This class action also separately arises from Citi's continual charging and retention of fees, costs, and penalties associated with maintaining or closing these HELOCs.

### III. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d) (2). This Complaint alleges claims on behalf of a national class of homeowners who are minimally diverse from Citi. The aggregate of these claims exceed the sum or value of $5,000,000. This Court also has federal question subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises in part under Regulation Z of the Truth in Lending Act, 15 U.S.C. § 1647, 12 C.F.R. § 226.5b. This Court further has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

11. **(a)** Citigroup is a Delaware corporation whose principal executive offices are located in New York, and is considered a citizen of New York for the purpose of diversity jurisdiction under 28 U.S.C. § 1334

**(b)** Citimortgage is a New York corporation whose principal executive offices are located in Missouri, and is considered a citizen of Missouri for the purpose of diversity jurisdiction under 28 U.S.C. § 1334.

**(c)** Citibank is a national banking association whose principal executive offices are located in Las Vegas, Nevada, and is considered a citizen of Nevada for the purpose

1  of diversity jurisdiction under 28 U.S.C. § 1334.

2  12.  Venue is also proper before this Court under 28 U.S.C. § 1391(b) (2) as a substantial part of the events, circumstances, and omissions giving rise to these claims occurred in this District.

3  13.  This Court has personal jurisdiction over Citi under California Code Civil Procedure § 410.10 because some of the acts alleged herein were committed in California (specifically in the Southern District of California), and because Citi are registered to do business in this state and actively conduct business in this District.

## IV. THE PARTIES

14.  **Plaintiff Mark Winker:** Mr. Winkler resides in San Diego, California. Plaintiff obtained a HELOC from Citi in the amount of $250,000. Plaintiff obtained the HELOC to pay for anticipated home and business related ventures and expenses.

15.  **Defendant Citigroup:** Citigroup (together with its subsidiaries) is a global diversified financial services holding company whose businesses provide a broad range of financial services to consumer and corporate customers. Citigroup has more than 200 million customer accounts, does business in more than 100 countries, and is a bank holding company within the meaning of the U.S. Bank Holding Company Act of 1956.

16.  **Defendant Citibank:** Citibank is a Citigroup subsidiary and, among other things, delivers banking, lending and investment services to individual consumers and small businesses with up to $10 million in annual sales.

17.  **Defendant Citimortgage:** Citimortgage also is a Citigroup subsidiary and performs client account servicing for Citibank.

18.  **The Class:** Plaintiff brings this class action against Citi under Federal Rules of Civil Procedure, Rule 23, on behalf of himself and all persons residing in the United States who had a HELOC with Citi reduced or suspended during the Class Period. Excluded from the Class are Citi, its corporate parents, subsidiaries and affiliates, officers and directors, any entity in which Citi has a controlling interest, and the legal representatives, successors or assigns of any such excluded persons or entities, and the attorneys for Plaintiff.

19. **DOE Defendants**: Plaintiff is ignorant about the true names of defendants sued as DOES 1 through 50, inclusive, and their wrongful conduct, and therefore sues these defendants by fictitious names. Plaintiff will seek Court leave to amend this complaint to allege their true names and capacities when ascertained. Additionally, Plaintiff alleges on information and belief that at all relevant times, DOES 1-50, inclusive, were defendants' agents, servants, employees, representatives, partners, and related or affiliated entities, and in doing the things hereinafter mentioned, were acting in the course and scope of their agency, employment, or retention with defendants' permission, consent, authority and ratification.

20. **Defendants' Aiding and Abetting**: All defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other defendants in breaching their obligations to Plaintiff and the Class and the Subclasses, as alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, defendants each acted with an awareness of the primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals and wrongdoing.

## V. PLAINTIFF'S INDIVIDUAL ALLEGATIONS

*Plaintiff's HELOC*

21. Plaintiff took out both a first mortgage for approximately $500,000 and a HELOC for $250,000 on his home through Citi. Plaintiff anticipated using his HELOC for home and business related ventures and expenses. At that time, Plaintiff's home was worth over $1,000,000. Thereafter, Plaintiff paid off the first mortgage and maintained a zero balance on the HELOC.

*Citi Significantly Reduced Plaintiff's HELOC*

22. In 2008, Plaintiff learned that Citi unilaterally reduced his HELOC from $250,000 to $10,000. At that time, Plaintiff's home was fully paid off and still worth at least $1,000,000. Plaintiff believes that Citi's decision to reduce his HELOC was solely based on a geographic area survey covering home values in the area where Plaintiff's home was located, not on an actual assessment of Plaintiff's home value. Had Citi assessed Plaintiff's home, it would have

seen that at least $1,000,000 in equity secured the $250,000 HELOC. Thus, Citi had no reasonable justification for significantly reducing Plaintiff's HELOC.

23. By reducing Plaintiff's HELOC by 96%, Citi denied Plaintiff access to $240,000, thereby preventing Plaintiff from enjoying the benefits of his contractual relationship with Citi. Plaintiff agreed to the HELOC terms in return for access to a $250,000 credit line. Plaintiff never wanted, nor agreed to, a $10,000 credit line. Citi likely stopped short of completely freezing Plaintiff's HELOC so that it could somehow justify charging fees and penalties associated with the HELOC.

### *Plaintiff's Alternatives After the Reduction*

24. Plaintiff was left with two alternatives: Plaintiff could (1) keep the significantly reduced HELOC, or (2) close the HELOC. Plaintiff chose the latter alternative. In connection with closing the HELOC, Citi charged Plaintiff a $191.00 Early Closure Release Fee. Plaintiff asked Citi to waive the fee, but Citi refused to do so. Because Plaintiff did not want to incur additional fees, costs, or other burdens associated with maintaining the HELOC, Plaintiff was forced to close the HELOC and pay the Early Closure Release Fee.

25. At bottom, Plaintiff entered into a contractual relationship with Citi for, among other things, a $250,000 HELOC. Citi essentially froze Plaintiff's HELOC when it reduced the available credit by 96%. The reduction was unwarranted since Plaintiff owed nothing on his home, worth at least $1,000,000. Despite the reduction, Citi required Plaintiff to maintain the HELOC, along with its associated burdens, or alternatively, to pay $191.00 Early Closure Release Fee to close the HELOC. In short, Plaintiff was forced to pay money to Citi.

## VI. CLASS ALLEGATIONS

26. **Class and Subclasses**: Plaintiff brings this lawsuit on behalf of an ascertainable nationwide class and subclasses under Federal Rule of Civil Procedure 23(b):

   **a.** **Class**: The class consists of:

   All Citi customers who had a home equity line of credit reduced or suspended ("Class" or "Class Members") during the period of time beginning four (4) years prior to the filing of this Class Action Complaint through the date of Class notice ("Class Period").

b. **Subclass A**: Subclass A consists of:

All Class Members whose home equity line of credit was reduced or suspended based on a decline in home values.

c. **Subclass B**: Subclass B consists of:

All Class Members who were charged annual fees, or any other fees, for maintaining reduced or suspended home equity lines of credit.

d. **Subclass C**: Subclass C consists of:

All Class Members who were charged closing costs for opening home equity lines of credit that were subsequently reduced or suspended.

e. **Subclass D**: Subclass D consists of:

All Class Members who were charged Early Closure Release Fees, or any other fees, for closing reduced or suspended home equity lines of credit.

27. **Excluded from Class and Subclasses**: Excluded from the Class and Subclass A Subclass B, Subclass C, and Subclass D ("Subclasses") are (i) any Judge or Magistrate presiding over this action and their family members; (ii) Defendants, and their corporate parents, subsidiaries and affiliates, officers and directors, any entity in which Defendants have a controlling interest; (iii) persons who properly and timely request to be excluded; (iv) the legal representatives, successors or assigns of any such excluded persons or entities; and (v) the attorneys for Plaintiff herein.

28. **Numerosity**: Members of Class and The Subclasses ("Members") are so numerous that joinder of all Members is impracticable. While the exact numbers of Members are unknown to Plaintiff at this time, such information can be ascertained through appropriate discovery from records maintained by Citi and its agents.

29. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Members is impracticable and the likelihood of individual members prosecuting separate claims is remote. Individual Members do not have a significant interest in controlling litigation because their individual damages likely will be relatively small. Relief concerning Plaintiff's rights under the laws alleged herein and with respect to the Class and the Subclasses as a whole would be appropriate. Plaintiff knows of

no difficulty to be encountered in this case's management that would preclude maintenance as a class action.

30. **Predominance and Commonality**: Common questions of law and fact exist as to all Members and predominate over questions affecting only individual Members. The common questions include:

    a. What were Citi's criteria for reducing or freezing HELOCs;

    b. What were Citi's methods for valuing homes securing HELOCs;

    c. Whether Citi's criteria for reducing or freezing HELOCs and method for valuing homes securing HELOCs were unfair or unlawful;

    d. Whether Citi's HELOC Agreement imposed obligations on Citi to cease charging annual fees, penalty fees, or early closure fees for reduced or frozen HELOCs;

    e. Whether Citi's HELOC Agreement imposed obligations on Citi to prorate annual fees, penalty fees, early closure fees for reduced or frozen HELOCs;

    f. Whether Citi's HELOC Agreement imposed obligations on Citi to return all or a portion of collected annual fees or closing costs after reducing or freezing HELOCs;

    g. Whether Citi's HELOC Agreement or federal law required Citi to ascertain each customer's property value and loan/value ratio before reducing or freezing HELOCs; and

    h. Whether Plaintiff and the Class and The Subclasses are entitled to relief, and the nature of that relief.

31. **Typicality**: Plaintiff's claims are typical of other Members' claims because Plaintiff and the Class were exposed to virtually identical conduct and sustained damages from that conduct. The California and federal laws under which Plaintiff's claims arise do not conflict with the laws of any other state in any material way.

32. **Adequacy**: Plaintiff can fairly and adequately represent the Class and the Subclasses' interests; Plaintiff has no conflicts of interest with other Members, and has retained

counsel competent and experienced in class action and civil litigation. Further, Citi does not have a defense unique to Plaintiff.

33. **Policies Generally Applicable to the Class**. This class action also is appropriate for certification because Citi acted or refused to act on grounds generally applicable to the Class and the Subclasses, thereby making final injunctive relief or corresponding declaratory relief appropriate. Citi's policies apply and affect class members uniformly, and Plaintiff's challenge to these policies hinges on Citi's conduct, not on facts or law applicable to only Plaintiff.

## FIRST CLAIM FOR RELIEF
### (For Declaratory Relief)

34. Plaintiff incorporates the above allegations by reference.

35. Before reducing HELOC limits, Citi was obligated to assess the value of each Class Member's home securing the HELOC. More specifically, Citi was supposed to determine whether the initial difference between the credit limit and the available equity in each Class Member's home declined by 50%. Instead, Citi relied on general geographic area surveys to justify blanket reductions and suspensions on HELOC limits. Citi's methodology was flawed in that Citi failed to individually determine the value of each Class Member's home and because Citi did not, among other things: (1) validate their home valuation models on a periodic basis to mitigate the potential valuation uncertainty; (2) properly document the validation's analysis, assumptions, and conclusion; (3) appropriately back-test representative samples of home valuations against market data on actual sales; (4) account fairly for improvements, property type or geographic comparables; and (5) take other necessary steps to reasonably verify the accuracy of home valuations as dictated by the *Credit Risk Management Guidance for Home Equity Lending* by Office of Thrift Supervision.

36. Plaintiff, the Class, and Subclasses have been harmed because Citi knowingly failed to determine the collateral value securing each HELOC before reducing credit limits; reduced the HELOCs to the point where the HELOCs were essentially frozen, thereby depriving Plaintiff and the Class from all meaningful use of their HELOCs.

37. Plaintiff, the Class, and the Subclasses have adverse legal interests with Citi.

There is a substantial controversy between them and Citi of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to (i) whether Citi's mass reduction and suspension of credit limits violate TILA and Regulation Z, and (ii) whether Citi's failure to cease, prorate or refund any imposed fees, costs, or penalties violate the Agreement.

38. Plaintiff and Subclasses seek a declaratory judgment under 27 U.S.C. § 2201 that Citi's mass reduction and suspension of HELOC credit limits violates TILA and Regulation Z.

39. Additionally, Plaintiff and Subclasses seek a declaratory judgment that Citi's failure to cease, prorate or refund imposed fees, costs and penalties violated the Agreement.

## SECOND CLAIM FOR RELIEF
### (For Violation of the TILA and Regulation Z)

40. Plaintiff incorporates the above allegations by reference.

41. Citi knowingly lacked a basis for reducing and freezing HELOCs when it concluded that the securing homes declined in value without first assessing the actual value of each home securing each HELOC.

42. By reducing and freezing these HELOCs, Citi violated the Truth-in-Lending Act and Regulation Z because it failed to assess the actual value of the home securing each HELOC.

43. Citi's violations damaged Plaintiff, the Class, and Subclass A in the form of annual fees, costs, cancellation fees, penalties, and other damages.

44. Plaintiff and the Class seek actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3).

## THIRD CLAIM FOR RELIEF
### (For Breach of Contract)

45. Plaintiff incorporates the allegations set forth in paragraphs 1-33 by reference.

46. Plaintiff and the Class obtained HELOCs from Citi. The terms of these HELOCs constitute a contract between Class Members and Citi.

47. Under the HELOC Agreements, Citi provided HELOCs at agreed upon credit limits in return for the payment of fees and closing costs, if elected. These terms were material.

48. Plaintiff, the Class and the Subclasses made all payments due to Citi and otherwise fully performed under their HELOCs.

49. Citi materially breached the HELOCs Agreements by (i) reducing or freezing HELOCs in violation of the law, (ii) continuing to charge fees and penalties associated with maintaining or closing reduced or frozen HELOCs, and (iii) refusing to rescind, prorate or refund any imposed fees, costs, or penalties.

50. As a result, Plaintiff, the Class, and the Subclasses suffered damages in the form of one-time fees, annual fees, costs, cancellation fees, penalties, and other damages.

51. Plaintiff, the Class, and the Subclasses seek damage for Citi's breach of contract, as well as interest and attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

### FOURTH CLAIM FOR RELIEF
(For Breach of Implied Covenants of Good Faith and Fair Dealing)

52. Plaintiff incorporates the allegations set forth in paragraphs 1-33 by reference.

53. Plaintiff, the Class, and the Subclasses obtained HELOCs from Citi. The terms of these HELOCs constitute a contract between the Class Members and Citi.

54. Implicit in the HELOC agreements were contract provisions that prevented Citi from engaging in any conduct that would frustrate or injure Plaintiff, the Class, and the Subclasses' rights to receive their contract benefits.

55. The credit limit was a material contract term. Citi breached the implied covenant of good faith and fair dealing in the HELOC Agreements by reducing or freezing credit limits and continuing to impose fees, costs, and penalties associated with maintaining or closing the reduced or frozen HELOCs. If not explicitly stated, implicit in the HELOC Agreements are terms requiring Citi not to (i) reduce or freeze HELOCs in violation of the law, (ii) continue charging fees and penalties associated with maintaining or closing reduced or frozen HELOCs, and (iii) refusing to rescind, prorate or refund any imposed fees, costs, or penalties.

56. Citi's breach of the implied covenant of good faith and fair dealing in the HELOCs caused Plaintiff, the Class and the Subclasses to incur one-time fees, annual fees, costs,

early closure fees and penalties, and other damages.

57. Plaintiff, the Class and the Subclasses seek damages for Citi's breach, as well as interest and attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

### FIFTH CLAIM FOR RELIEF
### (For Unjust Enrichment/ Restitution)

58. Plaintiff incorporates the above allegations by reference.

59. Alternatively, if the Court finds that no contract provision expressly governs the issues raised herein, Citi knowingly received and retained benefits from Plaintiff, the Class, and Subclasses under circumstances that would render it unjust to allow Citi to retain these benefits.

60. By illegally reducing and freezing HELOCs and continuing to charge fees and penalties associated with maintaining or closing reduce or frozen HELOCs, Citi gained the time value of money it would otherwise be potentially liable for lending out to its HELOC customers, along with associated fees and penalties.

61. As an actual and proximate result of Citi's conduct, Plaintiff, the Class and the Subclasses incurred damages in the form of fees, costs, penalties, and other damages.

62. Plaintiff, the Class and the Subclasses seek damages for Citi's conduct, including disgorgement of all revenue and profits gained through its conduct, as well as interest and attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

### SIXTH CLAIM FOR RELIEF
### (For Unlawful Business Practices in Violation of Cal. Bus. & Prof. Code § 17200, et seq.)

63. Plaintiff incorporates the above allegations by reference.

64. Citi's reduction of Plaintiff and the Class' HELOC credit limits violated TILA and Regulation Z. Citi's conduct was deceptive and untrue because it only used geographic area surveys to determine the value of collateral securing the HELOCs. Used alone, these surveys are inaccurate and unsubstantiated so as to make their use unfair, deceptive and readily subject to manipulation.

65. Additionally, Citi's conduct breached the HELOC Agreements and the covenant of good faith and fair dealing because Citi continued to charge fees and penalties associated with

maintaining or closing the significantly reduced or frozen HELOCs. Citi's conduct deprived Plaintiff, the Class and the Subclasses from all material value of their HELOCs.

66. Citi's acts are unlawful, deceptive, and unfair and constitute unfair competition in violation of the UCL. Citi engaged in unfair, unlawful and fraudulent business acts and practices as set forth above. Citi violated the "unfair" prong of the UCL in that Citi's actions caused substantial injury to consumers; the injury caused by Citi conduct is not outweighed by any countervailing benefits to consumers or competition; and the injury is one that consumers themselves could not reasonably have avoided. Citi further violated the "fraudulent" prong of the UCL in that Citi's representations about the availability of credit through the HELOCs and the associated fees, costs, and penalties were false and likely to deceive a reasonable consumer. And Citi violated the "unlawful" prong of the UCL in that Citi's conduct was undertaken in violation of TILA, Regulation Z, and the HELOC Agreement terms (both expressed and implied).

67. Citi's violations of the UCL caused actual damage and loss to Plaintiff, the Class and the Subclasses in the form of fees, costs, penalties, and other damages.

68. Plaintiff, the Class and the Subclasses seek an order enjoining Citi's unfair competition alleged herein, and individual restitution of property gained by such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorney's fees and costs under California Code of Civil Procedure § 1021.5.

## PRAYER FOR RELIEF

Plaintiff, the Class and the Subclasses pray for judgment against Defendants as follows:

A. That the Court certifies this action as a class action;

B. That the Court awards attorneys' fees as authorized by statute;

C. That the Court awards costs of the suit;

D. That the Court awards pre and post judgment interest at the legal rate; and

E. That the Court awards such other relief as deem proper.

Plaintiff, the Class and the Subclasses further pray for judgment against Defendants as follows:

### First Claim for Relief

F.    That the Court declares judgment under 27 U.S.C. § 2201 that Citi's HELOC reductions and suspensions violate federal law; and

G.    That the Court declares judgment that Citi's failure to cease, prorate, or refund imposed fees, costs, and penalties violate the Agreement.

### Second Claim for Relief

H.    That the Court awards statutory damages under 15 U.S.C. § 1640(a)(2)(B);

I.    That the Court awards actual damages under 15 U.S.C. § 1640(a)(1), including but not limited to fees, costs, penalties, interest, and other damages in an amount to be proved at trial; and

J.    For distribution of any money recovered via fluid recovery or *cy pres* recovery where necessary to prevent Defendants from retaining the benefits of its wrongful conduct.

### Third Claim for Relief

K.    That the Court awards actual damages, including but not limited to fees, costs, penalties, interest, and other damages in an amount to be proved at trial; and

L.    For distribution of any moneys recovered via fluid recovery or *cy pres* recovery where necessary to prevent Defendants from retaining the benefits of its wrongful conduct.

### Fourth Claim for Relief

M.    That the Court awards actual damages, including but not limited to fees, costs, penalties, interest, and other damages in an amount to be proved at trial;

N.    That the Court disgorges any ill-gotten profits from Citi, including restitution of property gained by the unfair competition alleged herein, and an order accounting of such property; and

O.    For distribution of any moneys recovered via fluid recovery or *cy pres* recovery where necessary to prevent Defendants from retaining the benefits of its wrongful

conduct.

### Fifth Claim for Relief

P. That the Court disgorges any ill-gotten profits from Citi, including restitution of property gained by the unlawful conduct alleged herein, and an order accounting of such property; and

Q. For distribution of any moneys recovered via fluid recovery or *cy pres* recovery where necessary to prevent Defendants from retaining the benefits of its wrongful conduct.

### Sixth Claim for Relief

R. That the Court preliminarily and permanently enjoins Citi from engaging in the conduct alleged;

S. That the Court disgorges any ill-gotten profits from Citi, including restitution of property gained by the unfair competition alleged herein, and an order accounting of such property; and

T. For distribution of any moneys recovered via fluid recovery or *cy pres* recovery where necessary to prevent Defendants from retaining the benefits of its wrongful conduct.

### JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: September 8, 2009

HARRISON PATTERSON O'CONNOR & KINKEAD LLP

By: /s/
James R. Patterson
Alisa A. Martin
Attorneys for Plaintiff and the Class

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED
2009 SEP 11
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## I. (a) PLAINTIFFS
MARK WINKLER, on behalf of himself and all others similarly situated

(b) County of Residence of First Listed Plaintiff: **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
HARRISON PATTERSON O'CONNOR & KINKEAD LLP
402 W. Broadway, 29th Floor, San Diego, CA 92101; 619-756-6990

## DEFENDANTS
CITIGROUP INC., a Delaware corporation; CITIMORTGAGE, INC., a New York corporation; and CITIBANK N.A.; and

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

'09 CV 1999 BTM   CAB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |  | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☒ 190 Other Contract |  |  | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land |  | ☐ 530 General |  |  |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  |  |
|  | ☐ 445 / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee |  |  |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332(d)(2); 28 USC 1331; 15 USC 1647; 28 USC 1367
Brief description of cause:
Declaratory relief/violations under TILA and Regulation Z; breach of contract; unfair business practices

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE _____   DOCKET NUMBER _____

DATE: 09/08/2009
SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**
RECEIPT # 5120   AMOUNT $350.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

MS 9/11/09

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS005120
Cashier ID: msweaney
Transaction Date: 09/11/2009
Payer Name: CALEXPRESS
----------------------------------
CIVIL FILING FEE
  For: MIKE WINKLER V CITIGROUP INC
  Case/Party: D-CAS-3-09-CV-001999-001
  Amount:         $350.00
----------------------------------
CHECK
  Check/Money Order Num: 50369
  Amt Tendered: $350.00
----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```