1  MAYER BROWN LLP
   CHRISTOPHER P. MURPHY (SBN 120048)
2  cmurphy@mayerbrown.com
   LISA W. CORNEHL (SBN 232733)
3  lcornehl@mayerbrown.com
   350 South Grand Avenue, 25th Floor
4  Los Angeles, California  90071-1503
   Telephone:   (213) 229-9500
5  Facsimile:    (213) 625-0248

6  MAYER BROWN LLP
   LUCIA NALE (*pro hac vice pending*)
7  LNale@mayerbrown.com
   DEBRA BOGO-ERNST (*pro hac vice pending*)
8  DErnst@mayerbrown.com
   71 South Wacker Drive
9  Chicago, Illinois  60606
   Telephone:   (312) 782-0600
10 Facsimile:    (312) 701-7711

11 Attorneys for Defendants
   CITIGROUP INC., CITIMORTGAGE, INC. and
12 CITIBANK, N.A.

13              **UNITED STATES DISTRICT COURT**

14            **SOUTHERN DISTRICT OF CALIFORNIA**

15

16 MARK WINKLER, on behalf of himself and all        Case No. 09-cv-1999-BTM-CAB
   others similarly situated,
17                                                    **DEFENDANTS' MEMORANDUM OF**
                        Plaintiff,                    **POINTS AND AUTHORITIES IN**
18                                                    **SUPPORT OF THEIR MOTION FOR**
            v.                                        **TRANSFER TO THE NORTHERN**
19                                                    **DISTRICT OF CALIFORNIA**
   CITIGROUP INC., a Delaware corporation;            **PURSUANT TO 28 U.S.C. § 1404(a)**
20 CITIMORTGAGE, INC., a New York
   corporation; and CITIBANK N.A.; and DOES 1         [Filed concurrently with Notice of Motion
21 through 50, inclusive,                             and Motion for Transfer of Venue;
                                                      Declaration of Debra Bogo-Ernst in support
22                      Defendants.                   thereof]

23                                                    ***Per Chambers, No Oral Argument Unless***
                                                      ***Requested By The Court***
24                                                    Date:     March 12, 2010
                                                      Time:     11:00 a.m.
25                                                    Place:    Courtroom 15
                                                                940 Front Street, 15th Floor
26                                                              San Diego, CA  92101-8900

27                                                    **Honorable Barry Ted Moskowitz**

                                                      Complaint Filed:  September 11, 2009
28

---

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
TRANSFER TO THE NO/ DIST. OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A) (09cv1999)
28811748.1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................................ 1

II.  BACKGROUND ................................................................................................................ 2

III. ARGUMENT ...................................................................................................................... 3

    A.   The Interests of Justice and the Convenience of the Parties and Witnesses Favor Transfer to the Northern District of California. .......................... 4

        1.   The Public Factors Favor Transfer to the Northern District. ...................... 4

            a.   Considerations of the Interest of Justice, Including Judicial Economy, Strongly Favor Transfer. ................................... 4

            b.   The Remaining Public Factors are Neutral. ................................... 7

        2.   The Private Factors Demonstrate That Transfer to the Northern District is Appropriate. ................................................................. 8

            a.   Location Where the Operative Events Occurred. ........................... 8

            b.   Convenience of the Parties and Non-Party Witnesses. ....................................................................................... 9

            c.   Location of the Evidence. ............................................................. 10

            d.   Availability of Compulsory Process. ............................................ 10

            e.   Miscellaneous Private Factors. .................................................... 10

    B.   This Action "Might Have Been Brought" in the Northern District of California. ........................................................................................................ 11

IV.  CONCLUSION ................................................................................................................ 12

-i-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
TRANSFER TO THE NO/ DIST. OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A) (09cv1999)

28811748.1

1

**TABLE OF AUTHORITIES**

2                                                                    **Page(s)**

3   CASES

4   *Adachi v. Carlyle/Galaxy San Pedro L.P.*,

5       595 F. Supp. 2d 1147 (S.D. Cal. 2009)........................................................4, 7, 8, 10

6   *Amazon.com v. Cendant Corp.*,
        404 F. Supp. 2d 1256 (W.D. Wash. 2005).................................................... passim

7   *Ellis v. Costco Wholesale Corp.*,

8       372 F. Supp. 2d 530 (N.D. Cal. 2005) ......................................................................7

9   *Flores v. Zale Delaware, Inc.*,
        No. C07-0539TEH, 2007 WL 4462992 (N.D. Cal. Dec. 17, 2007) .........................7

10

11  *Genden v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
        621 F. Supp. 780 (N.D. Ill. 1985) ...........................................................................8

12

13  *Gerin v. Aegon USA Inc.*,
        No. C 06-5407 SBA 2007 WL 1033472 (N.D. Cal. Apr. 4, 2007) ...........................9

14  *Jolly v. Purdue Pharma L.P.*,

15      No. 05-CV-1452H, 2005 WL 2439197 (S.D. Cal. Sept. 28, 2005)....................4, 5, 6

16  *Lou v. Belzberg*,
        834 F.2d 730 (9th Cir. 1987) ....................................................................................9

17

18  *Morrow v. Vertical Doors Inc.*,
        No. 09-0256-PHX-DGC, 2009 WL 1698560 (D. Ariz. June 17, 2009)..........5, 7, 10

19  *Mussetter Distrib., Inc.*,
        No. CIV 09-1442 WBS EFB 2009 WL 1992356 (E.D. Cal. July 8, 2009) ..............5

20

21  *Nai-Chao v. Boeing Co.*,
        555 F. Supp. 9 (N.D. Cal. 1982) ...............................................................................7

22  *Saleh v. Titan Corp.*,

23      361 F. Supp. 2d 1152 (S.D. Cal. 2005)...........................................................3, 7, 8, 9

24  *Szegedy v. Keystone Food Prod., Inc.*,
        No. CV 08-5369 CAS (FFMx), 2009 WL 2767683 (C.D. Cal. Aug. 26, 2009) ..............5, 6, 7

25

26  *Van Dusen v. Barrack*,
        376 U.S. 612 (1964)..................................................................................................3

27

28

-ii-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
TRANSFER TO THE NO/ DIST. OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A) (09cv1999)

28811748.1

# TABLE OF AUTHORITIES
### (*continued*)

**Page(s)**

**STATUTES**

United States Code, title 15
  § 1647............................................................................................................12

United States Code, title 28
  § 1331............................................................................................................11
  § 1332(d)........................................................................................................11
  § 1367............................................................................................................12
  § 1391(b)(1)...................................................................................................12
  § 1391(c).........................................................................................................12
  § 1404................................................................................................... passim
  § 1404(a)..............................................................................................1, 3, 5, 12

California Business & Professions Code
  § 17200............................................................................................................2

California Code Civil Procedure
  § 410.10..........................................................................................................11


**RULES AND REGULATIONS**

Code of Federal Regulations, title 12
  § 226.5b..........................................................................................................12

Federal Rules of Civil Procedure
  Rule 45(b)(2)...................................................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case is substantially similar to *Levin v. Citibank, N.A.*, C-09-0350 MMC ("Levin Action"), a case pending before Judge Chesney in the United States District Court for the Northern District of California ("Northern District").  Both cases:  (i) challenge Citibank, N.A. ("Citibank")'s individual decisions, pursuant to the parties' contracts, to reduce or suspend its customers' home equity lines of credit ("HELOCs") based on a decline in home value; (ii) raise nearly identical claims; and (iii) have substantially similar putative classes.

However, Levin filed his complaint in January 2009 and, as a result, the Levin Court has already made some important, substantive rulings in the case.  Indeed, Citibank filed a motion to dismiss the Levin Action (Doc. Nos. 30 & 31), the Court entered an order dismissing substantial portions of the Levin complaint (Doc. No. 57) (attached as Exhibit ("Ex") A to the Declaration of Debra Bogo-Ernst ("Bogo-Ernst Decl.") filed concurrently herewith), Levin filed an amended complaint (Doc. No. 59), and Citibank filed a second motion to dismiss (Doc. No. 60). Citibank's second motion to dismiss the Levin Action will be fully briefed by the end of February, 2010.  In contrast, Mark Winkler filed this action in September 2009 (the "Winkler Action" or this "Action").  Defendants Citigroup Inc., CitiMortgage, Inc. and Citibank (collectively "Defendants") are moving to dismiss this Action concurrently herewith based on many of the same legal principles that Judge Chesney has already considered and applied in the Levin Action.

Because of the substantial overlap in issues between the Winkler and Levin cases, the similarity in putative classes, and the fact that the Northern District has already analyzed many of these same issues, Defendants respectfully request that this Court transfer the Winkler Action to the Northern District pursuant to 28 U.S.C. § 1404(a).  Section 1404's requirements for transfer are met:  (1) the transfer would be in the interest of justice and convenient for the parties and the witnesses; and (2) the action might have been brought in the Northern District of California.

## II.   BACKGROUND

On January 26, 2009, David Levin filed a putative class action complaint in the Northern District against Citibank.  The initial Levin complaint (the "Levin Complaint") alleged that Citibank's actions regarding the suspension or reduction of his HELOC violated the Truth In Lending Act ("TILA") and Regulation Z, breached his contract, violated California's Unfair Competition Law (Cal. Bus. & Prof.  Code § 17200) ("UCL"), breached the implied covenant of good faith and fair dealing, and constituted fraudulent concealment.  See Levin Complaint (attached to the Bogo-Ernst Decl. as Ex. B).

Almost nine months later, Mark Winkler filed a nearly identical putative class action complaint in this district alleging all but one of the claims alleged by Levin.  As shown below, Winkler simply substituted a fraudulent concealment claim for an unjust enrichment claim:

| Claim | Levin | Winkler |
|---|---|---|
| Declaratory Relief Under TILA and Regulation Z | Count I | Count I |
| Violation of the TILA and Regulation Z | Count II | Count II |
| Breach of Contract | Count III | Count III |
| Violation of California's UCL | Counts IV, VII, IX, XI | Count VI |
| Breach of the Implied Covenant of Good Faith and Fair Dealing | Counts V, VIII, X | Count IV |
| Fraudulent Concealment | Count VI | n/a |
| Unjust Enrichment | n/a | Count V |

In the Levin Action, Judge Chesney dismissed Counts I, V, VI, VII, VIII, IX, and X of Levin's Complaint and also dismissed Counts IV and XI to the extent that they included a claim for injunctive relief.  (Doc. 57, Bogo-Ernst Decl., Ex. A).  By way of an example of the

1   dismissed claims, Levin – like Winkler – alleged that he terminated the HELOC after Citibank

2   reduced his credit limit.  Without a contractual relationship or purported future harm, Judge

3   Chesney dismissed Levin's declaratory relief claim.  *Id.* at 3-4.  Here, Winkler's claim fails on

4   the same basis.  *See* Defendants' Motion to Dismiss Winkler's Complaint, filed concurrently

5   herewith.  This is just one example demonstrating the dramatic overlap between Levin's and

6   Winkler's claims.

7        Not only do Winkler and Levin have nearly identical claims, but they also purport to act

8   on behalf of a substantially similar putative class:  all Citibank customers who had a HELOC

9   reduced by Citibank based on a decline in home values.  Compare Levin Complaint, ¶ 22 with

10   Winkler Complaint, ¶ 26; *see also id.* (listing four similar subclasses).  This intersecting class

11   definition could raise significant issues later if these cases are not handled together.

12       Given the striking resemblance in allegations and class definitions, and for the reasons

13   discussed below, Defendants respectfully move to transfer the Winkler Action to the Northern

14   District.

15   **III.   <u>ARGUMENT</u>**

16        "[A] district court may transfer any civil action to any other district or division where it

17   might have been brought" "in the interest of justice" and "[f]or the convenience of parties and

18   witnesses."  28 U.S.C. § 1404(a).  "The purpose of § 1404(a) 'is to prevent the waste of time,

19   energy and money and to protect litigants, witnesses and the public against unnecessary

20   inconvenience and expense.'"  *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1155 (S.D. Cal.

21   2005), quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  To transfer a case under

22   Section 1404, two requirements must be met:  (1) "the transfer is '[f]or the convenience of

23   parties and witnesses, in the interest of justice,'" and (2) "the district to which the defendant

24   seeks to have the action transferred is one in which the action 'might have been brought.'"

25   *Saleh*, 361 F. Supp. 2d at 1155.  As discussed below, these requirements are met, and the

26   Winkler Action should be transferred to the Northern District.

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
TRANSFER TO THE NO/ DIST. OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A) (09cv1999)
28811748.1

A. **The Interests of Justice and the Convenience of the Parties and Witnesses Favor Transfer to the Northern District of California.**

As discussed below, federal courts consider both "public" and "private" factors in analyzing Section 1404's requirement that the interests of justice and convenience of the parties be served by a transfer to another district. *Adachi v. Carlyle/Galaxy San Pedro L.P.*, 595 F. Supp. 2d 1147, 1151 (S.D. Cal. 2009). Here, both the public and the private factors demonstrate that the Winkler Action should be transferred to the Northern District.

1. **The Public Factors Favor Transfer to the Northern District.**

The following "public" factors are important in analyzing whether transfer to another district is appropriate: (i) the interest of justice, including "the issues relative to judicial economy;" (ii) "relative docket congestion;" and (iii) "the local public and jury pool's interest in the controversy." *Adachi*, 595 F. Supp. 2d at 1151. Here, the interest of justice requires that this Action be transferred to the Northern District while the remaining public factors are neutral. The actions are substantially related, there is a risk of inconsistent results if the actions are handled separately, and Judge Chesney already has a level of expertise and experience with the legal and factual issues alleged in these cases.

a. **Considerations of the Interest of Justice, Including Judicial Economy, Strongly Favor Transfer.**

"The interest of justice factor is the most important of all. Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005) (internal citation and quotation omitted). Here, this factor undeniably weighs in favor of transfer of this Action to the Northern District.

First, the Southern District has stated that "[t]he pendency of related actions in the transferee forum is a significant factor in considering the interest of justice." *Jolly v. Purdue Pharma L.P.*, No. 05-CV-1452H, 2005 WL 2439197, at *2 (S.D. Cal. Sept. 28, 2005). Indeed,

-4-

"[l]itigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoid duplicitous (sic) litigation and inconsistent results." *Id.*  *See also Szegedy v. Keystone Food Prod., Inc.*, No. CV 08-5369 CAS (FFMx), 2009 WL 2767683, at *6 (C.D. Cal. Aug. 26, 2009) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); *Mussetter Distrib., Inc.,* No. CIV 09-1442 WBS EFB 2009 WL 1992356, at *4 (E.D. Cal. July 8, 2009) ("In addition to the 'possible consolidation of discovery' and the conservation of 'time, energy and money,' centralizing the adjudication of similar cases will also 'avoid the possibility of inconsistent judgments.'") (citation omitted).  "As a general rule, cases [like Winkler] should be transferred to districts where related actions are pending." *Morrow v. Vertical Doors Inc.*, No. 09-0256-PHX-DGC, 2009 WL 1698560, at *5 (D. Ariz. June 17, 2009) (citation omitted).

Here, it cannot be disputed that these cases are related.  As discussed *supra* at pp. 2-3, Levin and Winkler allege nearly identical claims on behalf of substantially similar putative classes.  Both Levin and Winkler bring claims under TILA and Regulation Z, UCL, their HELOC agreements, and the implied covenant of good faith and fair dealing.  The main but insignificant difference is that Winkler substitutes an unjust enrichment/restitution claim for Levin's fraudulent concealment claim.  In addition, Winkler and Levin both purport to act on behalf of a substantially similar putative class:  all Citibank customers who had a HELOC reduced by Citibank based on a decline in home values.  *Compare* Levin Complaint, ¶ 22 *with* Winkler Complaint, ¶ 26.  Discovery would be substantially similar in both cases, and it would make things more efficient for all concerned if these cases moved forward together.  Accordingly, transfer is appropriate.  *See Mussetter Distrib., Inc.*, 2009 WL 1992356, at *4 (transferring due to "substantial overlap," "[d]espite some isolated differences"); *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005) (transferring where two cases were "*similar enough* that they should be considered by the same court") (emphasis added).

1    Second, transferring this Action to the Northern District also reduces the risk of

2    inconsistent results. *Jolly v. Purdue Pharma L.P.,* No. 05-CV-1452H, 2005 WL 2439197, at *2

3    (S.D. Cal. Sept. 28, 2005) (noting that related claims in the same court avoids inconsistent

4    results).  If these cases were to proceed in different districts, it is likely that both courts would be

5    considering the same issues of law, including whether class certification of substantially similar

6    putative classes is appropriate.  Even slight differences in such decisions could have an

7    enormous impact on the purported classes.

8    Third, a strong basis for transfer exists where the transferee district has "developed a

9    level of expertise and experience with th[e] particular factual background and legal issues in th[e

10   related] case."  *Jolly,* 2005 WL 2439197, at *3.  For instance, the *Szegedy* court transferred an

11   action to a district where an earlier-filed action was pending.  The cases "contain[ed] identical

12   factual allegations" and "assert[ed] claims under [the same state's] law."  *Szegedy*, 2009 WL

13   2767683, at *5.  There, the judge in the transferee district was, at the time of the motion to

14   transfer, "considering a motion to dismiss filed by defendants," was "already familiar with the

15   facts and law surrounding this case, and [wa]s more familiar with the parties and issues raised."

16   *Id.*  The court ordered a transfer because, "although [the case in the other district] may involve

17   some different legal theories compared to the instant action, it involves similar, if not identical,

18   facts and issues."  *Id.* at 6.

19   Like *Szegedy*, this Action should be transferred to the Northern District, where Judge

20   Chesney is "already familiar with the facts and law surrounding th[e] case."  *Id.* at 5.  Levin and

21   Winkler also raise substantially similar legal issues (TILA and Regulation Z, breach of contract,

22   California Business and Professional Code, and breach of implied covenant of good faith and fair

23   dealing).  *Id.*  Moreover, Judge Chesney has not only *considered* the Levin motion to dismiss,

24   like the transferee judge in *Szegedy*, but Judge Chesney has also *decided* the Levin motion to

25   dismiss, which demonstrates that she has developed an even greater familiarity with the issues

26   and facts than the *Szegedy* judge.  *Id.*  In addition, in the Levin case, the court has reviewed three

27   sets of Case Management Statements and held a Case Management conference, and the parties

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
TRANSFER TO THE NO/ DIST. OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A) (09cv1999)
28811748.1

1   have participated in three ADR Conferences.  For all of these reasons, this Action should be

2   transferred to the Northern District.  *Id.  See also Morrow*, 2009 WL 1698560, at *5 ("As a

3   general rule, cases should be transferred to districts where related actions are pending . . . [even

4   despite] different parties, so long as there are common issues of fact and/or law.") (citation

5   omitted).

6                        **b.     The Remaining Public Factors are Neutral.**

7         The judicial economy factor is enough to establish that this Action should be transferred

8   to the Northern District.  *Morrow*, 2009 WL 1698560, at *5 (the judicial economy factor can

9   "weigh[] decisively in favor of transfer").  However, courts will also consider additional public

10  factors such as "relative docket congestion" and "the local public and jury pool's interest in the

11  controversy."  *Adachi*, 595 F. Supp. 2d at 1151.  Here, these remaining public factors are neutral

12  and do not overcome — and in one instance even bolster — the strong showing that the judicial

13  economy factor weighs heavily in favor of transfer of this Action to the Northern District.

14        First, considerations of docket congestion are neutral because there is no distinct

15  difference in the congestion of the Northern and Southern Districts.  Even though "[c]ongestion

16  in the civil docket of the Southern District is lower than the Northern District, . . . [the Southern

17  District's] dramatically heavier criminal docket renders the advantages of transfer on grounds of

18  court congestions at best a marginal note in favor of the Southern District."  *Ellis v. Costco*

19  *Wholesale Corp*., 372 F. Supp. 2d 530, 544 (N.D. Cal. 2005).  Moreover, the congestion of both

20  the Northern and Southern Districts is well-recognized.  *See Nai-Chao v. Boeing Co*., 555 F.

21  Supp. 9, 19 (N.D. Cal. 1982) ("It is beyond dispute that the docket of this Court is heavily

22  congested."); *Saleh*, 361 F. Supp. 2d at 1167 (recognizing the "docket congestion that the

23  Southern District of California experiences").  Thus, docket congestion, when considered in

24  isolation, does not weigh in favor of either party.  *See Flores v. Zale Delaware, Inc.,* No. C07-

25  0539TEH, 2007 WL 4462992, at *4 (N.D. Cal. Dec. 17, 2007) (where "there is no evidence that

26  court congestion or average time to trial differs significantly between" districts, the congestion

27  factor "do[es] not weigh in favor of either party").  That said, the fact that two substantially

28

-7-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
TRANSFER TO THE NO/ DIST. OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A) (09cv1999)
28811748.1

1   similar cases are pending in two federal districts with congested dockets demonstrates the

2   importance of the judicial economy factor, which as, discussed above, weighs heavily in favor of

3   transfer of this Action to the Northern District.

4            Second, neither the local public nor the jury pool in this district has a greater interest in

5   the Action than the public or jury pool in any other district.  "Where, as here, the [putative] class

6   is nationwide and has no unique local interest or contact with the transferring district, the

7   deference usually accorded by courts to the plaintiff's choice of venue is less important."

8   *Genden v. Merrill, Lynch, Pierce, Fenner & Smith, Inc*., 621 F. Supp. 780, 782 (N.D. Ill. 1985)

9   (emphasis added).  Here, the purported class has putative members and properties located

10  throughout the country.  Accordingly, the local public factors are not determinative.  *See*, *e.g.*,

11  *Saleh*, 361 F. Supp. 2d at 1167 (finding a lack of "localized controversy" where plaintiffs did not

12  reside in the district and the events underlying the action did not occur in the district).

13           In summary and in consideration of all the public factors discussed above, the Court

14  should transfer this Action to the Northern District.

15        **2.**      **The Private Factors Demonstrate That Transfer to the Northern**

16                     **District is Appropriate.**

17           In analyzing the appropriateness of a transfer, "[p]rivate factors to be considered include

18  the location where the operative events occurred, the convenience of the parties and non-party

19  witnesses, the location of relevant evidence, the availability of compulsory process, and other

20  practical considerations for the efficient and cost-effective resolution of claims."  *Adachi*, 595 F.

21  Supp. 2d at 1151.  As shown below, consideration of the private factors demonstrates that

22  transfer of this Action to the Northern District is appropriate.

23                       **a.**      **Location Where the Operative Events Occurred.**

24           The "operative events" in this Action are the reduction or suspension of the purported

25  class members' HELOCs.  These individuals and the properties securing their HELOCs are

26  located across the country.  Accordingly, the locations where the "operative events" at issue in

27  this Action occurred are scattered across the country.  Moreover, Levin's and Winkler's personal

28

-8-

1    allegations demonstrate that "operative events" took place in both the Northern and Southern

2    Districts of California.  Because both "operative events" occurred in both the Northern and

3    Southern District, and many other federal districts nationwide, this factor is neutral.

4                    **b.        Convenience of the Parties and Non-Party Witnesses.**

5        Winkler brought a putative class action.  In considering the convenience of the parties,

6    "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of

7    forum is given less weight."  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  *See also Saleh*,

8    361 F. Supp. 2d at 1167 (holding that "plaintiffs' choice of forum is entitled to less deference

9    than it might otherwise be" because "plaintiffs are foreign plaintiffs bringing a class action

10   lawsuit"); *Gerin v. Aegon USA Inc.,* No. C 06-5407 SBA 2007 WL 1033472, at *3 (N.D. Cal.

11   Apr. 4, 2007) ("plaintiff's choice of forum receives only minimal deference when the plaintiff

12   brings a purported class action") (citation omitted).  Thus, even though Plaintiff resides in the

13   Southern District of California (Compl. at ¶ 14), his choice of forum is entitled to less weight

14   than a typical plaintiff's choice, because he is a putative class action plaintiff.  Moreover, it

15   would be more convenient for Defendants' witnesses to travel to the Northern District for the

16   earlier-filed Levin Action, which involves a substantially similar putative class and nearly

17   identical claims.

18       "When considering the convenience to witnesses, the convenience of non-party witnesses

19   is the more important factor. The Court should consider not only how many witnesses each side

20   may have, but also the relative importance of their testimony." *Amazon.com*, 404 F. Supp. 2d at

21   1260 (internal citations and quotations omitted).  Here, too, to the extent that any non-party

22   witnesses will be called, it is likely that these witnesses will overlap in both cases.  As such, it

23   would be more convenient for those potential non-party witnesses to travel to only one federal

24   district—the Northern District, where the first-filed Levin Action is pending—rather than two

25   districts.

26

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
TRANSFER TO THE NO/ DIST. OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A) (09cv1999)
28811748.1

### c.     Location of the Evidence.

The location of potential evidence in this case is not determinative of whether transfer is appropriate.  Other than the individual documents and circumstances associated with Winkler's and Levin's loans, any other potential evidence is likely located outside of California.  For example, because the individual properties securing the putative class members' HELOCs are located nationwide in both cases, any evidence related to these claims will not be confined to California.

### d.     Availability of Compulsory Process.

Federal Rule of Civil Procedure 45(b)(2) permits a subpoena to be served anywhere within the district of the court by which it is issued, or within 100 miles of the place of trial. Both the Northern and Southern Districts, like all federal districts, are bound by this rule.  Thus, because compulsory process is available under Rule 45(b)(2) in both districts, this factor is neutral to the transfer analysis.

### e.     Miscellaneous Private Factors.

Under the "private factors" analysis, courts also consider "other practical considerations for the efficient and cost-effective resolution of claims."  *Adachi*, 595 F. Supp. 2d at 1151.  Here, as discussed at Section I(A)(1), *supra*, it will be more efficient and cost-effective for Defendants to litigate these two related HELOC cases in the same forum—especially if the cases were to be consolidated.  *See Amazon.com*, 404 F. Supp. 2d at 1262 ("the feasibility of . . . consolidation is a factor that this Court may consider in deciding whether to allow a transfer.").  Many aspects of the litigation could be streamlined, including case management, discovery and briefing on class certification and other issues.  Transfer and consolidation would also reduce the risk of inconsistent results.  Further, if this Action were consolidated with the Levin Action, the parties would benefit from the progress of the Levin Action, which has already undergone the briefing and disposition of a motion to dismiss and early case management.  *See Morrow*, 2009 WL 1698560, at *5 (transferring where the transferee court previously "invested significant judicial

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR TRANSFER TO THE NO/ DIST. OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A) (09cv1999)
28811748.1

1  resources" in a related case).  Accordingly, these other practical considerations strongly weigh in

2  favor of transfer of the Action to the Northern District.

3         In summary, the vast majority of the public and private factors either heavily favor

4  transfer or are neutral.  In particular, the interest of justice conclusively demonstrates that

5  transfer is appropriate under these circumstances.  *See Amazon.com*, 404 F. Supp. 2d at 1261

6  ("The interest of justice factor is the most important of all.  Consideration of the interest of

7  justice, which includes judicial economy, may be determinative to a particular transfer motion,

8  even if the convenience of the parties and witnesses might call for a different result.") (internal

9  citation and quotations omitted).  Accordingly, the Winkler Action should be transferred to the

10  Northern District.

11     **B.     This Action "Might Have Been Brought" in the Northern District of**

12     **California.**

13        The second requirement considered in a Section 1404 transfer analysis is whether the

14  action "might have been brought" in the transferee jurisdiction.  An action "might have been

15  brought" in any forum that would have personal and subject matter jurisdiction over the action

16  and where venue is proper.  *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D.

17  Wash. 2005).  The jurisdiction and venue allegations in Winkler's Complaint apply equally to

18  establish jurisdiction and venue in the Northern District.

19        First, the Northern District would have personal jurisdiction over Defendants.  Plaintiff's

20  Complaint alleges that the Southern District "has personal jurisdiction over Citi under California

21  Code Civil Procedure § 410.10 because some of the acts alleged herein were committed in

22  California . . . and because Citi are [*sic*] registered to do business in this state and actively

23  conduct [*sic*] business in" the Southern District.  Compl. at ¶ 13.  The same allegations establish

24  personal jurisdiction in the Northern District.

25        Second, the Northern District, like the Southern District, would have subject matter

26  jurisdiction over this Action under 28 U.S.C. § 1332(d) (because this Action brings class claims

27  that purportedly exceed the sum or value of $5 million); 28 U.S.C. § 1331 (federal questions

28

-11-

1   arise under 15 U.S.C. § 1647 and 12 C.F.R. § 226.5b); and 28 U.S.C. § 1367 (supplemental

2   subject matter jurisdiction over pendant state claims) based on Plaintiff's allegations.  Compl. at

3   ¶ 10.

4          Finally, venue is proper in the Northern District.  Under the federal venue statutes, "[a]

5   civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as

6   otherwise provided by law, be brought only in . . . a judicial district where any defendant resides,

7   if all defendants reside in the same State . . . ."  28 U.S.C. § 1391(b)(1).  Further, "[f]or purposes

8   of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any

9   judicial district in which it is subject to personal jurisdiction at the time the action is

10  commenced."  28 U.S.C. § 1391(c).  As described above, Defendants are subject to personal

11  jurisdiction in the Northern District.  Because the Northern District has personal jurisdiction over

12  Defendants, Defendants will be deemed to "reside" in the Northern District for purposes of

13  venue under Section 1391(c).  Finally, because the Northern District is "a judicial district where

14  [Defendants] reside[]," venue in that forum is proper under Section 1391(b)(1).

15         Thus, this Action "might have been brought" in the Northern District, which satisfies the

16  second Section 1404(a) requirement.

17  **IV.   <u>CONCLUSION</u>**

18         Because both requirements of 28 U.S.C. § 1404 are met, Defendants respectfully request

19  that this Court transfer this Action to the Northern District of California.

20

21  DATED:   December 14, 2009                    MAYER BROWN LLP

22

23                                               By:  s/ *Christopher P. Murphy*
                                                      Christopher P. Murphy
24                                                    Lisa W. Cornehl

25                                               Attorneys for Defendants
                                                 CITIGROUP INC., CITIMORTGAGE, INC. and
26                                               CITIBANK, N.A.

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
TRANSFER TO THE NO/ DIST. OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A) (09cv1999)
28811748.1