1   MAYER BROWN LLP
    CHRISTOPHER P. MURPHY (SBN 120048)
2   cmurphy@mayerbrown.com
    LISA W. CORNEHL (SBN 232733)
3   lcornehl@mayerbrown.com
    350 South Grand Avenue, 25th Floor
4   Los Angeles, California  90071-1503
    Telephone:   (213) 229-9500
5   Facsimile:    (213) 625-0248

6   MAYER BROWN LLP
    LUCIA NALE (*pro hac vice pending*)
7   LNale@mayerbrown.com
    DEBRA BOGO-ERNST (*pro hac vice pending*)
8   DErnst@mayerbrown.com
    71 South Wacker Drive
9   Chicago, Illinois  60606
    Telephone:  (312) 782-0600
10  Facsimile:    (312) 701-7711

11  Attorneys for Defendants
    CITIGROUP INC., CITIMORTGAGE, INC. and
12  CITIBANK, N.A.

13          **UNITED STATES DISTRICT COURT**

14          **SOUTHERN DISTRICT OF CALIFORNIA**

15

16  MARK WINKLER, on behalf of himself and all     Case No. 09-cv-1999-BTM-CAB
    others similarly situated,

17                        **DECLARATION OF DEBRA**
              Plaintiff,          **BOGO-ERNST IN SUPPORT OF**

18                        **DEFENDANTS' MOTION FOR**
          v.              **TRANSFER TO THE NORTHERN**

19                        **DISTRICT OF CALIFORNIA**
    CITIGROUP INC., a Delaware corporation;      **PURSUANT TO 28 U.S.C. § 1404(a)**

20  CITIMORTGAGE, INC., a New York
    corporation; and CITIBANK N.A.; and DOES 1    [Filed concurrently with Notice of Motion

21  through 50, inclusive,              and Motion to Transfer Venue;
                             Memorandum of Points and Authorities in

22            Defendants.        support thereof]

23                        Date:    March 12, 2010
                             Time:    11:00 a.m.

24                        Place:   Courtroom 15
                                   940 Front Street, 15th Floor

25                                   San Diego, CA  92101-8900

26                        **Honorable Barry Ted Moskowitz**

27                        Complaint Filed:  September 11, 2009

28

## DECLARATION OF DEBRA BOGO-ERNST

I, Debra Bogo-Ernst, declare as follows:

1.     I am a member of the state bar of Illinois, a partner with the law firm of Mayer Brown LLP, and one of the attorneys principally responsible for the representation of Defendants Citigroup Inc., CitiMortgage, Inc. and Citibank, N.A. (collectively, "Defendants") in the above-captioned matter.  I have personal knowledge of the following, and if called upon to do so, could and would testify competently and truthfully with respect thereto.  I make this declaration in support of Defendants' Motion for Transfer to the Northern District of California Pursuant to 28 U.S.C. § 1404(a).

2.     David Levin ("Levin") filed a complaint against Citibank, N.A. ("Citibank") on January 26, 2009 in the action entitled *Levin v. Citibank, N.A.*, C-09-0350 MMC ("Levin Action"), pending before Judge Maxine M. Chesney in the United States District Court for the Northern District of California.

3.     The parties have submitted three sets of Case Management Statements to the Court in the Levin Action, and the Court held a Case Management conference on May 8, 2009. The parties have participated in three ADR Conferences before ADR Program Staff Attorney Robin W. Siefkin on April 30, 2009, August 13, 2009, and September 21, 2009.

4.     On September 17, 2009, the Court entered an order dismissing Counts I, V, VI, VII, VIII, IX, and X of Levin's Complaint and also dismissing Counts IV and XI to the extent that they included a claim for injunctive relief.  Levin filed an amended complaint on October 9, 2009.

5.     On November 23, 2009, Citibank filed a motion to dismiss in the Levin Action, which is set for hearing on February 26, 2010.

6.     Attached as Exhibit A is a true and correct copy of the September 17, 2009 Order dismissing substantial portions of the Levin complaint.

7.     Attached as Exhibit B is a true and correct copy of the complaint filed on January 26, 2009 in the Levin Action.

1     8.      Attached as Exhibits C, D, E and F are true and correct copies of the Joint Case

2   Management Statement filed on May 1, 2009, the Supplement to the Joint Case Management

3   Statements filed on May 7, 2009, the Joint Case Management Statement filed on September 14,

4   2009, and the Joint Case Management Statement filed on November 25, 2009 in the Levin

5   Action.

6          I declare under penalty of perjury under the laws of the United States of America that the

7   foregoing is true and correct.

8          Executed on the 14th day of December, 2009 in Chicago, Illinois.

9

10  DATED:  December 14, 2009

    Debra Bogo-Ernst

-2-

DECLARATION OF DEBRA BOGO-ERNST IN SUPPORT OF DEFENDANTS' MOTION FOR TRANSFER
TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A) (09cv1999)

# EXHIBIT A



United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID LEVIN,

        Plaintiff,

   v.

CITIBANK, N.A.,

        Defendant

No. C-09-0350 MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STRIKE; CONTINUING CASE MANAGEMENT CONFERENCE**

     Before the Court is defendant Citibank, N.A.'s ("Citibank") "Motion to Dismiss Each Claim and All of the Claims in Plaintiff's Complaint," filed June 5, 2009, and Citibank's "Motion to Strike Certain Allegations in Plaintiff's Complaint," filed June 5, 2009.  Plaintiff David Levin ("Levin") has filed opposition to each motion, and Citibank has filed a reply to each opposition.  Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

**BACKGROUND**

     On July 7, 2006, Levin entered into an agreement with Citibank titled Home Equity Line of Credit Agreement and Disclosure ("HELOC").  (See Miller Decl. Ex. A at 1.)[2]  Under the terms of the HELOC, Citibank provided Levin with a $144,000 line of credit secured by

---

    [1]By order filed August 25, 2009, the Court took the motions under submission.

    [2]The Court grants Citibank's unopposed request for judicial notice of the HELOC.

**EXHIBIT A**

1   Levin's real property located in Oakland, California.  (See id.)  The HELOC provided that

2   Citibank "may prohibit additional extensions of credit or reduce [the] Credit Limit during any

3   period in which . . . [t]he value of the Property declines significantly below the Property's

4   appraised value for purposes of the Account."  (See id. Ex. A at 5.)

5           In his complaint, Levin alleges that Citibank, on March 17, 2008, "reduced Levin's

6   credit limit by more than $80,000 – to his balance on that date."  (See Compl. ¶ 15.)

7   According to Levin, Citibank made its determination "through dubious automated valuation

8   models ('AVMs')" and, in particular, by employing "an AVM that used unreliable or

9   inaccurate data."  (See Compl. ¶¶ 3-4.)  Levin also alleges he was not informed of

10  Citibank's determination until March 21, 2008, when he received from Citibank a letter

11  Citibank mailed to him on March 18, 2008 (see Compl. ¶¶ 15-16), which letter stated:

12          We have determined that home values in your area, including your home
            value, have significantly declined.  As a result of this decline, your home's
13          value no longer supports the current credit limit for your home equity line of
            credit. . . .  This reduction in your credit limit will remain in effect until the
14          value in your home has been sufficiently restored.  In the future, if you believe
            that market conditions in your home's area are improving and you wish to
15          request that your credit limit be increased, you must call us . . . .

16  (See Compl. ¶ 3.)

17          Levin further alleges that, on March 19, 2008, before he received the letter, he had

18  written two checks drawn against the HELOC line of credit, and that he subsequently was

19  required to pay "not sufficient funds" fees.  (See Compl. ¶ 16.)  Levin additionally alleges

20  that, in May 2008, he was "forced [ ] to find a replacement home equity line from another

21  lender," that he paid "substantial closing costs" to the other lender, and that, in connection

22  with his application to such other lender, Levin obtained an appraisal indicating that, as of

23  April 2008, the value of his home had declined "less than 10 percent" from its value in 2006

24  when the line of credit was opened (see Compl. ¶¶ 3, 20), an amount Levin alleges does

25  not suffice to constitute a "significant" decline (see Compl. ¶ 3).  Thereafter, according to

26  Levin, when he used the replacement home equity line "to pay off and terminate" the

27  HELOC, Citibank assessed a "$434 early termination fee" against Levin.  (See Compl.

28  ¶ 20.)

                                                2

**DISCUSSION**

Citibank moves to dismiss each count in the complaint and, additionally, to strike certain allegations from the complaint.

**A. Motion to Dismiss**

The complaint includes eleven counts, each of which Citibank argues is subject to dismissal.

### 1. Count I: Declaratory Relief Under TILA and Regulation Z

Under the Truth in Lending Act ("TILA"), a creditor may "[p]rohibit additional extensions of credit or reduce the credit limit applicable to an account under [an open end consumer credit] plan during any period in which the value of the consumer's principle dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling." See 15 U.S.C. § 1647(c)(2)(B). Similarly, under "Regulation Z," a creditor may "[p]rohibit additional extensions of credit or reduce the credit limit applicable to an agreement during any period in which [ ] [t]he value of the dwelling that secures the plan declines significantly below the dwelling's appraised value for purposes of the [home equity] plan." See 12 C.F.R. § 226.5b(f)(3)(vi).

Levin alleges Citibank sent "generic credit line freeze letters" to "thousands of HELOC mortgagees," including himself. (See Compl. ¶¶ 3, 23.) In Count I, Levin seeks, on behalf of himself and a class he seeks to represent, a declaration that Citibank's "use of AVMs and related mass reduction of HELOC credit limits, and/or failure to reinstate HELOC credit limits based on its own AVMs, violates TILA and Regulation Z." (See Compl. ¶ 37.) Citibank argues Levin lack standing to seek such declaratory relief.

A plaintiff has standing to seek equitable relief, such as a declaration that the defendant's conduct has violated the law, where he "has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that [he] will again be wronged in a similar way." See Bird v. Lewis & Clark College, 303 F.3d 1015, 1019 (9th Cir. 2002) (internal quotations and citations omitted). As noted, Levin alleges he terminated the HELOC after Citibank reduced the credit limits. Because Levin and Citibank

3

no longer have a contractual relationship of any type, and because Levin does not include any allegation suggesting that, in the absence of such a relationship, there exists any possibility Citibank will violate Levin's rights under TILA and/or Regulation Z in the future, the Court finds Levin has failed to allege facts sufficient to support a claim for declaratory relief. See id. at 1019-20 (holding plaintiff lacked standing to seek declaration college had discriminated against her on basis of disability, where she had "since graduated" and did not allege any plans to return as student).

Accordingly, Count I is subject to dismissal.

**2. Count II: Violation of TILA and Regulation Z**

In Count II, Levin alleges that, contrary to Citibank's letter, the property securing the HELOC "did not decline significantly in value." (See Compl. ¶ 39.) In support thereof, Levin, as set forth above, alleges that in connection with his application for a line of credit from another lender, an appraisal of his property was conducted and that, according to said appraisal, the value of his property, between the date on which the line of credit was opened and April 2008, had declined "less than ten percent." (See Compl. ¶ 3.)

As noted, TILA and Regulation Z allow a creditor to reduce a credit limit if the "value" of the "dwelling" securing the mortgage declines "significantly" below the value at which the property was appraised at the time the line of credit was opened. See 15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A). In a supplement to Regulation Z in which "official staff interpretations of Regulation Z" are set forth, the staff of the Federal Reserve Board states as follows: "What constitutes a significant decline for purposes of § 226.5b(f)(3)(vi)(A) will vary according to individual circumstances. In any event, if the value of the dwelling declines such that the initial difference between the credit limit and the available equity (based on the property's appraised value for purposes of the plan) is reduced by fifty percent, this constitutes a significant decline in the value of the dwelling for

//

//

//

4

1    purposes of § 226.5b(f)(3)(vi)(A)."  See 12 C.F.R. Part 226, Supp. I, § 5b(f)(3)(vi) ¶ 6.[3]

2        In light of such interpretation, Citibank argues, Levin's complaint is insufficient to

3    state a claim for the reason that Levin has not alleged the equity in his home did not decline

4    significantly.  The Court disagrees.  In essence, Citibank argues that Levin is required to

5    negate in his complaint a particular theory on which Citibank's assertion of a significant

6    reduction in value could be based.  If Citibank's notice had set forth such theory, Citibank's

7    position might be argued with more persuasive force.  Because the law on which Citibank

8    relied in sending the subject notice contemplates a variety of individual circumstances

9    under which a finding of a significant decline can be predicated, however, Levin should not

10   be required to anticipate and endeavor to negate, in his complaint, the particular

11   circumstances underlying Citibank's determination.

12       Accordingly, Citibank has failed to show Count II is subject to dismissal.

13   **3. Count III:  Breach of Contract**

14       The HELOC, using language similar to that set forth in Regulation Z, provides that

15   "Citibank may prohibit additional extensions of credit or reduce [the] Credit Limit" under

16   specified circumstances, one of which is "[t]he value of the Property declines significantly

17   below the Property's appraised value for purposes of the Account."  (See Miller Decl. Ex. A

18   at 5.)

19       As noted, Levin alleges Citibank sent him a letter setting forth its determination that

20   the value of Levin's property had declined significantly.  In Count III, Levin alleges Citibank

21   breached the terms of the HELOC by reducing his credit line, because the value of his

22   property had not declined significantly below the property's appraised value.  Citibank

23   argues that Levin's allegations are insufficient to state a claim, again on the theory that

24   Levin is required to allege that the equity in his home did not decline significantly.

25

26       [3]Consistent therewith, the HELOC does not define the phrase "declines
27   significantly," but does provide one "example":  "[I]f the value of the Property declines such
     that the initial difference between the Credit Limit and the available equity (based on the
     Property's appraised value) is reduced by fifty percent, such an event would constitute a
28   significant decline in the value of the Property."  (See Miller Decl. Ex. A at 5.)

1    The Court, for the reasons set forth above with respect to Count II, finds Levin is not

2    required, in his complaint, to negate all possible circumstances on which Citibank could

3    have based its determination that the value of Levin's property significantly declined.

4    Accordingly, Citibank has failed to show Count III is subject to dismissal.

5    **4.  Count IV:  Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**

6    In Count IV, Levin alleges Citibank's violation of TILA constituted an "unlawful" act in

7    violation of § 17200 of the California Business & Professions Code.  Citibank argues Count

8    IV is subject to dismissal because Levin has failed to allege a violation of TILA.

9    "[A] lender's violation of TILA can be an unfair business practice or act under

10    [§ 17200]."  Pacific Shore Funding v. Lozo, 138 Cal. App. 4th 1342, 1347 (2006).  Because

11    the Court, for the reasons set forth above with respect to Count II, finds Levin's TILA claim

12    is not subject to dismissal, the Court finds Citibank has failed to show the entirety of Count

13    IV is subject to dismissal on the ground asserted by Citibank.

14    To the extent Levin seeks as relief for such violation, however, an order "enjoining

15    [Citibank's] unfair competition" (see Compl. ¶ 57), Count VI is subject to dismissal.  As

16    noted, a plaintiff has standing to seek equitable relief, such as an order enjoining the

17    defendant from engaging in certain conduct, where he "has suffered or is threatened with a

18    concrete and particularized legal harm, coupled with a sufficient likelihood that [he] will

19    again be wronged in a similar way."  See Bird, 303 F.3d at 1019 (holding plaintiff who had

20    "since graduated" and did not allege any plans to return as student lacked standing to seek

21    order requiring college to "change its overseas program").  The Court, for the reasons set

22    forth above with respect to Count I, finds Levin has failed to allege sufficient facts to

23    establish his standing to seek the  injunctive relief sought in Count IV.

24    **5.  Count V:  Breach of Implied Covenant of Good Faith and Fair Dealing**

25    As noted, Levin alleges Citibank made the determination to reduce his credit limit on

26    March 17, 2008 (see Compl. ¶ 15) and mailed him a letter so notifying him on March 18,

27    2008 (see id.), which letter he received on March 21, 2008 (see Compl. ¶ 16).  Also, as

28    noted, Levin alleges that, on March 19, 2008, before he received the letter, he had written

6

1  two checks drawn against the HELOC line of credit and subsequently was required to pay

2  "not sufficient funds" fees.  (See id.)  In Count V, Levin alleges Citibank breached the

3  implied covenant of good faith and fair dealing implicit in the HELOC by reducing his credit

4  limit "without notice," thus causing him to be liable for "not sufficient funds" fees.  (See

5  Compl. ¶¶ 61-62.)  Citibank argues Count V is subject to dismissal for the reason that the

6  conduct upon which the claim is based is addressed in a specific provision of the HELOC.

7        Under California law, the implied covenant of good faith and fair dealing "cannot

8  impose substantive duties or limits on the contracting parties beyond those incorporated in

9  the specific terms of their agreement."  See Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317, 349-

10  50 (2000).  Consequently, where a plaintiff bases a claim for breach of the implied

11  covenant of good faith and fair dealing on the theory that the plaintiff is entitled to a

12  substantive right "beyond those to which the parties actually agreed, the claim is invalid,"

13  and where a plaintiff bases such a claim on the defendant's failure to comply with the

14  "terms to which the parties did agree, it is superfluous."  See id. at 352.

15        Here, the HELOC includes the following provision, titled "Notices":

16        All Notices provided for in the Agreement shall be in writing and shall be
      deemed given (a) when delivered on a Business Day if delivered personally,
17      (b) on the day after deposit with any overnight courier if such date is a
      Business Day, (c) three days after deposit in the United States mail, if
18      delivered by certified mail, return receipt requested, postage prepaid and
      addressed to you at the address set forth on the first page of the Agreement
19      or addressed to Citibank at the customer service address shown on your
      monthly statement.
20
(See Miller Decl. Ex. A at 7.)
21
22        Because the time by which Citibank is required to provide notice is addressed by an

23  express provision of the HELOC, Levin may not base a claim for breach of the implied

24  covenant of good faith and fair dealing on a theory Citibank failed to provide timely notice of

25  the subject determination.

26        Accordingly, Count V is subject to dismissal.[4]

27  ────────────────────────

28        [4]Because the complaint contains no allegation that the manner in which Citibank
provided him notice violated the HELOC, the Court has not considered whether Levin could
state a breach of contract claim on the theory Citibank failed to comply with the above-

### 6. Count VI: Fraudulent Concealment

In Count VI, Levin alleges Citibank "failed to disclose to Levin . . . that it was reducing [his] credit limit until after [he] wrote checks on [his] HELOC which incurred 'not-sufficient-funds' fees" (see Compl. ¶ 66), and that Citibank's "failure to disclose that it was going to reduce the credit limits of Levin . . . constituted fraudulent concealment" (see Compl. ¶ 67), and was "deceptive" (see Compl. ¶ 68). Citibank argues Count VI is subject to dismissal because Levin has failed to plead his claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

Under California law, "[c]oncealment is a species of fraud or deceit." See Blickman Turkus LP v. MF Downtown Sunnyvale, 162 Cal. App. 4th 858, 868 (2008). "The elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." Id. (internal quotation, citation, and alteration omitted). With respect to the third of the above-referenced elements, the plaintiff must plead the concealment was "made by the defendant with the intent to induce action (or inaction) by the plaintiff." See id. at 869 (emphasis in original).

Here, as Citibank correctly notes, Levin fails to plead any facts to support a finding that Citibank, by mailing notice of its determination after it made the determination, acted with the intent to defraud Levin in any manner, much less that Citibank intended to induce Levin to write checks that would not be honored. Levin's conclusory reference to "fraudulent concealment" and his stated conclusion that the delay in notification was "deceptive" (see Compl. ¶¶ 67, 68) are insufficient. See In re Glenfed Sec. Litig., 42 F.3d

_____

quoted provision.

8

1541, 1547-48 (9th Cir. 1994) (holding "Rule 9(b) requires particularized allegations of the circumstances <u>constituting</u> fraud"; further holding "it [is] insufficient to set forth conclusory allegations of fraud") (emphasis in original).

Accordingly, Count VI is subject to dismissal.

**7. Count VII: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**

In Count VII, Levin alleges Citibank, by engaging in a "deceptive failure to disclose that it was going to reduce the credit limits," also engaged in "unfair competition." (<u>See</u> Compl. ¶¶ 73, 74.) In other words, Levin bases Count VII on the same theory as that supporting Count VI. Indeed, the allegations supporting Count VI and Count VII are in all material respects the same. (<u>See</u> Compl. ¶¶ 65-68; Compl. ¶¶ 71-74.)

A § 17200 claim based on a theory of a deceptive conduct is subject to Rule 9(b). <u>See</u> <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125-27 (9th Cir. 2009) (affirming dismissal of § 17200 claims based on theories of "fraudulent conduct" and "failure to disclose information pertinent to consumers," where plaintiff failed to allege claims in conformity with Rule 9(b)). Here, the Court finds, for the reasons set forth above with respect to Count VI, Count VII is subject to dismissal for failure to comply with Rule 9(b).

Moreover, to the extent Levin seeks an order "enjoining [Citibank's] unfair competition" (<u>see</u> Compl. ¶ 75), Count VII is subject to dismissal for the additional reasons set forth above with respect to Count IV.

**8. Count VIII: Breach of Implied Covenant of Good Faith and Fair Dealing**

As noted, Levin alleges that after Citibank reduced his credit limit, he was "forced [ ] to find a replacement home equity line from another lender," and that, when he used the replacement home equity line "to pay off and terminate" the HELOC, Citibank assessed a "$434 early termination fee" against him. (<u>See</u> Compl. ¶ 20.) In Count VIII, Levin alleges Citibank breached the implied covenant of good faith and fair dealing implicit in the HELOC by charging him the early termination fee. (<u>See</u> Compl. ¶ 79.) Citibank argues Count VIII is subject to dismissal because it had a contractual right to charge an early termination fee.

Under California law, the "implied covenant will only be recognized to further the

9

contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." See Wolf v. Walt Disney Pictures and Television, 162 Cal. App. 4th 1107, 1120 (2008). Stated otherwise, "if the defendant did what it was expressly given the right to do, there can be no breach [of the implied covenant]." See id.

Here, the HELOC, in a section titled "Early Closure Release Fee," provides as follows:

> If Citibank pays the closing costs to open your Account and, within 36 months of the date of this Agreement, you request that your Account be closed or take any other action which will result in a release of the Mortgage, you agree to pay an early closure release fee which will consist of all costs Citibank incurred to open your Account. These costs are disclosed as Closing Costs on the first page of this Agreement.

(See Miller Decl. Ex. A at 4.)

The first page of the HELOC states that Citibank paid the total amount of $434.25 in "Closing Costs" when the HELOC was opened. (See id.) Further, the date of the HELOC is July 7, 2006 (see id.), and Levin alleges he closed the HELOC in May 2008 (see Compl. ¶ 20), a date less than 36 months thereafter. Consequently, Citibank was expressly permitted by the terms of the HELOC to charge Levin a fee of $434.

Accordingly, Count XIII is subject to dismissal.[5]

**9. Count IX: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**

As pleaded, Count IX is derivative of Count XIII. (See Compl. ¶¶ 83, 86 (challenging Citibank's imposition of "early termination fees").) Accordingly, the Court finds, for the reasons set forth above with respect to Count XIII, Count IX is subject to dismissal.

Moreover, to the extent Levin seeks an order "enjoining [Citibank's] unfair competition" (see Compl. ¶ 90), Count IX is subject to dismissal for the additional reasons set forth above with respect to Count IV.

---

[5]If Levin establishes his claim that Citibank breached the terms of the HELOC by improperly reducing the credit limit, however, it would appear Levin could recover the early termination fee as part of his damages. Indeed, Levin has alleged the damages incurred as a result of the alleged breach of contract include his payment of the early termination fee. (See Compl. ¶ 49.)

**10. Count X:  Breach of Implied Covenant of Good Faith and Fair Dealing**

In Count X, Levin alleges he paid Citibank an "annual fee to maintain [the] HELOC." (See Compl. ¶ 92.)  Levin further alleges that Citibank breached the implied covenant of good faith and fair dealing by improperly reducing his credit limit (see Compl. ¶ 94), thereby depriving him of the "benefit of the bargain associated with [Citibank's] annual fee" (see Compl. ¶ 95).

As Citibank correctly notes, the alleged breach identified in Count X is the improper reduction of Levin's credit limit.  In particular, Levin alleges that one result of such breach is that he did not receive access to the full credit limit for the entirety of the year, even though he paid an annual fee.  Indeed, in Count III, Levin expressly seeks to recover, in the event he establishes a breach of contract, "the lost benefit of the bargain on annual account fees."  (See Compl. ¶ 49.)[6]

Accordingly, Count X is subject to dismissal as duplicative of Count III.

**11. Count XI: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**

In Count XI, Levin alleges Citibank improperly reduced his credit limit.  (See Compl. ¶¶ 100.)  As a result, Levin alleges, he was deprived of the "benefit of the bargain associated with [Citibank's] annual fee."  (See Compl. ¶ 101.)  In other words, Count XI is derivative of Count III.

Citibank argues Count XI is subject to dismissal because Levin has failed to allege a viable substantive claim on which Count XI could be based.  Because the Court, for the reasons set forth above with respect to Count III, has found Levin's breach of contract claim is not subject to dismissal, and because Levin alleges the reduction of his credit limit occurred as part of a unlawful practice by Citibank imposed on "thousands" (see Compl. ¶ 3), the Court finds Citibank has failed to show Count XI is subject to dismissal on the ground asserted by Citibank.

---

[6]Under the terms of the HELOC, Levin was required to pay a $50 annual fee, payable July 7 of each year.  (See Miller Decl. Ex. A at 1, 3.)  Because Levin had full use of the HELOC from July 2007 to March 17, 2008, it appears Levin is seeking a partial refund of the annual fee in the event he establishes a breach of contract.

1    To the extent Levin seeks an order "enjoining [Citibank's] unfair competition" (see

2  Compl. ¶ 104), however, Count XI is subject to dismissal for the reasons set forth above

3  with respect to Count IV.

4  **B. Motion to Strike**

5    "The court may strike from a pleading . . . any redundant, immaterial, impertinent, or

6  scandalous matter." Fed. R. Civ. P. 12(f). Citibank argues that certain paragraphs in the

7  complaint, or portions thereof, should be stricken as immaterial, impertinent and

8  scandalous.

9    In that regard, Citibank first argues ¶¶ 6 and 7 in the complaint should be stricken

10  because such paragraphs set forth alleged wrongdoing by Citigroup, Inc. ("Citigroup"),

11  which is not a party to the instant action. Consequently, Citibank argues, ¶¶ 6 and 7 are

12  immaterial. The Court agrees. The complaint does not allege that Citigroup itself had any

13  involvement or participation in any of the activity giving rise to the claims alleged by Levin

14  herein. Accordingly, ¶¶ 6 and 7 are subject to dismissal.

15    Second, Citibank argues that the following portions of ¶¶ 54, 85, and 99 are

16  immaterial and impertinent, and should be stricken:

17    Moreover, given all of the other allegations in this complaint, Defendant's acts
   alleged herein were unfair. Defendant's misconduct is a thinly-veiled attempt
18   to limit its exposure to the risk of collapse in the United States housing
   market. Defendant's conduct is especially unfair because it contributed to the
19   mortgage meltdown that led to the current economic crisis. . . . Defendant
   bears a measure of responsibility for the effects of the mortgage crisis on the
20   housing market, and on Levin's home value in particular.

21  (See Compl. ¶ 54.)

22    Defendant's misconduct is a thinly-veiled attempt to limit its exposure to the
   risk of collapse in the United States housing market. Defendant's conduct is
23   especially unfair because it contributed to the mortgage meltdown that led to
   the current economic crisis. . . . Defendant bears a measure of responsibility
24   for the effects of the mortgage crisis on the housing market, and on Levin's
   home value in particular.

25  (See Compl. ¶ 85.)[7]

26

—————————————————

27    [7]Paragraph 85 is set forth in Count IX, which, as discussed above, is subject to
28  dismissal. Said paragraph, however, is incorporated by reference in Count XI (see Compl.
   ¶ 97), which count will not be dismissed.

Defendant's misconduct is a thinly-veiled attempt to limit its exposure to the risk of collapse in the United States housing market. Defendant's conduct is especially unfair because it contributed to the subprime mortgage fiasco which has lead to the current economic crisis generally and the recent turbulence in the housing market in particular. Indeed, defendant played a significant role in the current collapse in the mortgage market: it services, originates, and owns billions of dollars worth of subprime mortgages. Defendant bears a measure of responsibility for the effects of the subprime mortgage bust on the housing market, and on Levin's home value in particular. . . .

(See Compl. ¶ 99.)

The Court finds the above-quoted allegations constitute hyperbolic and conclusory remarks that have no bearing on the question of whether Citibank, by reducing Levin's credit limit, failed to comply with TILA, Regulation Z, and/or the terms of the HELOC.

Accordingly, the above-quoted portions of ¶¶ 54, 85, and 99 will be stricken from the complaint.

**CONCLUSION**

For the reasons stated above:

1. Citibank's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

a. Counts I, V, VI, VII, VIII, IX, and X are hereby DISMISSED.

b. To the extent Counts IV and XI include a claim for injunctive relief, Counts VI and XI are hereby DISMISSED.

c. In all other respects, the motion is DENIED.

2. Citibank's motion to strike is hereby GRANTED:

a. Paragraphs 6 and 7 are hereby STRICKEN.

b. The portions of ¶¶ 54, 85, and 99 quoted above (see, supra, at 12-13) are hereby STRICKEN.

3. In the event Levin seeks to amend any or all of the dismissed counts to cure the deficiencies identified above, Levin is hereby ordered to file a First Amended Complaint no later than October 9, 2009. If Levin elects not to file a First Amended Complaint, the instant action will proceed on the remaining claims in the initial complaint.

13

1       4.  The Case Management Conference is hereby CONTINUED from September 25,

2  2009 to December 4, 2009.  A Joint Case Management Statement shall be filed no later

3  than November 25, 2009.

4       **IT IS SO ORDERED.**

5

6  Dated:  September 17, 2009

7                       MAXINE M. CHESNEY
                           United States District Judge

# EXHIBIT B

E-filing

1   David C. Parisi (SBN 162248)
    Suzanne Havens Beckman (SBN 188814)
2   PARISI & HAVENS, LLP
    15233 Valleyheart Drive
3   Sherman Oaks, California 91403
    Telephone: (818) 990-1299
4   dcparisi@parisihavens.com
    shavens@parisihavens.com
5
6   Jay Edelson (pro hac vice pending)
    KAMBEREDELSON, LLC
7   350 North LaSalle Street, Suite 1300
    Chicago, IL 60654
8   (312) 589-6370
    jedelson@kamberedelson.com
9
    Ethan Preston (pro hac vice pending)
10  350 North LaSalle Street, Suite 1300
    Chicago, IL 60654
11  (312) 589-6371
    ep@eplaw.us
12
13  *Attorneys for Plaintiff*
14
        IN THE UNITED STATES DISTRICT COURT
15
        FOR THE NORTHERN DISTRICT OF CALIFORNIA
16
        OAKLAND DIVSISION
17
    DAVID LEVIN, an individual, on his own    )  Case No. **CO9-00350**
18  behalf and on behalf of all others similarly )
    situated,                                   )
                                                )  **CLASS ACTION COMPLAINT**
        Plaintiff                               )  **AND JURY DEMAND**
                                                )
        v.                                      )
                                                )
    CITIBANK, N.A., a national banking          )
    association,                                )
                                                )
        Defendant.                              )
                                                )
27
28

FILED
JAN 2 6 2009
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

EMC

**EXHIBIT B**

ORIGINAL VIA FAX

GO 44 SEC. N
NOTICE OF ASSIGNMENT
TO MAGISTRATE JUDGE SENT



1   David Levin ("Levin" or "Plaintiff"), for his complaint, alleges as follows upon

2   information and belief, based upon, *inter alia*, investigation conducted by and through his

3   attorneys, except as to those allegations pertaining to Plaintiff and his counsel personally,

4   which are alleged upon personal knowledge:

5                                  **Introduction**

6       1.      This is case is about Defendant's illegal and improper reduction of credit

7   limits on home equity lines across the country in a thinly-veiled, illegal attempt to limit its

8   exposure to the risk of collapse in the United States housing market by breaking its promises

9   to the homeowners who have obtained mortgages from Defendant. Defendant services,

10  originates, and owns billions of dollars worth of prime and subprime mortgages, including

11  the home equity lines of credit ("HELOCs") at issue in this Complaint.

12      2.      Each member of the Class had a HELOC for which Defendant reduced the

13  available credit in a manner that was both illegal and grossly unfair. As a result of

14  Defendant's wrongful actions, Plaintiff Levin brings this class action on behalf of himself

15  and the putative class for actual damages and attorneys fees under the Truth-in-Lending Act

16  (15 U.S.C. § 1640(a)), damages for breach of contract, damages for breach of the implied

17  covenant of good faith and fair dealing, and equitable and injunctive remedies under

18  California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17203).

19                                 **Nature of the Claim**

20      3.      As early as April 2008, Defendant began sending form letters to thousands of

21  homeowners with home equity lines of credit ("HELOCs") from Defendant which indicated

22  that the homeowners' lines of credit were being summarily lowered. For many of the

23  homeowners who received these letters, their home value had not declined significantly, but

24  Defendant nevertheless reduced the credit limits on the corresponding HELOCs. The letter

25  Defendant sent to Plaintiff stated:

26          We have determined that ***home values in your area, including your home
            value, have significantly declined.*** As a result of this decline, ***your home's
27          value no longer supports the current credit limit for your home equity line of
            credit.*** . . . This reduction in your credit limit will remain in effect until the
28          value in your home has been sufficiently restored. In the future, if you believe
            that market conditions in your home's area are improving and you wish to

                                          2

request that your credit limit be increased, you must call us . . .
(emphasis added). When Plaintiff called Defendant, Defendant informed Plaintiff that if he
sought to reinstate his credit limit he would have to obtain a formal appraisal at his own
expense. Defendant has not disclosed how it determined that these home values had
decreased. On information and belief, Defendant made this determination through dubious
automated valuation models ("AVMs"), which are computerized econometric models tied to
a database of information related to home values. Defendant sent these letters to many
homeowners whose home value had not declined significantly and reduced the credit limits
on the corresponding HELOCs. Indeed, the value of Plaintiff's own home in April 2008 had
not declined significantly (i.e., less than 10 percent) from its value in 2006, when the
HELOC was issued.

4.    On information and belief, the basis of Defendant's letter was an AVM that
used unreliable or inaccurate data. The home loan industry made widespread use of the
AVMs in underwriting the loans which led to the current mortgage meltdown. Indeed, the
abuse and manipulation of AVMs to overvalue real estate (in order to justify larger loans and
correspondingly larger origination and/or transaction fees) has been widely criticized.
However, AVMs remain just as susceptible to manipulation now that the industry (including
Defendant) seeks to reduce their outstanding credit lines and their exposure to the housing
crisis they created.

5.    Defendant's systematic, mass reduction on the limits on its HELOCs was
illegal and deceptive. Federal law only permits Defendant to reduce credit limits if an
individual home securing a HELOC loses a significant amount of its value, and federal
regulators have recently warned financial institutions that it would violate federal law to
"reduce the credit limits of all HELOC accounts in a geographic area in which real estate
values are generally declining without assessing the value of the collateral that secures each
affected HELOC account."

6.    Defendant's conduct is especially troubling given the significant role it played
in the recent turbulence in the United States housing market. Indeed, in 2002, Defendant's

1  parent company (Citigroup Inc.) paid $215 million to settle Federal Trade Commission

2  charges of systematic and widespread deceptive and abusive home equity lending practices.

3  At the same time, Citigroup's top decision-makers have profited handsomely. For instance,

4  Charles Prince (the CEO of Citigroup, Inc.) received a staggering $110 million in cash, stock,

5  and stock options from 2002 to November 2007. When Mr. Prince retired in November 2007,

6  he received a cash bonus of $10.4 million, retaining almost $28 million in unvested stock and

7  stock options, in addition to being granted perquisites worth $1.5 million per year for the

8  next five years.

9        7.     Defendant's mass HELOC reductions are not only illegal and deceptive, but

10  they are deeply unfair. On October 3, 2008, Congress passed the Emergency Economic

11  Stabilization Act of 2008, Pub. L. No. 110-343. Under this legislation, the government

12  established the Troubled Assets Relief Program which will distribute an unprecedented $700

13  billion bailout (funded on the backs of American taxpayers) to Defendant's parent company

14  (Citigroup Inc.) and some other improvident financial institutions. The rationale advanced for

15  this bailout is that it is needed to ensure liquidity in the financial markets in the face of the

16  meltdown of mortgage-backed securities. Citigroup alone will receive $45 billion in capital

17  investments and guarantees for $306 billion for its mortgage-backed securities. Despite its

18  professed need for these public funds, Citigroup has continued with profligate expenses like

19  paying $400 million for the naming rights to the New York Met's stadium. In stark contrast,

20  Defendant's HELOC mortgagees, like all American consumers, are struggling in the faltering

21  economy. Defendant has deprived these mortgagors of a crucial source of consumer credit at

22  a critical time.

**Parties**

23        8.     **Plaintiff David Levin:** David Levin is a resident of Oakland, California.

24  From July 2006 to May 2008, Mr. Levin had a HELOC from Defendant secured by his

25  personal residence. On March 17, 2008, Defendant reduced the credit limit on Mr. Levin's

26  HELOC virtually down to his outstanding balance as of that date without any prior notice to

27  him.

28

1    9.    **Defendant Citibank, N.A.:** Citibank, N.A. ("Citibank") is a national banking

2    association with its main offices at 3900 Paradise Road, Suite 127, Las Vegas, Nevada

3    89109. Citibank is one of the country's largest banks and has 380 offices in this state, as well

4    as offices in Connecticut, Delaware, the District of Columbia, Florida, Illinois, Maryland,

5    Massachusetts, Nevada, New Jersey, New York, Pennsylvania, Texas, and Virginia.

6                                **Jurisdiction and Venue**

7    10.    Citibank is a national banking association whose head offices are in Nevada,

8    and can only be a citizen of Nevada under 28 U.S.C. § 1348 and *Wachovia Bank, N.A. v.*

9    *Schmidt*, 546 U.S. 303 (2006). This Complaint alleges claims on behalf of a national class of

10   home owners who are minimally diverse from Citibank. On information and belief, the

11   aggregate of these claims exceed the sum or value of $5,000,000. This Court has subject

12   matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2).

13   11.    This Court has personal jurisdiction over the Defendant under Cal. Code Civ.

14   Proc. § 410.10 because some of the acts alleged herein were committed, and Levin incurred

15   his injury, in California (and, specifically, the Northern District of California).

16   12.    Venue is also proper before this Court under 28 U.S.C. § 1391(a)(2), (c).

17                                **Intradistrict Assignment**

18   13.    A substantial part of the events which give rise to the claim occurred in the

19   place of Levin's residence, in Oakland, Alameda County. Under Local Rule 3-2(c), (d), this

20   civil action should be assigned to the Oakland division of the Northern District of California.

21                        **Allegations as to Plaintiff's Individual Claims**

22   14.    Defendant and Levin entered into a HELOC agreement in July 2006. Under the

23   terms of the HELOC, Defendant provided Levin a $144,000 line of credit. Levin's HELOC was

24   secured by a mortgage (as that term is defined under Cal. Civ. Code 2920) on his primary

25   residence.

26   15.    On March 17, 2008, without any warning whatsoever, Defendant reduced

27   Levin's credit limit by more than $80,000 – to his balance on that date. On March 18, 2008,

28   Defendant sent a letter to Levin which stated that Defendant had "determined that home

1   values in your area, including your home value, have significantly declined. As a result of

2   this decline, your home's value no longer supports the current credit limit for your home

3   equity line of credit." Defendant's March 18 letter was Levin's first notice that Defendant

4   *had already reduced his credit line the day before*.

5        16.     On or about March 19, 2008 and prior to receiving Defendant's March 18 letter,

6   Levin had written two checks drawn from his HELOC. Defendant did not honor these checks,

7   causing the payees of these checks to assess "not sufficient funds" fees against Levin. Levin

8   only received Defendant's letter on March 21, 2008.

9        17.     After receiving Defendant's letter, Levin contacted Defendant by telephone.

10  Defendant informed Levin that it would only reinstate the original credit limits to his HELOC if

11  he obtained an appraisal, at his expense, which indicated his home value has sufficiently

12  recovered. Defendant did not indicate what valuation would suffice to reinstate the original

13  credit limit on Levin's HELOC.

14       18.     Levin sustained a variety of damages from Defendant's wrongful acts. Under his

15  HELOC agreement with Defendant, Levin paid Defendant a $50 annual fee to maintain an

16  account with Defendant. When Defendant reduced Levin's credit limit, it proportionately

17  reduced and diminished the benefit of the bargain Levin expected to realize from that fee.

18       19.     Levin's HELOC with Defendant was his primary line of credit. Defendant's

19  unilateral reduction of the credit limits on Levin's HELOC dramatically lowered the ratio of

20  credit Levin had available to him to the outstanding balance on that credit. In turn, on

21  information and belief, Defendant's acts drove up his Credit Utilization Rate ("CUR"), a major

22  component of his credit rating. Defendant's acts damaged Levin's credit rating and increased

23  the cost of credit to him.

24       20.     Defendant's reduced credit limits forced Levin to find a replacement home

25  equity line from another lender in May 2008. In connection with this replacement home equity

26  line, Plaintiff obtained a home appraisal indicating his home had lost significantly less than ten

27  percent of its value. Levin paid substantial closing costs (including fees for home appraisal and

28  mortgage origination) to obtain his replacement home equity line. When Levin used his new

1    home equity line to pay off and terminate his HELOC with Defendant, Defendant assessed a

2    $434 early termination fee against Levin.

3    **Class Certification Allegations**

4    21.    Plaintiff seeks certification of a class and four subclasses under Federal Rule

5    23(b)(2).

6    22.    **Definition of the Class and Subclasses:** Pursuant to Federal Rule of Civil

7    Procedure 23, Levin brings this Complaint against Defendant on behalf of a class (the

8    "Class") of all persons nationwide who:

9    (a)    had a home equity line of credit from Defendant, the credit limits of
             which Defendant later reduced; and
10

11   (b)    who received the same or substantially similar letters from Defendant
             which indicated the equity line's credit limits were reduced because of
             a decline in home values in their general area.

12   The first subclass ("TILA Subclass") consists of all Class members who have objective

13   evidence, specifically including a home appraisal by a properly licensed appraiser or home sale,

14   showing that the value of the home securing the HELOC had not declined significantly since the

15   origination of Defendant's HELOC. The second subclass ("NSF Subclass") consists of all Class

16   members who i) wrote checks from their HELOC before receiving notice that Defendant

17   reduced their line of credit, and ii) incurred damages (including "not-sufficient-funds" fees)

18   because Defendant did not honor these checks after it reduced their HELOC. The third subclass

19   ("ETF Subclass") consists of all Class members who obtained a HELOC from another lender

20   after receiving Defendant's letter and who were subsequently charged a early termination fee

21   by Defendant. A fourth subclass ("Annual Fee Subclass") consists of all Class members who

22   paid an annual fee to maintain their HELOC account with Defendant. Excluded from the Class

23   and Subclasses are 1) any Judge or Magistrate presiding over this action and members of

24   their families; 2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and

25   any entity in which Defendant or its parents have a controlling interest and their current or

26   former employees, officers and directors; and 3) persons who properly execute and file a

27   timely request for exclusion from the class and 4) the legal representatives, successors or

28

7

1    assigns of any such excluded persons.

2         23.    **Numerosity:** The exact number of the members of the Class and Subclasses is

3    unknown and is not available to Levin, but it is clear that individual joinder is impracticable.

4    Defendant sent its generic credit line freeze letters (or substantially similar letters) to

5    thousands of HELOC mortgagors, and a substantial percentage of the recipients of these

6    letters fall into the definition of one or more of the Subclasses. Class Members can easily be

7    identified through Defendants' records and public records.

8         24.    **Commonality:** Common questions of fact and law exist as to all members of

9    the Class and Subclasses and predominate over the questions affecting only individual

10   members. These common questions include:

11             (a)    What were Defendant's criteria for reducing the credit limits on its
                      HELOCs;
12
               (b)    What were Defendant's methods for valuing the homes securing the
13                    HELOCs which credit limits it reduced;

14             (c)    Whether Defendant's reduction and failure to reinstate of the credit
                      limits on its HELOCs violated Regulation Z and/or TILA;
15
               (d)    Whether Defendant's reduction and failure to reinstate of the credit
16                    limits breached the terms of its HELOCs;

17             (e)    Whether Defendant's reduction and failure to reinstate of the credit
                      limits on its HELOCs was unfair;
18
               (f)    Whether Defendant's reduction of the credit limits on its HELOCs
19                    without giving any prior notice of the same was deceptive;

20             (g)    Whether Defendant's assessment of early termination fees against
                      persons who replaced their HELOC with Defendant with a HELOC
                      from another lender was unfair, illegal, or a breach of the implied
21                    covenant of good faith and fair dealing;

22             (h)    Whether Defendant reduction of the credit limits on its HELOCs
                      diminished the benefit of the bargain its mortgagors derived from
23                    paying annual fees to maintain their HELOC accounts;

24             (i)    Whether Levin and the Class are entitled to relief, and the nature of
                      such relief.
25
          25.    **Typicality:** Levin's claims are typical of the claims of other members of the
26
     Class and each separate Subclass, as Levin and other members sustained damages arising out
27
     of the wrongful conduct of Defendant, based upon the same transactions which were made
28

1   uniformly to Levin and the public. The California law under which Levin's claims arise do

2   not conflict with the laws of any other state in any material way.

3        26.    **Adequate Representation:** Plaintiff will fairly and adequately represent and

4   protect the interests of the members of the Class and each separate Subclass, and have

5   retained counsel who are competent and experienced in complex class actions. Plaintiff has

6   no interest antagonistic to those of the Class or any of the separate Subclasses, and Defendant

7   has no defenses unique to Plaintiff.

8        27.    **Policies Generally Applicable to the Class:** This class action is also

9   appropriate for certification because Defendant has acted or refused to act on grounds

10  generally applicable to the Class and each separate Subclass, thereby making appropriate

11  final injunctive relief or corresponding declaratory relief with respect to the Class or

12  Subclasses as a whole. The policies of the Defendant challenged herein apply and affect

13  members of the Class and respective Subclasses uniformly, and Plaintiff's challenge of these

14  policies hinges on Defendant's conduct, not on facts or law applicable unique to Plaintiff.

15  The Class and the Subclasses are suitable for certification under Rule 23(b)(2) because the

16  damages sought are incidental to the declaratory and injunctive relief requested in this

17  Complaint.

18       28.    **Predominance and Superiority:** This class action is appropriate for

19  certification because class proceedings are superior to all other available methods for the fair

20  and efficient adjudication of this controversy, as joinder of all members is impracticable. The

21  damages suffered by the individual members of the Class and Subclasses will likely be

22  relatively small, especially given the burden and expense of individual prosecution of the

23  complex litigation necessitated by Defendant's actions. It would be virtually impossible for

24  the individual members of the Class to obtain effective relief from the misconduct of

25  Defendant. Even if members of the Class themselves could sustain such individual litigation,

26  it would still not be preferable to a class action because individual litigation would increase

27  the delay and expense to all parties due to the complex legal and factual controversies

28  presented in this Complaint. By contrast, a class action presents far fewer management

1   difficulties and provides the benefits of single adjudication, economy of scale, and

2   comprehensive supervision by a single Court. Economies of time, effort, and expense will be

3   fostered and uniformity of decisions will be ensured.

4                    **Count I: Declaratory Relief Under TILA and Regulation Z**
                          (on behalf of Levin and the Class)

5        29.      Plaintiff incorporates the above allegations by reference.

6        30.      The Truth-in-Lending Act ("TILA") and its implementing regulation

7   (Regulation Z) restrict Defendant from changing any of the terms of a mortgage or HELOC –

8   including the credit limit. 15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3). The exception

9   relevant here permits Defendant to reduce the credit limits on its HELOCs "during any

10  period in which . . .[t]he value of the consumer's principal dwelling which secures any

11  outstanding balance is significantly less than the original appraisal value of the dwelling." 15

12  U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A).

13       31.      TILA and Regulation Z prohibit Defendant from reducing the credit limits on

14  its HELOCs unless the value of the home securing the credit line has actually declined

15  significantly. The Federal Reserve Board's Official Staff Commentary to Regulation Z

16  defines "significant decline" for purposes of § 226.5b(f)(3)(vi)(A) as a decline in home value

17  so that "the initial difference between the credit limit and the available equity (based on the

18  property's appraised value . . . ) is reduced by fifty percent." The Official Staff Commentary

19  further states that Regulation Z "does not require a creditor to obtain an appraisal before

20  suspending credit privileges [but] a significant decline must occur before suspension can

21  occur." On August 26, 2008, the Office of Thrift Supervision issued official guidance that

22  warned it would violate Regulation Z to "*reduce the credit limits of all HELOC accounts in*

23  *a geographic area in which real estate values are generally declining without assessing the*

24  *value of the collateral that secures each affected HELOC account.*"

25       32.      Before reducing the limits of its HELOCs, Defendant was legally required to

26  confirm that the value of each of the homes had in fact declined. Plaintiff alleges on

27  information and belief that, instead, Defendant used a variety of dubious AVMs based upon

28

1   fundamentally unreliable data (including the decline of home values in broad geographic

2   areas) to speculate about the value its mortgagors' homes and thus to justify the mass

3   reductions on its HELOC limits.

4          33.    Moreover, TILA and Regulation Z prohibit such a reduction in a HELOC

5   credit limit except "during [the] period in which" a home's value has substantially declined.

6   Defendant thus has an ongoing obligation to monitor the value of the collateral securing its

7   loans – including the value of Levin's home. Defendant's letter indicates that the credit

8   freeze will remain in effect "until the value in [Plaintiff's] home has been sufficiently

9   restored," implying that Defendant recognized its obligation to monitor the value of Levin's

10  home. However, Defendant subsequently insisted that *Levin* pay for and obtain an favorable

11  appraisal if Levin wanted Defendant to reinstate his HELOC's original credit limit.

12  Defendant never indicated what valuation would be necessary to reinstate Levin's HELOC,

13  nor what it deemed a "significant decline" in value.

14         34.    The appraisal Levin obtained in connection with his replacement HELOC

15  indicates that his home value has declined only marginally – not enough to justify a reduction

16  of his HELOC's credit limits. Defendant's failure to reinstate Plaintiff's HELOC raises one

17  of three implications:

18              (a)    Defendant's AVM may be inherently flawed because it undervalues
                       properties, and should not be used to justify reductions of HELOC
19                     credit limits;

20              (b)    Defendant may not have been monitoring the value of Levin's home,
                       because it would reinstated his credit limits before he canceled his
21                     HELOC and obtained a replacement HELOC;

22              (c)    Defendant's AVM may have provided a favorable valuation of Levin's
                       home, but Defendant ignored it and failed to reinstate the credit limits
23                     on Levin's HELOCs.

24         35.    On information and believe, Defendant 1) only used AVMs to reduce the

25  credit limits on the Class's HELOCs, failed to continue to monitor the value of the Class's

26  homes, and insisted the Class obtain formal appraisal to reinstate their HELOCs and/or 2)

27  used inherently faulty AVMs that undervalue the Class's home to justify the reduction of the

28  credit limits on the Class member's HELOCs.

1    36.    Plaintiff and the other members of the Class have suffered concrete, actual

2    harm from these practices. Defendant has indicated it will refuse and has refused to honor

3    checks drawn from HELOCs which exceed the improper reduction of credit limits which

4    Defendant imposed in connection with the letters alleged above.

5    37.    The Class and Defendant have adverse legal interests, and there is a

6    substantial controversy between the Class and Defendant of sufficient immediacy and reality

7    to warrant the issuance of a declaratory judgment as to whether Defendant's mass reduction

8    of and subsequent failure to reinstate the credit limits for the Class's HELOCs violates TILA

9    and Regulation Z. Levin, on his own behalf and behalf of the other Class members, seeks a

10   declaratory judgment under 27 U.S.C. § 2201 that Defendant's use of AVMs and related

11   mass reduction of HELOC credit limits, and/or its failure to reinstate HELOC credit limits

12   based on its own AVMs, violates TILA and Regulation Z.

13                  **Count II: Violation of the TILA and Regulation Z**
                        **(on behalf of Levin and TILA Subclass)**
14
     38.    Plaintiff incorporates the above allegations by reference.
15
     39.    Defendant reduced the credit limit for Levin and other TILA Subclass members'
16
     HELOCs. Contrary to Defendant's explanation, the homes securing the HELOCs for Levin and
17
     other TILA Subclass members did not decline significantly in value. As alleged above, the
18
     explanation in Defendant's letters was merely pretextual. Alternatively, the value of the homes
19
     securing the HELOCs for Levin and other TILA Subclass members was no longer in a
20
     significant decline from the original valuation, and Defendant's failed to reinstate their credit
21
     limits.
22
     40.    Defendant's reduction of and/or refusal to reinstate the credit limit for Levin and
23
     other TILA Subclass members' HELOCs violated the Truth-in-Lending Act and Regulation Z.
24
     41.    Defendant's violations of the Truth-in-Lending Act and Regulation Z damaged
25
     Levin and the other TILA Subclass members. These damages include early termination fees,
26
     appraisal fees, replacement HELOC closing costs, the increased price of credit, the lost benefit
27
     of the bargain on annual account fees, and "not sufficient fund" fees.
28

---

42.     Levin, on his own behalf and behalf of the other TILA Subclass members, seeks

actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. §

1640(a)(2)(B), and costs of the action, together with a reasonable attorneys' fee under 15 U.S.C.

§ 1640(a)(3).

### Count III: Breach of Contract
### (on behalf of Levin and TILA Subclass)

43.     Plaintiff incorporates the above allegations by reference.

44.     Levin and the other TILA Subclass members obtained HELOCs from

Defendant. The terms of these HELOCs constitute a contract between the TILA Subclass

members and Defendant.

45.     The HELOCs contain a term which purports to provide Defendant the discretion

to reduce the credit limit "during any period in which . . . the value of the [home securing the

HELOC] declines significantly below the [home's] appraised value for purposes of the

Account." Defendant drafted the terms of the HELOCs, and the ambiguity in the phrase

"declines significantly" must be construed against Defendant.

46.     Levin and the other TILA Subclass members performed under their HELOCs

with Defendant. They made the payments due to Defendant under the HELOC (including,

where appropriate, Defendant's early termination fee).

47.     The credit limit under TILA Subclass members' HELOCs was a material term of

the contract between TILA Subclass members and Defendant. Defendant materially breached

the terms of the HELOCs by reducing the credit limit for Levin and other TILA Subclass

members' HELOCs because their home value did not decline significantly. Alternatively,

Defendant materially breached the terms of the HELOCs by failing to reinstate the credit limit

for Levin and other TILA Subclass members' HELOCs after the value of the homes securing

the HELOCs for Levin and other TILA Subclass members was no longer in a significant

decline.

48.     To the extent that any of the TILA Subclass members' HELOCs contain any

term purporting to allow Defendant to unilaterally reduce the credit limit of TILA Class

1  members without complying with TILA and Regulation Z, such terms are void and violate

2  public policy.

3       49.    Defendant's breach of contract damaged Levin and the other TILA Subclass

4  members. These damages include early termination fees, appraisal fees, replacement HELOC

5  closing costs, the increased price of credit, the lost benefit of the bargain on annual account fees,

6  and "not sufficient fund" fees.

7       50.    Levin, on his own behalf and behalf of the other TILA Subclass members,

8  seeks damages for Defendant's breach of contract, as well as interest and attorney's fees and

9  costs pursuant to Cal. Code Civ. Proc. § 1021.5.

10      **Count IV: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**
              **(on behalf of Levin and TILA Subclass)**

11

12       51.    Plaintiff incorporates the above allegations by reference.

13       52.    Defendant's reduction of and/or failure to reinstate the original credit limits

14  for Levin and other TILA Subclass members' HELOCs violated TILA and Regulation Z.

   Defendant sent a form letter to each of the Appraisal Class members which stated:

15

16          We have determined that home values in your area, including your home
        value, have significantly declined. As a result of this decline, your

17          home's value no longer supports the current credit limit for your home
        equity line of credit. . . . In the future, if you believe that market

18          conditions in your home's area are improving and you wish to request
        that your credit limit be increased, you must call us

19       53.    Defendant's form letters were deceptive and untrue because they were based

20  on AVMs which recklessly or intentionally undervalued the homes securing the TILA

21  Subclass's HELOCs. On information and belief, Defendant either recklessly used AVMs which

22  did not have adequate safeguards to ensure their integrity or intentionally manipulated AVMs to

23  justify reducing Levin and other TILA Subclass members' HELOC credit limits. Moreover,

24  Defendant's use of these AVMs violated TILA and Regulation Z inasmuch as the AVMs were

25  not sufficient, reliable, or adequate grounds to justify Defendant's reduction of the HELOC

26  credit limits.

27       54.    Moreover, given all of the other allegations in this Complaint, Defendant's

28  acts alleged herein were unfair. Defendant's misconduct is a thinly-veiled attempt to limit its

1  exposure to the risk of collapse in the United States housing market. Defendant's conduct is

2  especially unfair because it contributed to the mortgage meltdown that led to the current

3  economic crisis. Defendant services, originates, and owns billions of dollars worth of

4  mortgages. Defendant bears a measure of responsibility for the effects of the mortgage crisis

5  on the housing market, and on Levin's home value in particular. In light of Defendant's

6  actions, its reduction of and/or failure to reinstate the TILA Subclass's HELOC credit limits

7  was unfair because it caused a substantial injury to consumers and competition that was not

8  outweighed by any countervailing benefits to consumers or to competition and was not an

9  injury the consumers themselves could reasonably have avoided. Moreover, Defendant's

10  reduction of and/or failure to reinstate the TILA Subclass's HELOC credit limits offends

11  public policy and/or violates the policy or spirit behind TILA, Regulation Z, Title XI of the

12  Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and the UCL, is

13  oppressive and unscrupulous, and threatens or harms competition in the post-bust HELOC

14  market.

15         55.     These unlawful, deceptive, and unfair acts and practices are unfair competition

16  in violation of the UCL. Defendant's violations of the UCL caused Levin and the other TILA

17  Subclass members injury in fact, through lost money and property.

18         56.     Defendant's violations of the UCL damaged Levin and the other TILA Subclass.

19  These damages occurred in the form of early appraisal fees, replacement HELOC closing costs,

20  the increased price of credit, the lost benefit of the bargain on annual account fees, and "not

21  sufficient fund" fees.

22         57.     Levin, on his own behalf and behalf of the other TILA Subclass members, seeks

23  an order enjoining Defendant's unfair competition alleged herein, and restitution of any money

24  or property obtained by Defendant through such unfair competition under the UCL (Cal. Bus. &

25  Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to Cal. Code Civ.

26  Proc. § 1021.5.

27         **Count V: Breach of the Implied Covenant of Good Faith and Fair Dealing**
                      **(on behalf of Levin and NSF Subclass)**
28

---

15

1    58.    Plaintiff incorporates the above allegations by reference.

2    59.    Levin and the other NSF Subclass members obtained HELOCs from Defendant.

3 The terms of these HELOCs constitute a contract between the NSF Subclass members and

4 Defendant.

5    60.    Implied in the terms of each of these HELOCs was a covenant of good faith

6 and fair dealing. This implied covenant prevents Defendant from engaging in conduct which

7 frustrates the NSF Subclass members' rights to the benefits of the contract or which would

8 injure the right of the NSF Subclass members' to receive the benefits of their HELOCs.

9    61.    The credit limit was a material term of the NSF Subclass members' HELOCs.

10 Defendant breached the implied covenant of good faith and fair dealing in the HELOCs by

11 reducing the credit limit for Levin and other ETF Subclass members' HELOCs without notice.

12    62.    Defendant's breach of contract caused Levin and other NSF Subclass members

13 to incur damages, including "not-sufficient-funds" fees which were charged by payees of checks

14 drawn from NSF Subclass members' HELOCs (and/or Defendant) and written after Defendant

15 reduced NSF Subclass members' credit line and before NSF Subclass members received notice

16 of the same.

17    63.    Levin, on his own behalf and behalf of the other NSF Subclass members, seeks

18 damages for Defendant's breach of the implied covenant of good faith and fair dealing, as well

19 as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

20    **Count VI: Fraudulent Concealment (on behalf of Levin and NSF Subclass)**

21    64.    Plaintiff incorporates the above allegations by reference.

22    65.    Levin and the other NSF Subclass members obtained HELOCs from Defendant.

23 The HELOCs contained credit limits. Prior to receiving Defendant's letter notifying them that

24 their HELOCs' credit limit had been reduced, Levin and the other NSF Subclass members had

25 an expectation or assumption that they would be able to write checks against the entire amount

26 of the HELOCs' credit limit. Having created this expectation or assumption, Defendant had a

27 duty to disclose to Levin and the other NSF Subclass members that it was going to reduce their

28 HELOCs' credit limit.

66.     Defendant failed to disclose to Levin and the other NSF Subclass members that it was reducing their HELOCs' credit limit until after they wrote checks on their HELOC which incurred "not-sufficient-funds" fees. The credit limit available under their HELOCs was material to the decision by Levin and the other NSF Subclass members to write checks out of their HELOC after Defendant reduced those credit limits. If Levin and the other NSF Subclass members had known that Defendant would dishonor their post-credit reduction checks, they would not have written such checks.

67.     Defendant's failure to disclose that it was going to reduce the credit limits of Levin and the other NSF Subclass members' HELOCs was constituted fraudulent concealment.

68.     Defendant's deceptive failure to disclose that it was going to reduce the credit limits of Levin and the other NSF Subclass members' HELOCs damaged Levin and the other NSF Subclass members. These damages took the form of "not-sufficient-funds" fees which were charged by payees of checks drawn from NSF Subclass members' HELOCs (and/or Defendant) and written after Defendant reduced NSF Subclass members' credit line and before NSF Subclass members received notice of the same.

69.     Levin, on his own behalf and behalf of the other NSF Subclass members, seeks damages arising from Defendant's fraudulent concealment, as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count VII: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**
**(on behalf of Levin and NSF Subclass)**

70.     Plaintiff incorporates the above allegations by reference.

71.     Levin and the other NSF Subclass members obtained HELOCs from Defendant. The HELOCs contained credit limits. Prior to receiving Defendant's letter notifying them that their HELOCs' credit limit had been reduced, Levin and the other NSF Subclass members had an expectation or assumption that they would be able to write checks against the entire amount of the HELOCs' credit limit. Having created this expectation or assumption, Defendant had a duty to disclose to Levin and the other NSF Subclass members that it was going to reduce their HELOCs' credit limit.

17

72.     Defendant failed to disclose to Levin and the other NSF Subclass members that it was reducing their HELOCs' credit limit until after they wrote checks on their HELOC which incurred "not-sufficient-funds" fees. The credit limit available under their HELOCs was material to the decision by Levin and the other NSF Subclass members to write checks out of their HELOC after Defendant reduced those credit limits. If Levin and the other NSF Subclass members had known that Defendant would dishonor their post-credit reduction checks, they would not have written such checks.

73.     Defendant's failure to disclose that it was going to reduce the credit limits of Levin and the other NSF Subclass members' HELOCs was deceptive and constituted unfair competition under the UCL. Defendant's violations of the UCL caused Levin and the other NSF Subclass members injury in fact, through lost money and property.

74.     Defendant's deceptive failure to disclose that it was going to reduce the credit limits of Levin and the other NSF Subclass members' HELOCs damaged Levin and the other NSF Subclass members. These damages took the form of "not-sufficient-funds" fees which were charged by payees of checks drawn from NSF Subclass members' HELOCs (and/or Defendant) and written after Defendant reduced NSF Subclass members' credit line and before NSF Subclass members received notice of the same.

75.     Levin, on his own behalf and behalf of the other NSF Subclass members, seeks an order enjoining Defendant's unfair competition alleged herein, and restitution of any money or property gained by the Defendant through such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

### Count VIII: Breach of the Implied Covenant of Good Faith and Fair Dealing
### (on behalf of Levin and ETF Subclass)

76.     Plaintiff incorporates the above allegations by reference.

77.     Levin and the other ETF Subclass members obtained HELOCs from Defendant. The terms of these HELOCs constitute a contract between the ETF Subclass members and Defendant.

78.    Implied in the terms of each of these HELOCs was a covenant of good faith and fair dealing. This implied covenant prevents Defendant from engaging in conduct which frustrates the ETF Subclass members' rights to the benefits of the contract or which would injure the right of the ETF Subclass members' to receive the benefits of their HELOCs.

79.    The credit limit was a material term of the ETF Subclass members' HELOCs. Defendant breached the implied covenant of good faith and fair dealing in the HELOCs by reducing and refusing to reinstate the credit limit for Levin and other ETF Subclass members' HELOCs and then charging Levin and other ETF Subclass members early termination fees when they replaced Defendant's HELOC with that of another lender, or simply terminated their HELOCs after determining that they were not economical to maintain under the reduced credit limits.

80.    Defendant's breach of the implied covenant of good faith and fair dealing damaged Levin and the other ETF Subclass members. These damages include Defendant's early termination fees.

81.    Levin, on his own behalf and behalf of the other ETF Subclass members, seeks damages for Defendant's breach of the implied covenant of good faith and fair dealing, as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count IX: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**
**(on behalf of Levin and ETF Subclass)**

82.    Plaintiff incorporates the above allegations by reference.

83.    Levin and the other ETF Subclass members obtained HELOCs from Defendant. Defendant reduced the credit limit for Levin and other ETF Subclass members' HELOCs without prior warning. Defendant charged Levin and other ETF Subclass members early termination fees when they obtained a replacement HELOC from other lenders after receiving Defendant's letter, or otherwise terminated their HELOCs.

84.    On information and belief, Defendant has used an AVM to justify its reduction of the credit limit for Levin and other ETF Subclass members' HELOCs. Defendant refuses to reinstate the credit limits for the ETF Subclass's HELOCs without an appraisal. On information

1    and belief, Defendant recklessly used AVMs which did not have adequate safeguards to ensure

2    their integrity, intentionally manipulated AVMs to justify reducing Levin and other ETF

3    Subclass members' HELOC credit limits, and/or failing to revalue the homes of the ETF

4    Subclass using its own AVM to reinstate their credit limits.

5         85.    Defendant's misconduct is a thinly-veiled attempt to limit its exposure to the risk

6    of collapse in the United States housing market. Defendant's conduct is especially unfair

7    because it contributed to the mortgage meltdown that led to the current economic crisis.

8    Defendant services, originates, and owns billions of dollars worth of mortgages. Defendant

9    bears a measure of responsibility for the effects of the mortgage crisis on the housing market,

10   and on Levin's home value in particular.

11        86.    Defendant imposed the early termination fees after 1) its actions contributed to

12   the decline of home values across the country and 2) its reduction of credit limits forced Levin

13   and other ETF Subclass to seek replacement HELOCs. In light of Defendant's actions, its

14   imposition of early termination fees was unfair because it caused a substantial injury to

15   consumers and competition by punishing consumers for seeking alternate sources of home

16   equity credit and is not outweighed by any countervailing benefits to consumers or to

17   competition. Finally, the imposition of early termination fees is not an injury the consumers

18   themselves could reasonably have avoided.

19        87.    Further, Defendant's imposition of early termination fees offends public policy

20   and/or violates the policy or spirit behind TILA, Regulation Z, and the UCL. Moreover, the

21   imposition of early termination fees is oppressive and unscrupulous, and threatens or harms

22   competition in the post-mortgage bust market for HELOCs. Defendant's early termination fees

23   also violate Cal. Civ. Code § 1671 as penalties.

24        88.    These unfair acts and practices are unfair competition in violation of the UCL.

25   Defendant's violations of the UCL caused Levin and the other ETF Subclass members injury in

26   fact, through lost money and property.

27        89.    Defendant's violations of the UCL have damaged Levin and the other ETF

28   Subclass members. These damages include Defendant's early termination fees.

90.     Levin, on his own behalf and behalf of the other ETF Subclass members, seeks

an order enjoining Defendant's unfair competition alleged herein, and restitution of any money

or property gained by the Defendant through such unfair competition under the UCL (Cal. Bus.

& Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to Cal. Code

Civ. Proc. § 1021.5.

## Count X: Breach of the Implied Covenant of Good Faith and Fair Dealing
## (on behalf of Levin and Annual Fee Subclass)

91.     Plaintiff incorporates the above allegations by reference.

92.     Levin and the other Annual Fee Subclass members obtained HELOCs from

Defendant. The terms of these HELOCs constitute a contract between the Annual Fee Subclass

members and Defendant. Under the HELOCs, Levin and the other Annual Fee Subclass

members paid Defendant an annual fee to maintain their HELOC accounts. When Defendant

reduced their credit limits, it proportionately diminished the benefit of the bargain associated

with that fee.

93.     Implied in the terms of each of these HELOCs was a covenant of good faith

and fair dealing. This implied covenant prevents Defendant from engaging in conduct which

frustrates the Annual Fee Subclass members' rights to the benefits of the contract or which

would injure the right of the ETF Subclass members' to receive the benefits of their

HELOCs.

94.     On information and belief, Defendant has used an AVM to justify its

reduction of the credit limit for Levin and other Annual Fee Subclass members' HELOCs.

Defendant refuses to reinstate the credit limits for the Annual Fee Subclass's HELOCs

without an appraisal. On information and belief, Defendant recklessly used AVMs which did

not have adequate safeguards to ensure their integrity, intentionally manipulated AVMs to

justify reducing Levin and other Annual Fee Subclass members' HELOC credit limits, and/or

failing to revalue the homes of the Annual Fee Subclass using its own AVM to reinstate their

credit limits.

95.     Defendant's breach of the implied covenant of good faith and fair dealing

1   damaged Levin and the other Annual Fee Subclass members. These damages include the lost

2   benefit of the bargain associated with Defendant's annual fee.

3       96.     Levin, on his own behalf and behalf of the other ETF Subclass members,

4   seeks damages for Defendant's breach of the implied covenant of good faith and fair dealing,

5   as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

6   **Count XI: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**
    **(on behalf of Levin and Annual Fee Subclass)**

7       97.     Plaintiff incorporates the above allegations by reference.

8       98.     Levin and the other Annual Fee Subclass members obtained HELOCs from

9   Defendant. Under the HELOCs, Levin and the other Annual Fee Subclass members paid

10  Defendant an annual fee to maintain their HELOC accounts.

11      99.     Defendant's misconduct is a thinly-veiled attempt to limit its exposure to the risk

12  of collapse in the United States housing market. Defendant's conduct is especially troubling

13  because it contributed to the subprime mortgage fiasco which has led to the current economic

14  crisis generally and the recent turbulence in the housing market in particular. Indeed, Defendant

15  played a significant role in the current collapse in the mortgage market: it services, originates,

16  and owns billions of dollars worth of subprime mortgages. Defendant bears a measure of

17  responsibility for the effects of the subprime mortgage bust on the housing market, and on

18  Levin's home value in particular. When Defendant reduced their credit limits, it proportionately

19  diminished the benefit of the bargain associated with that fee.

20      100.    On information and belief, Defendant has used an AVM to justify its reduction

21  of the credit limit for Levin and other Annual Fee Subclass members' HELOCs. On information

22  and belief, Defendant breached the implied covenant of good faith and fair dealing in the

23  HELOCs by either recklessly using AVMs which did not have adequate safeguards to ensure

24  their integrity or intentionally manipulated AVMs to justify reducing Levin and other Annual

25  Fee Subclass members' HELOC credit limits. Defendant's use of AVMs deprived Levin and

26  other Annual Fee Subclass members of the benefit of the bargain associated with Defendant's

27  annual fee.

28

101.   The imposition and failure to refund the annual fee was unfair because Defendant's reduction of Levin and other Annual Fee Subclass members' HELOC credit limits and use of AVMs deprived them of the benefit of the bargain associated with Defendant's annual fee. This caused a substantial injury to consumers and competition that was not outweighed by any countervailing benefits to consumers or to competition and was not an injury the consumers themselves could reasonably have avoided. Moreover, Defendant's imposition and failure to refund the annual fee offends public policy and/or violates the policy or spirit behind TILA, Regulation Z, Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and the UCL, is oppressive and unscrupulous, and threatens or harms competition in the post-mortgage bust market for HELOCs.

102.   These unfair acts and practices are unfair competition in violation of the UCL.

103.   Defendant's violations of the UCL damaged Levin and the other Annual Fee Subclass members. These damages include the lost benefit of the bargain associated with Defendant's annual fee. Defendant's violations of the UCL caused Levin and the other Annual Fee Subclass members injury in fact, through lost money and property.

104.   Levin, on his own behalf and behalf of the other Annual Fee Subclass members, seeks an order enjoining Defendant's unfair competition alleged herein, and restitution of any money or property gained by the Defendant through such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in their favor and against Defendant as follows:

(a)   Certifying the action as a class action and designating Plaintiff and his counsel as representatives of the Class and Subclasses;

(b)   Declaratory relief for the Class on Count I;

(c)   Statutory damages under 15 U.S.C. § 1640(a)(2)(B) for the TILA Subclass on Count II;

(d)   Actual damages for the TILA Subclass on Counts II to IV, including

early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, the lost benefit of the bargain on annual account fees, and "not sufficient fund" fees, actual damages on Count V and Count VI for the NSF Subclass, including "not-sufficient-funds" fees, actual damages on Count VIII for the ETF Subclass, including early termination fees, and actual damages on Count X, including Defendant's annual fees, in an amount to be proved at trial;

(e)     Equitable and injunctive relief for the TILA Class on Count IV, Count VII for the NSF Subclass, Count IX for the ETF Subclass, and Count XI for the Annual Fee Subclass, including restitution of property gained by the unfair competition alleged herein, and an order for accounting of such property;

(f)     An award of reasonable attorney's fees for Plaintiff and his counsel;

(g)     Awarding pre- and post-judgment interest; and

(h)     Granting such other and further relief as the Court may deem just and proper.

Dated: January 26, 2009

By

David C. Parisi (Cal. Bar. No. 162248)
Suzanne L. Havens Beckman (Cal. Bar. No. 188814)
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299
dparisi@parisihavens.com
shavens@parisihavens.com

Jay Edelson (Pro hac vice pending)
KAMBEREDELSON, LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
(312) 589-6370
jedelson@kamberedelson.com

Ethan Preston (Pro hac vice pending)
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
(312) 589-6371
ep@eplaw.us

**JURY TRIAL DEMAND**

The Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: January 23, 2009

By:_____

David C. Parisi (Cal. Bar. No. 162248)
Suzanne L. Havens Beckman (Cal. Bar. No. 188814)
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299
dparisi@parisihavens.com
shavensbeckman@parisihavens.com

Jay Edelson
KAMBEREDELSON, LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
(312) 589-6370
jedelson@kamberedelson.com

Ethan Preston
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
(312) 589-6371
ep@eplaw.us

# EXHIBIT C

DAVID C. PARISI (SBN 162248)
**PARISI & HAVENS, LLP**
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone: (818) 990-1299
Facsimile: (818) 501-7852
dcparisi@parisihavens.com

*Attorneys for Plaintiff*, DAVID LEVIN

William Edlund (SBN 20513)
**BARTKO ZANKEL TARRANT & MILLER**
900 Front Street, Suite 300
San Francisco , CA 94111
(415) 956-1900
(415) 956-1152
bedlund@bztm.com

LUCIA NALE (*pro hac vice*)
DEBRA BOGO-ERNST (*pro hac vice*)
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, Illinois 60606
(312) 701-7403
(312) 706-8474 (fax)
lnale@mayerbrown.com
dernst@mayerbrown.com

*Attorneys for Defendant*, CITIBANK, N.A.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LEVIN, individually and on behalf of a class of similarly situated individuals,<br><br>                    Plaintiff,<br><br>v.<br><br>CITIBANK, N.A., a national banking association,<br><br>                    Defendant. | ) CASE NO. C 09-00350 MMC<br>)<br>) **JOINT CASE MANAGEMENT**<br>) **STATEMENT**<br>)<br>) <u>**CLASS ACTION**</u><br>)<br>) Complaint filed:    January 26, 2009<br>) Judge:        Hon. Maxine M. Chesney<br>) Hearing:     May 8, 2009, 10:30 a.m. |

### JOINT CASE MANAGEMENT STATEMENT

**JOINT CASE MANAGEMENT STATEMENT**

**EXHIBIT C**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 1.    **Jurisdiction and Service:**

The parties agree that the Court has subject matter jurisdiction over this case under federal question jurisdiction.  Plaintiff alleges jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) as well.  No issues exist with respect to personal jurisdiction or venue and no parties remain to be served.

## 2.    **Facts:**

Plaintiff David Levin alleges on behalf of himself and all others similarly situated that Defendant Citibank improperly froze or suspended his Home Equity Line of Credit ("HELOC") in violation of both his HELOC agreement and applicable federal regulations. Plaintiff alleges that Citibank used an improper valuation model to determine the value of Plaintiff's home securing the HELOC, that Plaintiff's home did not decline significantly as required before Citibank froze the HELOC, and that notice was not timely provided.

Mr. Levin alleges he incurred returned check fees, a reduced credit score and other damages related to securing a new credit line from a different lender.  Mr. Levin also alleges that he was further injured when Citibank assessed an early termination fee against him.

Citibank denies each and every allegation made by Mr. Levin.  Citibank maintains that it complied with all applicable contractual, statutory and regulatory requirements in appropriately and lawfully reducing Mr. Levin's HELOC based on the decreased value of the property and providing appropriate notice to Mr. Levin of the HELOC reduction.  Citibank denies that this case is suitable for class certification because, *inter alia*, every borrower's individual circumstances and property would need to be analyzed individually to make any determination concerning each of the allegations and the defenses (which are, or may be, different as to each member of the putative Class or putative Subclasses).  Finally, Citibank expressly denies that Mr. Levin and/or any putative class have been damaged and/or are entitled to any damages.

Because Citibank has not yet formally responded to the Complaint, Mr. Levin maintains that he is not in a position to comment on Citibank's factual allegations at this time.

## 3.    **Legal Issues:**

The legal issues in this case include, without limitation:

a.    The maintenance of this case as a class action under Rule 23 and Citibank's defenses thereto;

b.    Whether Defendant's actions related to HELOCs are consistent with its loan agreements;

c.    Whether Defendant's actions related to of HELOCs are consistent with federal regulations, specifically 12 C.F.R. § 226.5b(f);

---

JOINT CASE MANAGEMENT STATEMENT      2

   d.   Whether Defendant's Notice procedures are consistent with 12 C.F.R. §
        226.9;
   e.   Whether Plaintiff Levin has standing to pursue his individual claims or those
        of the Class and alleged Sub-Classes;
   f.   Whether Defendant appropriately assessed early termination fees;
   g.   Whether Levin can maintain claims for damages and/or injunctive relief for
        alleged:  (Counts I-II) Violations of TILA and Regulation Z, (III) Breach of
        Contract, (IV, VII, IX and XI) Violation of the UCL, Cal. Bus. & Prof. Code §
        17200, (V, VIII and X) Breach of the Implied Covenant of Good Faith and
        Fair Dealing, (VI) Fraudulent Concealment and Defendant's defenses thereto;
        and
   h.   Whether Plaintiff Levin complied with the terms of his loan agreement with
        Defendant.

**4.   Motions:**

   There are no pending motions.  Plaintiff anticipates filing a motion for class
certification and, if necessary, discovery-related motions.

   Defendant Citibank may file a motion to dismiss the Complaint on or before the
responsive pleading due date and, depending on the course of discovery, a motion for
summary judgment later in the case.

**5.   Amendment of Pleadings:**

   Plaintiff does not anticipate the need to file any amendments to the pleadings at this
time.

**6.   Evidence Preservation:**

   Plaintiff requests that Defendant, consistent with the Defendant's burden, preserve
any and all relevant documents in their native format.  Plaintiff intends to send a separate,
more detailed document preservation and eDiscovery letter to the Defendant.

   Defendant asserts it has already taken appropriate steps to preserve relevant evidence
(including electronically stored information) by sending out a legal hold request promptly
upon learning of this lawsuit.

**7.   Disclosures:**

   The Parties presently estimate that they will be able to make timely initial written
disclosures two weeks after Defendant's responsive pleading due date.  However, depending
upon the discovery plan and for good cause shown, the Parties may request the Court to
extend the time for written disclosures.

**8.     Discovery:**

The Parties held a 26(f) conference on May 1, 2009.  The Parties are working together to memorialize a joint discovery plan and will file a copy with the Court as soon as possible but no later than May 7, 2009.

Plaintiff anticipates that a substantial portion of the discovery in this case will involve eDiscovery.  As will be discussed further during the Parties planned Rule 26(f) conference, Plaintiff proposes engaging in preliminary eDiscovery with the purpose of understanding Defendants' method of generating, storing and retrieving/searching electronic documents, its document retention policy, and repositories of electronically stored information.  Plaintiff also anticipates eDiscovery will be necessary relating to Defendants' use of Automated Valuation Models for valuating real estate that serves as security for its HELOC loans.

Plaintiff further agrees that discovery in this case should be bifurcated between Class and merits discovery, with Class discovery proceeding first.  In the event the Defendant files a motion to dismiss, Plaintiff reserves his right to seek discovery related to the motion, if necessary.  Defendant likely will oppose such a request.

Defendant objects to any discovery pending the resolution of its anticipated motion to dismiss.  Should discovery commence, Defendant agrees that it is appropriate to bifurcate class and merits discovery.  However, Defendant does not agree with Plaintiff that "a substantial portion of the discovery in this case will involve eDiscovery."  This process is often expensive, complicated, unduly burdensome, overbroad and potentially unnecessary.  Defendant will examine and appropriately respond to Plaintiff's discovery requests.  Defendant's position is that discovery should proceed in a tailored and reasonable way based upon the allegations in the Complaint.  Defendant will strenuously object to costly, overly broad, unduly burdensome and/or irrelevant discovery, expressly including, but not limited to, eDiscovery.

**9.     Class Actions:**

The Parties discussed the potential for a  timeline for class certification briefing during the Rule 26(f) conference and agreed that, given the present status of the case, setting such a timeline at this point is premature.   It is anticipated that the Defendant will ultimately oppose certification of the Class and Sub-Classes.

**10.    Related Cases:**

Defendant contends that there is one related case at this time pending in the United States District Court for the Southern District of Ohio, Western Division:  *Bailey v. Citibank, NA* (1:09-CV-278).

**11.    Relief:**

Plaintiff seeks the following relief:

JOINT CASE MANAGEMENT STATEMENT      4

(a)   An order certifying the action as a Class Action and designating Plaintiff and his counsel as representatives of the putative Class and putative Subclasses;

(b)   Declaratory relief for the putative Class on Count I;

(c)   Statutory Damages under 15 U.S.C. § 1640(a)(2)(B) for the putative TILA Subclass on Count II;

(d)   Alleged actual damages for the putative TILA Subclass on Counts II to IV, equaling the sum of all early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit as established by expert testimony or otherwise, the lost benefit of the bargain on annual account fees, and "not sufficient fund" fees, actual damages on Count V and Count VI for the putative NSF Subclass, including "not sufficient funds" fees, actual damages on Count VIII for the putative ETF Subclass, including early termination fees and actual damages on Count X, including Defendant's annual fees, in an amount to be proven at trial;

(e)   Equitable and injunctive relief for the putative TILA Class on Count IV, Count VII for the putative NSF Subclass, Count IX for the putative ETF Subclass, and Count XI for the putative Annual Fee Subclass, including restitution of property allegedly gained by the unfair competition alleged in the Complaint and an order for account for such property;

(f)   An award of reasonable attorneys' fees for Plaintiff and his counsel;

(g)   Awarding pre- and post-judgment interest; and

(h)   Granting such other and further relief as the Court may deem just and proper.

Defendant denies that Plaintiff or any other member of the putative class is entitled to any relief and/or damages.  Accordingly, Defendant intends to oppose any and all of Plaintiff's requested relief.  In addition, Defendant intends to seek attorneys' fees where appropriate.  The Plaintiff denies Defendant is entitled to any such relief.

**12.    Settlement and ADR:**

The Parties have had informal discussions regarding potential ADR.  Plaintiff is willing to participate in any ADR, with a preference for a mediation.  Defendant is open to informal discussions at this point but believes that it is premature for formal ADR at this time.  Should informal discussions prove unsuccessful, Defendant will participate in the ADR procedures that seem most appropriate for this case.

**13.    Consent to Magistrate Judge for All Purposes:**

Pursuant to Defendant's filing of March 20, 2009 (Dkt. No. 5) all parties do not consent to proceed before a magistrate judge for all purposes.

**14.    Other References:**

The Parties do not believe this case is suitable for reference to binding arbitration or a special master at this time.  As to the suitability on the reference to the Judicial Panel on

Multidistrict Litigation, Defendant's position is that the proceedings are still in preliminary stages and determinations on this issue have not been made.

**15.      Narrowing of Issues:**

The Parties can discuss, through the discovery process and any dispositive motions, the potential narrowing of issues.

**16.      Expedited Schedule:**

This case is not suitable for an expedited process or streamlined procedures.

**17.      Scheduling:**

The Parties intend to discuss proposed dates for the designation of experts, a discovery cutoff, hearing of dispositive motions, pretrial conference and trial at some future date.  At this point,  Plaintiff's position is that class discovery should be bifurcated from merits-based discovery.  In the event Defendant files a Motion to Dismiss, Plaintiff reserves its right to seek discovery related to the Motion to Dismiss, if necessary.  Defendant likely will oppose such a request.

If Defendant files a motion to dismiss, it will seek a stay of discovery pending resolution of the motion to dismiss.  If Defendant answers, Defendant agrees that class discovery should be bifurcated from merits-based discovery.

Plaintiff's position is that separate eDiscovery relating to Citibank's repositories of electronically stored information relevant to this case should commence first for a period of 60 days.  Following completion of eDiscovery, class discovery, followed by briefing on Class certification issues, should then commence.  Following a decision on Class Certification, the case should proceed to merits-based discovery.

Defendant disagrees with Plaintiff's position on the progression of discovery, including, but not limited to, eDiscovery.  Defendant will examine and appropriately respond to Plaintiff's discovery requests.  Defendant's position is that discovery should proceed in a tailored and reasonable way based upon the allegations in the Complaint.  With respect to eDiscovery specifically, this process is often expensive, complicated, unduly burdensome, overbroad and potentially unnecessary.  Defendant believes that a limited exchange of information could be appropriate but, to simplify discovery and the Court's efficient management of the case, Defendant needs to review Plaintiff's discovery requests before responding to any document production request.

**18.      Trial:**

Plaintiff anticipates a jury trial that would last approximately ten days to two weeks.

1   At this juncture and without knowing the scope of the issues (if any) that will proceed

2   to trial, Defendant cannot reasonably estimate the length of trial.  Defendant reserves its right to object to a jury trial to the extent inappropriately requested on any given claim.

3   **19.     Disclosure of Non-party Interested Entities or Persons:**

4   Plaintiff knows of no person, firm, partnership, corporation or other entity to have

5   either (i) a financial interest in the subject matter in controversy or in a party to the

6   proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

7   Defendant states as follows:

8       1.   The parent company of Citibank, N.A. is Citicorp Holdings, Inc.;

9       2.   Citicorp Holdings, Inc. owns 100% of the stock of Citibank, N.A.;
        3.   The parent company of Citicorp Holdings, Inc. is Citigroup Inc.; and

10      4.   Citigroup Inc. owns 100% of the stock of Citicorp Holdings, Inc.

11  **20.     Other Matters:**

12  Other than a mediation, Plaintiff does not know of any other matter that may facilitate

13  the just, speedy and inexpensive disposition of this matter.

14  Defendant is open to informal discussions at this point but believes that it is

15  premature for formal ADR at this time.  Should informal discussions prove unsuccessful, Defendant will participate in the ADR procedures that seem most appropriate for this case.

16  Dated:  May 1, 2009                          Dated:  May 1, 2009

17  /s/  DAVID C. PARISI_____                 /s/  DEBRA BOGO-ERNST_____

18  [Plaintiff's Counsel]                        [Defendant's Counsel]

19  DAVID C. PARISI (SBN 162248)                 DEBRA BOGO-ERNST (*pro hac vice*)

20  PARISI & HAVENS, LLP                         MAYER BROWN LLP
    15233 Valleyheart Drive                      71 South Wacker Drive

21  Sherman Oaks, California 91403               Chicago, Illinois 60606
    Telephone: (818) 990-1299                    (312) 701-7403

22  Facsimile: (818) 501-7852                    (312) 706-8474 (fax)
    dparisi@parisihavens.com                     dernst@mayerbrown.com

23
    *Attorneys for Plaintiff*                    *Attorneys for Defendant*

24  DAVID LEVIN                                  Citibank, N.A.

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT        7

# EXHIBIT D

1  DAVID C. PARISI (SBN 162248)
**PARISI & HAVENS, LLP**
2  15233 Valleyheart Drive
Sherman Oaks, California 91403
3  Telephone: (818) 990-1299
Facsimile: (818) 501-7852
4  dcparisi@parisihavens.com

5  *Attorneys for Plaintiff*, DAVID LEVIN

6
William Edlund (SBN 20513)
7  **BARTKO ZANKEL TARRANT & MILLER**
900 Front Street, Suite 300
8  San Francisco , CA 94111
(415) 956-1900
9  (415) 956-1152
bedlund@bztm.com
10

11  LUCIA NALE (*pro hac vice*)
DEBRA BOGO-ERNST (*pro hac vice*)
12  **MAYER BROWN LLP**
71 South Wacker Drive
13  Chicago, Illinois 60606
(312) 701-7403
14  (312) 706-8474 (fax)
lnale@mayerbrown.com
15  dernst@mayerbrown.com
16

17  *Attorneys for Defendant*, CITIBANK, N.A.

18  **IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**
19

| | |
|---|---|
| 20  DAVID LEVIN, individually and on behalf of a class of similarly situated individuals, | ) ) ) CASE NO. C 09-00350 MMC |
| 21 | ) |
| Plaintiff, | ) **SUPPLEMENT TO JOINT CASE** |
| 22 | ) **MANAGEMENT STATEMENT** |
| v. | ) |
| 23 | ) **CLASS ACTION** |
| CITIBANK, N.A., a national banking association, | ) |
| 24 | ) Complaint filed:    January 26, 2009 |
| Defendant. | ) Judge:      Hon. Maxine M. Chesney |
| 25 | ) Hearing:     May 8, 2009, 10:30 a.m. |

26

27  **SUPPLEMENT TO JOINT CASE MANAGEMENT STATEMENT**

28

**EXHIBIT D**

**8.      Discovery:**

**26(f) Discovery Plan**

On May 1, 2009, the parties held a Rule 26(f) conference. The parties' discovery plan is as follows:

**(A) Changes in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made:**

The Parties presently agree that they will be able to make timely initial written disclosures two weeks after Defendant's responsive pleading due date. However, depending upon the discovery plan and for good cause shown, the Parties may request the Court to extend the time for written disclosures.

**(B) The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;**

Plaintiff's position is that discovery should be conducted in phases. Plaintiff first asks the Court for 60 days to conduct electronic discovery ("eDiscovery") related to the method by which Citibank maintains its electronically stored information relevant to this case. Following completion of this preliminary eDiscovery, plaintiff is willing to allow the bifurcation of class discovery from merits discovery and engage in class discovery with briefing on class certification issues thereafter. Following a decision on class certification, the case should progress to merits-based discovery. Plaintiff is willing to submit a brief in support of a separate period for eDiscovery should the Court require such additional information.

Defendant objects to any discovery pending resolution of any motion to dismiss as may be filed by Citibank. Should discovery commence, defendant agrees that it is appropriate to bifurcate class and merits discovery and that merits and affirmative defense discovery should be deferred until after the Court's ruling, if any, on class certification. However, Defendant does not agree to unbridled eDiscovery during any phase of the proceedings. This process is often expensive, complicated, unduly burdensome, overbroad and potentially unnecessary. Defendant's position is that discovery should proceed in a tailored and reasonable way based upon the allegations in the Complaint. Defendant will strenuously object to costly, overly broad, unduly burdensome and/or irrelevant discovery, expressly including, but not limited to, eDiscovery.

In the event the Defendant files a motion to dismiss, plaintiff reserves his right to seek discovery related to the motion, if necessary. Defendant likely will oppose such a request.

**(C) Any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced;**

Plaintiff sent Defendant a letter on May 5, 2009 outlining his "expectations regarding eDiscovery and document preservation." Defendant is in the process of reviewing the letter and will consider the requests therein. At this point, the parties know that there is one potential dispute related to the form of production: plaintiff will ask for documents to be produced in native format, and defendant likely will oppose that request. However, the parties will confer about these issues and bring any disputes to the Court's attention.

**(D) Any issues about claims of privilege or of protection as trial-preparation materials, including — if the parties agree on a procedure to assert these claims after production — whether to ask the court to include their agreement in an order;**

Should discovery commence, the parties agree that a protective order is necessary to encompass the production, disclosure and/or use, at the appropriate time, of any confidential and/or proprietary information, and/or other protected personal, financial, or private business information of Citibank or its customers, including but not limited to information protected under the Gramm-Leach-Bliley Act. Defendant does not believe that it is appropriate, prior to the Court's ruling, if any, on class certification to proceed with discovery directed to customer information. Defendant will provide a draft protective order to plaintiff's counsel, and the parties will work together to hopefully present an agreed protective order to the Court so that the parties are ready to address the production, disclosure and/or use of confidential, proprietary, and/or other protected information at the appropriate time in the litigation.

**(E) Changes in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and**

Due to the preliminary nature of this case, including the fact that Citibank has not yet responded to the Complaint, the parties do not currently anticipate any changes to the limitations on discovery imposed by these rules and/or by local rules. However, the parties reserve their right to request any changes on discovery limitations as the case progresses.

**(F) Any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).**

The Court should issue a protective order described in (D) above to cover the production, disclosure and/or use of any confidential, proprietary, and/or other protected personal, financial or business information of Citibank or its customers. The parties do not contemplate any other orders at this time.

1  Dated:  May 7, 2009                          Dated:  May 7, 2009

2  /s/  DAVID C. PARISI_____              /s/  DEBRA BOGO-ERNST_____
   [Plaintiff's Counsel]                        [Defendant's Counsel]
3
   DAVID C. PARISI (SBN 162248)                 DEBRA BOGO-ERNST (*pro hac vice*)
4  PARISI & HAVENS, LLP                         MAYER BROWN LLP
   15233 Valleyheart Drive                      71 South Wacker Drive
5  Sherman Oaks, California 91403               Chicago, Illinois 60606
   Telephone: (818) 990-1299                    (312) 701-7403
6  Facsimile: (818) 501-7852                    (312) 706-8474 (fax)
7  dparisi@parisihavens.com                     dernst@mayerbrown.com

8  *Attorneys for Plaintiff*                    *Attorneys for Defendant*
   DAVID LEVIN                                  Citibank, N.A.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I, Toby Emerson, the undersigned, hereby certify and declare:

I am over the age of 18 years and am not a party to the within cause.  I am employed in the office of a member of the bar of this Court, at whose direction this service was made.  My business address is Bartko, Zankel, Tarrant & Miller, 900 Front Street, Suite 300, San Francisco, California  94111.

On May 7, 2009, I served the true copy of the attached document(s) titled exactly

- **SUPPLEMENT TO JOINT CASE MANAGEMENT STATEMENT**

on the interested parties in this action as follows:

_____  **BY MAIL:**  I am readily familiar with my employer's mail collection and processing practices, know that said mail is collected and deposited with the United States Postal Service on the same day it is deposited in the interoffice mail, and know that postage thereon is fully prepaid.  Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope(s) at Bartko, Zankel, Tarrant & Miller, 900 Front Street, Suite 300, San Francisco, California  94111, addressed, sealed and charges prepaid as follows:

_____  **BY HAND DELIVERY:**  I caused such envelope(s) by hand to the address designated below.

_____  **BY FEDERAL EXPRESS:**  I am readily familiar with my employer's practice for collection and processing of Federal Express courier service mail, and know that said Federal Express courier service mail is collected and deposited with a facility regularly maintained by Federal Express at San Francisco, California on the same day it is deposited in the interoffice mail.  Following ordinary business practice, I placed for collection and delivery to Federal Express such envelope(s) at Bartko, Zankel, Tarrant & Miller, 900 Front Street, Suite 300, San Francisco, California  94111, addressed, sealed and charges prepaid, marked for next business day delivery as follows:

_____  **BY FACSIMILE:**  On March 20, 2009 from my employer's facsimile machine telephone number (415) 956-1152, I transmitted a copy of said document(s) to the following addressee(s) at the following number(s), which is the number last given by that person on a document he or she has filed in this action and served on my employer.  The transmission was reported as complete and without error, and a transmission report properly issued by the transmitting machine, a true and correct copy of which is attached hereto pursuant to California Rule of Court, Rule 2008 (e)(4).

1.

2267.000/410429.1

1

    __X__    **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

2

3

4

Jay Edelson, Esq.
KamberEdelson LLP
350 North LaSalle Street
Suite 1300
Chicago, IL 60654
jedelson@kamberedelson.com

5

6

7

        I declare under penalty of perjury under the laws of the State of California that the

8

foregoing is true and correct and that this declaration was executed on May 7, 2009 at San

9

Francisco, California.

10

11

12

                                          Toby Emerson

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2.

2267.000/410429.1

# EXHIBIT E

1  DAVID C. PARISI (SBN 162248)
   **PARISI & HAVENS, LLP**
2  15233 Valleyheart Drive
   Sherman Oaks, California 91403
3  Telephone: (818) 990-1299
   Facsimile: (818) 501-7852
4  dcparisi@parisihavens.com

5  MICHAEL J. MCMORROW (*pro hac vice*)
6  KAMBEREDELSON LLC
   350 North LaSalle Street, Suite 1300
7  Chicago, Illinois 60654
   Telephone: (312) 589-6370
8  mmcmorrow@kamberedelson.com

9  *Attorneys for Plaintiff,* DAVID LEVIN

10
   William Edlund (SBN 20513)         LUCIA NALE (*pro hac vice*)
11 Howard I. Miller (SBN 251878)      DEBRA BOGO-ERNST (*pro hac vice*)
   **BARTKO ZANKEL TARRANT & MILLER**  **MAYER BROWN LLP**
12 900 Front Street, Suite 300         71 South Wacker Drive
   San Francisco , CA 94111            Chicago, Illinois 60606
13 (415) 956-1900                      (312) 701-7403
   (415) 956-1152                      (312) 706-8474 (fax)
14 bedlund@bztm.com                    lnale@mayerbrown.com
   hmiller@bztm.com                    dernst@mayerbrown.com
15

16 *Attorneys for Defendant,* CITIBANK, N.A.

17

18
             IN THE UNITED STATES DISTRICT COURT
19          FOR THE NORTHERN DISTRICT OF CALIFORNIA

20 DAVID LEVIN, individually and on behalf of a        )
   class of similarly situated individuals,            )  CASE NO. C 09-00350 MMC
21                                                      )
                                                        )  **JOINT CASE MANAGEMENT**
22                Plaintiff,                            )  **STATEMENT**
                                                        )
23 v.                                                   )  **CLASS ACTION**
                                                        )
24 CITIBANK, N.A., a national banking association,      )
                                                        )  Complaint filed:   January 26, 2009
25                Defendant.                            )  Judge:     Hon. Maxine M. Chesney
                                                        )  Hearing:   September 25, 2009,
26                                                      )           10:30 a.m.
27 _____            )

28
   _____
   **JOINT CASE MANAGEMENT STATEMENT**
                                                    CASE NO. C 09-00350 MMC
                              **EXHIBIT E**

**1.    Jurisdiction and Service:**

  The parties agree that the Court has subject matter jurisdiction over this case under federal question jurisdiction.   Plaintiff alleges jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) as well.   No issues exist with respect to personal jurisdiction or venue and no parties remain to be served.

**2.    Facts:**

  Plaintiff David Levin alleges on behalf of himself and all others similarly situated that Defendant Citibank improperly froze or suspended his Home Equity Line of Credit ("HELOC") in violation of both his HELOC agreement and applicable federal regulations.   Plaintiff alleges that Citibank used an improper valuation model to determine the value of Plaintiff's home securing the HELOC, that Plaintiff's home did not decline significantly as required before Citibank froze the HELOC, and that notice was not timely provided.

  Mr. Levin alleges he incurred returned check fees, a reduced credit score and other damages related to securing a new credit line from a different lender.  Mr. Levin also alleges that he was further injured when Citibank assessed an early termination fee against him.

  Citibank denies each and every allegation made by Mr. Levin.   Citibank maintains that it complied with all applicable contractual, statutory and regulatory requirements in appropriately and lawfully reducing Mr. Levin's HELOC based on the decreased value of the property and providing appropriate notice to Mr. Levin of the HELOC reduction.  Citibank denies that this case is suitable for class certification because, *inter alia*, every borrower's individual circumstances and property would need to be analyzed individually to make any determination concerning each of the allegations and the defenses (which are, or may be, different as to each member of the putative Class or putative

**JOINT CASE MANAGEMENT STATEMENT**

2

1   Subclasses). Finally, Citibank expressly denies that Mr. Levin and/or any putative class have

2   been damaged and/or are entitled to any damages.

3          Citibank filed a Motion to Dismiss (Doc. No. 30) and a Motion to Strike

4   Certain Allegations in Plaintiff's Complaint ("Motion to Strike") (Doc. No. 40) on June 5,

5   2009. Plaintiff responded to both motions on July 24, 2009, and Citibank replied on August

6   13, 2009. Accordingly, the motions are fully briefed for the Court's consideration. On

7   August 25, 2009, the Court vacated the hearing on Defendants' Motion to Dismiss and to

8   Strike, finding the matters suitable for decision on the parties' respective filings.

9   **3.     Legal Issues:**

10         The legal issues in this case include, without limitation:

11         a.      The maintenance of this case as a class action under Rule 23 and

12   Citibank's defenses thereto;

13         b.      Whether Defendant's actions related to HELOCs are consistent with

14   its loan agreements;

15         c.      Whether Defendant's actions related to of HELOCs are consistent with

16   federal regulations, specifically 12 C.F.R. § 226.5b(f);

17         d.      Whether Defendant's Notice procedures are consistent with 12 C.F.R.

18   § 226.9;

19         e.      Whether Plaintiff Levin has standing to pursue his individual claims or

20   those of the Class and alleged Sub-Classes;

21         f.      Whether Defendant appropriately assessed early termination fees;

22         g.      Whether Levin can maintain claims for damages and/or injunctive

23   relief for alleged:   (Counts I-II) Violations of TILA and Regulation Z, (III) Breach of

24   Contract, (IV, VII, IX and XI) Violation of the UCL, Cal. Bus. & Prof. Code § 17200, (V,

25   VIII and X) Breach of the Implied Covenant of Good Faith and Fair Dealing, (VI) Fraudulent

26   Concealment and Defendant's defenses thereto; and

27

28
   **JOINT CASE MANAGEMENT STATEMENT**

1        h.        Whether Plaintiff Levin complied with the terms of his loan agreement

2   with Defendant.

3   **4.        Motions:**

4            As noted above, Citibank's Motion to Dismiss and Motion to Strike are fully

5   briefed and pending.   Plaintiff anticipates filing a motion for class certification and, if

6   necessary, discovery-related motions.   Depending on the course of discovery, Defendant

7   Citibank may file a motion for summary judgment later in the case.

8   **5.        Amendment of Pleadings:**

9            Plaintiff does not anticipate the need to file any amendments to the pleadings

10  at this time.

11  **6.        Evidence Preservation:**

12           Plaintiff requests that Defendant, consistent with the Defendant's burden,

13  preserve any and all relevant documents in their native format.   Plaintiff sent a document

14  preservation and eDiscovery letter to the Defendant.

15           Defendant asserts it has already taken appropriate steps to preserve relevant

16  evidence (including electronically stored information) by sending out a legal hold request

17  promptly upon learning of this lawsuit.   Defendant will respond to Plaintiff's eDiscovery

18  letter following the Court's ruling on its Motion to Dismiss and Motion to Strike.

19  **7.        Disclosures:**

20           The Parties presently estimate that they will be able to make timely initial

21  written disclosures two weeks after the Court rules on Citibank's pending Motion to Dismiss

22  and Motion to Strike.   However, depending upon the discovery plan and for good cause

23  shown, the Parties may request the Court to extend the time for written disclosures.

24  **8.        Discovery:**

25           On May 1, 2009, the parties held a Rule 26(f) conference. The parties'

26  discovery plan is as follows:

27

28

**JOINT CASE MANAGEMENT STATEMENT**

1     **(A)    Changes in the timing, form, or requirement for disclosures under**

2 **Rule 26(a), including a statement of when initial disclosures were made or will be made:**

3         The Parties presently agree that they will be able to make timely initial written

4 disclosures two weeks after the Court rules on Citibank's pending Motion to Dismiss and

5 Motion to Strike.  However, depending upon the discovery plan and for good cause shown,

6 the Parties may request the Court to extend the time for written disclosures.

7     **(B)    The subjects on which discovery may be needed, when discovery**

8 **should be completed, and whether discovery should be conducted in phases or be**

9 **limited to or focused on particular issues;**

10         Plaintiff's position is that discovery should be conducted in phases. Plaintiff

11 first asks the Court for 60 days to conduct electronic discovery ("eDiscovery") related to the

12 method by which Citibank maintains its electronically stored information relevant to this

13 case.  Following completion of this preliminary eDiscovery, plaintiff is willing to allow the

14 bifurcation of class discovery from merits discovery and engage in class discovery with

15 briefing on class certification issues thereafter. Following a decision on class certification,

16 the case should progress to merits-based discovery.  Plaintiff is willing to submit a brief in

17 support of a separate period for eDiscovery should the Court require such additional

18 information.

19         Defendant objects to any discovery pending resolution of the pending Motion

20 to Dismiss and Motion to Strike.  Should discovery commence, defendant agrees that it is

21 appropriate to bifurcate class and merits discovery and that merits and affirmative defense

22 discovery should be deferred until after the Court's ruling, if any, on class certification.

23 However, Defendant does not agree to unbridled eDiscovery during any phase of the

24 proceedings.  This process is often expensive, complicated, unduly burdensome, overbroad

25 and potentially unnecessary.  Defendant's position is that discovery should proceed in a

26 tailored and reasonable way based upon the allegations in the Complaint. Defendant will

27

28

**JOINT CASE MANAGEMENT STATEMENT**

1  strenuously object to costly, overly broad, unduly burdensome and/or irrelevant discovery,

2  expressly including, but not limited to, eDiscovery.

3      **(C)   Any issues about disclosure or discovery of electronically stored**

4  **information, including the form or forms in which it should be produced;**

5      Plaintiff sent Defendant a letter outlining his "expectations regarding

6  eDiscovery and document preservation." Defendant is in the process of reviewing the letter

7  and will consider the requests therein.  At this point, the parties know that there is one

8  potential dispute related to the form of production: plaintiff will ask for documents to be

9  produced in native format, and defendant likely will oppose that request.  However, the

10 parties will confer about these issues and bring any disputes to the Court's attention.

11 Defendant will respond to this letter following resolution of its Motion to Dismiss and

12 Motion to Strike.

13     **(D)   Any issues about claims of privilege or of protection as trial-**

14 **preparation materials, including — if the parties agree on a procedure to assert these**

15 **claims after production — whether to ask the court to include their agreement in an**

16 **order;**

17     Should discovery commence, the parties agree that a protective order is

18 necessary to encompass the production, disclosure and/or use, at the appropriate time, of any

19 confidential and/or proprietary information, and/or other protected personal, financial, or

20 private business information of Citibank or its customers, including but not limited to

21 information protected under the Gramm-Leach-Bliley Act.  Defendant does not believe that it

22 is appropriate, prior to the Court's ruling, if any, on class certification to proceed with

23 discovery directed to customer information.  Defendant will provide a draft protective order

24 to plaintiff's counsel, and the parties will work together to hopefully present an agreed

25 protective order to the Court so that the parties are ready to address the production, disclosure

26

27

28

**JOINT CASE MANAGEMENT STATEMENT**

6

1  and/or use of confidential, proprietary, and/or other protected information at the appropriate

2  time in the litigation.

3  **(E)  Changes in the limitations on discovery imposed under these rules**

4  **or by local rule, and what other limitations should be imposed; and**

5  Due to the preliminary nature of this case, the parties do not currently

6  anticipate any changes to the limitations on discovery imposed by these rules and/or by local

7  rules. However, the parties reserve their right to request any changes on discovery limitations

8  as the case progresses.

9  **(F)  Any other orders that the court should issue under Rule 26(c) or**

10  **under Rule 16(b) and (c).**

11  The Court should issue a protective order described in (D) above. The parties

12  do not contemplate any other orders at this time.

13  **9.  Class Actions:**

14  The Parties discussed the potential for a  timeline for class certification

15  briefing during the Rule 26(f) conference and agreed that, given the present status of the

16  case, setting such a timeline at this point is premature.   It is anticipated that the Defendant

17  will ultimately oppose certification of the putative Class and Sub-Classes.

18  **10.  Related Cases:**

19  Defendant contends that there is one related case at this time pending in the

20  United States District Court for the Southern District of Ohio, Western Division:  *Bailey v.*

21  *Citibank, NA* (1:09-CV-278).

22  **11.  Relief:**

23  Plaintiff seeks the following relief:

24  (a)  An order certifying the action as a Class Action and designating Plaintiff and

25  his counsel as representatives of the putative Class and putative Subclasses;

26  (b)  Declaratory relief for the putative Class on Count I;

27

28

---

**JOINT CASE MANAGEMENT STATEMENT**

(c)  Statutory Damages under 15 U.S.C. § 1640(a)(2)(B) for the putative TILA

Subclass on Count II;

(d)  Alleged actual damages for the putative TILA Subclass on Counts II to IV,

equaling the sum of all early termination fees, appraisal fees, replacement

HELOC closing costs, the increased price of credit as established by expert

testimony or otherwise, the lost benefit of the bargain on annual account fees,

and "not sufficient fund" fees, actual damages on Count V and Count VI for

the putative NSF Subclass, including "not sufficient funds" fees, actual

damages on Count VIII for the putative ETF Subclass, including early

termination fees and actual damages on Count X, including Defendant's

annual fees, in and amount to be proven at trial;

(e)  Equitable and injunctive relief for the putative TILA Class on Count IV,

Count VII for the putative NSF Subclass, Count IX for the putative ETF

Subclass, and Count XI for the putative Annual Fee Subclass, including

restitution of property allegedly gained by the unfair competition alleged in

the Complaint and an order for account for such property;

(f)  An award of reasonable attorneys' fees for Plaintiff and his counsel;

(g)  Awarding pre- and post-judgment interest; and

(h)  Granting such other and further relief as the Court may deem just and proper.

Defendant denies that Plaintiff or any other member of the putative class is

entitled to any relief and/or damages.  Accordingly, Defendant intends to oppose any and all

of Plaintiff's requested relief.  In addition, Defendant intends to seek attorneys' fees where

appropriate.  The Plaintiff denies Defendant is entitled to any such relief.

**12.**   **Settlement and ADR:**

The Parties have had informal discussions regarding potential ADR.  Plaintiff

is willing to participate in any ADR, with a preference for a mediation.  Defendant is open to

informal discussions at this point but believes that it is premature for formal ADR at this time. Should informal discussions prove unsuccessful, Defendant will participate in the ADR procedures that seem most appropriate for this case. The parties appeared for a telephonic conference pursuant to the Court's ADR Program on August 13, 2009 and are scheduled to have an additional conference on September 21, 2009.

**13.    Consent to Magistrate Judge for All Purposes:**

Pursuant to Defendant's filing of March 20, 2009 (Dkt. No. 5) all parties do not consent to proceed before a magistrate judge for all purposes.

**14.    Other References:**

The Parties do not believe this case is suitable for reference to binding arbitration or a special master at this time. As to the suitability on the reference to the Judicial Panel on Multidistrict Litigation, Defendant's position is that the proceedings are still in preliminary stages and determinations on this issue have not been made.

**15.    Narrowing of Issues:**

The Parties can discuss, through the discovery process and any dispositive motions, the potential narrowing of issues.

**16.    Expedited Schedule:**

This case is not suitable for an expedited process or streamlined procedures.

**17.    Scheduling:**

The Parties intend to discuss proposed dates for the designation of experts, a discovery cutoff, hearing of dispositive motions, pretrial conference and trial at some future date. At this point, Plaintiff's position is that class discovery should be bifurcated from merits-based discovery. Defendant filed a Motion to Dismiss and a Motion to Strike. Accordingly, it is Defendant's position that discovery should be stayed pending resolution of the motion to dismiss. If Defendant answers, Defendant agrees that class discovery should be bifurcated from merits-based discovery.

**JOINT CASE MANAGEMENT STATEMENT**

9

1          Plaintiff's position is that separate eDiscovery relating to Citibank's

2   repositories of electronically stored information relevant to this case should commence first

3   for a period of 60 days. Following completion of eDiscovery, class discovery, followed by

4   briefing on Class certification issues, should then commence. Following a decision on Class

5   Certification, the case should proceed to merits-based discovery.

6          Defendant disagrees with Plaintiff's position on the progression of discovery,

7   including, but not limited to, eDiscovery. Defendant will examine and appropriately respond

8   to Plaintiff's discovery requests. Defendant's position is that discovery should proceed in a

9   tailored and reasonable way based upon the allegations in the Complaint. With respect to

10   eDiscovery specifically, this process is often expensive, complicated, unduly burdensome,

11   overbroad and potentially unnecessary. Defendant believes that a limited exchange of

12   information could be appropriate but, to simplify discovery and the Court's efficient

13   management of the case, Defendant needs to review Plaintiff's discovery requests before

14   responding to any document production request.

15   **18.   Trial:**

16          Plaintiff anticipates a jury trial that would last approximately ten days to two

17   weeks.

18          At this juncture and without knowing the scope of the issues (if any) that will

19   proceed to trial, Defendant cannot reasonably estimate the length of trial. Defendant reserves

20   its right to object to a jury trial to the extent inappropriately requested on any given claim.

21   **19.   Disclosure of Non-party Interested Entities or Persons:**

22          Plaintiff knows of no person, firm, partnership, corporation or other entity to

23   have either (i) a financial interest in the subject matter in controversy or in a party to the

24   proceeding; or (ii) any other kind of interest that could be substantially affected by the

25   outcome of the proceeding.

26          Defendant states as follows:

27

28

**JOINT CASE MANAGEMENT STATEMENT**

1          1.      The parent company of Citibank, N.A. is Citicorp Holdings, Inc.;

2          2.      Citicorp Holdings, Inc. owns 100% of the stock of Citibank, N.A.;

3          3.      The parent company of Citicorp Holdings, Inc. is Citigroup Inc.; and

4          4.      Citigroup Inc. owns 100% of the stock of Citicorp Holdings, Inc.

5   **20.      Other Matters:**

6          Other than a mediation, Plaintiff does not know of any other matter that may

7   facilitate the just, speedy and inexpensive disposition of this matter.

8          Defendant is open to informal discussions at this point but believes that it is

9   premature for formal ADR at this time.   Should informal discussions prove unsuccessful,

10  Defendant will participate in the ADR procedures that seem most appropriate for this case.

11

12  Dated:  September 14, 2009                    Dated:  September 14, 2009

13  /s/  DAVID C. PARISI                          /s/  DEBRA BOGO-ERNST
    [Plaintiff's Counsel]                         [Defendant's Counsel]
14
    DAVID C. PARISI (SBN 162248)                  DEBRA BOGO-ERNST (*pro hac vice*)
15  PARISI & HAVENS, LLP                          MAYER BROWN LLP
    15233 Valleyheart Drive                       71 South Wacker Drive
16  Sherman Oaks, California 91403                 Chicago, Illinois 60606
    Telephone: (818) 990-1299                     (312) 701-7403
17  Facsimile: (818) 501-7852                     (312) 706-8474 (fax)
    dparisi@parisihavens.com                      dernst@mayerbrown.com
18
19  *Attorneys for Plaintiff*                     *Attorneys for Defendant*
    DAVID LEVIN                                   Citibank, N.A.
20

21

22

23

24

25

26

27

28
    **JOINT CASE MANAGEMENT STATEMENT**
                          11

# EXHIBIT F

DAVID C. PARISI (SBN 162248)
**PARISI & HAVENS, LLP**
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone: (818) 990-1299
Facsimile: (818) 501-7852
dcparisi@parisihavens.com

MICHAEL J. MCMORROW (*pro hac vice*)
KAMBEREDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
mmcmorrow@kamberedelson.com

*Attorneys for Plaintiff*, DAVID LEVIN

William Edlund (SBN 20513)
Howard I. Miller (SBN 251878)
**BARTKO ZANKEL TARRANT & MILLER**
900 Front Street, Suite 300
San Francisco , CA 94111
(415) 956-1900
(415) 956-1152
bedlund@bztm.com
hmiller@bztm.com

LUCIA NALE (*pro hac vice*)
DEBRA BOGO-ERNST (*pro hac vice*)
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, Illinois 60606
(312) 701-7403
(312) 706-8474 (fax)
lnale@mayerbrown.com
dernst@mayerbrown.com

*Attorneys for Defendant*, CITIBANK, N.A.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

**JOINT CASE MANAGEMENT STATEMENT**

Case No.:  C 09-00350 MMC

**EXHIBIT F**

1   DAVID LEVIN, individually and on behalf of a      )   CASE NO. C 09-00350 MMC
    class of similarly situated individuals,          )
2                                                      )   **JOINT CASE MANAGEMENT**
                    Plaintiff,                         )   **STATEMENT**
3                                                      )
    v.                                                 )   **CLASS ACTION**
4                                                      )
    CITIBANK, N.A., a national banking association,    )
5                                                      )   Complaint filed:   January 26, 2009
                    Defendant.                         )   Judge:            Hon. Maxine M. Chesney
6                                                      )   Hearing:          December 4, 2009,
7                                                      )                     10:30 a.m.

8                        **JOINT CASE MANAGEMENT STATEMENT**

9   **1.    Jurisdiction and Service:**

10          The parties agree that the Court has subject matter jurisdiction over this case under
11  federal question jurisdiction.  Plaintiff alleges jurisdiction under the Class Action Fairness
    Act, 28 U.S.C. § 1332(d)(2) as well.  No issues exist with respect to personal jurisdiction or
12  venue and no parties remain to be served.

13  **2.    Facts:**

14          Plaintiff David Levin alleges on behalf of himself and all others similarly situated that
15  Defendant Citibank improperly froze or suspended his Home Equity Line of Credit
    ("HELOC") in violation of both his HELOC agreement and applicable federal regulations.
16  Plaintiff alleges that Citibank used an improper valuation model to determine the value of
    Plaintiff's home securing the HELOC, that Plaintiff's home did not decline significantly as
17  required before Citibank froze the HELOC, and that notice was not timely provided.

18          Mr. Levin alleges he incurred returned check fees, a reduced credit score and other
19  damages related to securing a new credit line from a different lender.  Mr. Levin also alleges
    that he was further injured when Citibank assessed an early termination fee against him.
20
            Citibank denies each and every allegation made by Mr. Levin.  Citibank maintains
21  that it complied with all applicable contractual, statutory and regulatory requirements in
22  appropriately and lawfully reducing Mr. Levin's HELOC based on the decreased value of the
    property and providing appropriate notice to Mr. Levin of the HELOC reduction.  Citibank
23  denies that this case is suitable for class certification because, *inter alia*, every borrower's
    individual circumstances and property would need to be analyzed individually to make any
24  determination concerning each of the allegations and the defenses (which are, or may be,
    different as to each member of the putative Class or putative Subclasses).  Finally, Citibank
25  expressly denies that Mr. Levin and/or any putative class have been damaged and/or are
26  entitled to any damages.

27

28

    JOINT CASE MANAGEMENT STATEMENT
                                                              Case No.:  C 09-00350 MMC

Citibank filed a Motion to Dismiss (Doc. No. 30) and a Motion to Strike Certain Allegations in Plaintiff's Complaint ("Motion to Strike") (Doc. No. 40) on June 5, 2009. The Court granted in part and denied in part Citibank's Motion to Dismiss and granted Citibank's Motion to Strike on September 17, 2009 (Doc. No. 57). On October 9, 2009, Plaintiff filed a First Amended Complaint (Doc. No. 59), leaving intact those counts on which the Court denied Citibank's Motion to Dismiss and pleading two additional Counts for alleged violation of TILA and Regulation Z (Count II) and alleged violation of California's UCL, Cal. Bus. & Prof. Code § 17200 (Count VI). (Doc. No. 59). On November 23, 2009, Citibank filed a Motion to Dismiss the First Amended Complaint as to the two new Counts. (Doc. No. 60).

3.    **Legal Issues:**

The legal issues in this case include, without limitation:

a.    The maintenance of this case as a class action under Rule 23 and Citibank's defenses thereto;

b.    Whether Defendant's actions related to HELOCs are consistent with its loan agreements;

c.    Whether Defendant's actions related to of HELOCs are consistent with federal regulations, specifically 12 C.F.R. § 226.5b(f);

d.    Whether Defendant's Notice procedures are consistent with 12 C.F.R. § 226.9;

e.    Whether Plaintiff Levin has standing to pursue his individual claims or those of the Class and alleged Sub-Classes;

f.    Whether Defendant appropriately assessed early termination fees;

g.    Whether Levin can maintain claims for damages and/or injunctive relief for alleged: (Counts I-II) Violations of TILA and Regulation Z, (III) Breach of Contract, and (IV, V and VI) Violation of the UCL, Cal. Bus. & Prof. Code § 17200; and

h.    Whether Plaintiff Levin complied with the terms of his loan agreement with Defendant.

4.    **Motions:**

As noted above, Citibank's Motion to Dismiss the First Amended Complaint is pending. Given that the rules would require Plaintiff to file his opposition brief on Christmas eve and Citibank to file its reply brief on New Year's Eve day, Plaintiff requests until January 15, 2010 to respond to this motion, and Citibank requests until February 12, 2010 to file a reply brief in support of the motion.

Plaintiff anticipates filing a motion for class certification and, if necessary, discovery-related motions. Depending on the course of discovery, Defendant Citibank may file a motion for summary judgment later in the case.

**JOINT CASE MANAGEMENT STATEMENT**

Case No.: C 09-00350 MMC

**5.     Amendment of Pleadings:**

As noted above, Plaintiff filed a First Amended Complaint on October 9, 2009. (Doc. No. 59). Plaintiff does not anticipate the need to file any further amendments to the pleadings at this time.

**6.     Evidence Preservation:**

Plaintiff requests that Defendant, consistent with the Defendant's burden, preserve any and all relevant documents in their native format. Plaintiff sent a document preservation and eDiscovery letter to the Defendant.

Defendant asserts it has already taken appropriate steps to preserve relevant evidence (including electronically stored information) by sending out a legal hold request promptly upon learning of this lawsuit. Defendant will respond to Plaintiff's eDiscovery letter following the Court's ruling on its Motion to Dismiss Plaintiff's First Amended Complaint.

**7.     Disclosures:**

The Parties presently estimate that they will be able to make timely initial written disclosures two weeks after the Court rules on Citibank's pending Motion to Dismiss Plaintiff's First Amended Complaint. However, depending upon the discovery plan and for good cause shown, the Parties may request the Court to extend the time for written disclosures.

**8.     Discovery:**

On May 1, 2009, the parties held a Rule 26(f) conference. The parties' discovery plan is as follows:

> **(A) Changes in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made:**
> The Parties presently agree that they will be able to make timely initial written disclosures two weeks after the Court rules on Citibank's pending Motion to Dismiss Plaintiff's First Amended Complaint. However, depending upon the discovery plan and for good cause shown, the Parties may request the Court to extend the time for written disclosures.
>
> **(B) The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;**
> Plaintiff's position is that discovery should be conducted in phases. Plaintiff first asks the Court for 60 days to conduct electronic discovery ("eDiscovery") related to the method by which Citibank maintains its electronically stored information relevant to this case. Following completion of this preliminary eDiscovery, Plaintiff is willing to

---

**JOINT CASE MANAGEMENT STATEMENT**

Case No.:  C 09-00350 MMC

allow the bifurcation of class discovery from merits discovery and engage in class discovery with briefing on class certification issues thereafter. Following a decision on class certification, the case should progress to merits-based discovery. Plaintiff is willing to submit a brief in support of a separate period for eDiscovery should the Court require such additional information.

Defendant objects to any discovery pending resolution of its Motion to Dismiss Plaintiff's First Amended Complaint. Should discovery commence, defendant agrees that it is appropriate to bifurcate class and merits discovery and that merits and affirmative defense discovery should be deferred until after the Court's ruling, if any, on class certification. However, Defendant does not agree to unbridled eDiscovery during any phase of the proceedings. This process is often expensive, complicated, unduly burdensome, overbroad and potentially unnecessary. Defendant's position is that discovery should proceed in a tailored and reasonable way based upon the allegations in the Complaint. Defendant will strenuously object to costly, overly broad, unduly burdensome and/or irrelevant discovery, expressly including, but not limited to, eDiscovery.

**(C) Any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced;**

Plaintiff sent Defendant a letter outlining his "expectations regarding eDiscovery and document preservation." Defendant is in the process of reviewing the letter and will consider the requests therein. At this point, the parties know that there is one potential dispute related to the form of production: Plaintiff will ask for documents to be produced in native format, and defendant likely will oppose that request. However, the parties will confer about these issues and bring any disputes to the Court's attention. Defendant will respond to this letter following resolution of its Motion to Dismiss Plaintiff's First Amended Complaint.

**(D) Any issues about claims of privilege or of protection as trial-preparation materials, including — if the parties agree on a procedure to assert these claims after production — whether to ask the court to include their agreement in an order;**

Should discovery commence, the parties agree that a protective order is necessary to encompass the production, disclosure and/or use, at the appropriate time, of any confidential and/or proprietary information, and/or other protected personal, financial, or private business information of Citibank or its customers, including but not limited to information protected under the Gramm-Leach-Bliley Act. Defendant does not believe that it is appropriate, prior to the Court's ruling, if any, on class certification to proceed with discovery directed to customer information. Defendant will provide a draft protective order to Plaintiff's counsel, and the parties will work together to hopefully present an agreed protective order to the Court so that the parties are ready to address the production, disclosure and/or use of confidential, proprietary, and/or other protected information at the appropriate time in the litigation.

---

JOINT CASE MANAGEMENT STATEMENT

Case No.:  C 09-00350 MMC

**(E) Changes in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and**

Due to the preliminary nature of this case, the parties do not currently anticipate any changes to the limitations on discovery imposed by these rules and/or by local rules. However, the parties reserve their right to request any changes on discovery limitations as the case progresses.

**(F) Any other orders that the court should issue under Rule 26(c) or under <u>Rule 16(b)</u> and <u>(c)</u>.**

The Court should issue a protective order described in (D) above. The parties do not contemplate any other orders at this time.

**9.    <u>Class Actions</u>:**

The Parties discussed the potential for a timeline for class certification briefing during the Rule 26(f) conference and agreed that, given the present status of the case, setting such a timeline at this point is premature.   It is anticipated that the Defendant will ultimately oppose certification of the putative Class and Sub-Classes.

**10.    <u>Related Cases</u>:**

Defendant contends that there are two related cases at this time pending: (1) in the United States District Court for the Southern District of Ohio, Western Division: *Bailey v. Citibank, NA* (1:09-CV-278); and (2) in the United States District Court for the Southern District of California: *Winkler v. Citigroup, Inc. et al.* (09-CV-1999 BTM CAB).

**11.    <u>Relief</u>:**

Plaintiff seeks the following relief:

(a)    An order certifying the action as a Class Action and designating Plaintiff and his counsel as representatives of the putative Class and putative Subclasses;

(b)    Statutory Damages under 15 U.S.C. § 1640(a)(2)(B) for the putative TILA Subclass on Count I and the putative NSF Subclass on Count II;

(c)    Alleged actual damages for the putative TILA Subclass on Counts I and III, equaling the sum of all early termination fees, appraisal fees, replacement HELOC closing costs, the alleged increased price of credit as established by expert testimony or otherwise, alleged adverse effects on credit scores, the alleged denial of the full use of the bargained-for benefit of the HELOCs, the alleged lost benefit of the bargain on annual account fees, and "not sufficient fund" fees in and amount to be proven at trial;

(d)    Alleged actual damages for the putative NSF Subclass on Count II, equaling the denial of the full use of the bargained-for benefit of the HELOCs, early

---

**JOINT CASE MANAGEMENT STATEMENT**

Case No.:  C 09-00350 MMC

termination fees, appraisal fees, replacement HELOC closing costs, the alleged increased price of credit, alleged adverse effects on credit scores, and the alleged loss benefit of the bargain on annual account fees, in an amount to be proven at trial;

(e)    Restitution of any money or property obtained by Citibank from Plaintiff and the members of the TILA Subclass, Annual Fee Subclass, and ETF Subclass on Counts IV, V, and VI;

(f)    An award of reasonable attorneys' fees for Plaintiff and his counsel;

(g)    Awarding pre- and post-judgment interest; and

(h)    Granting such other and further relief as the Court may deem just and proper.

Defendant denies that Plaintiff or any other member of the putative class is entitled to any relief and/or damages. Accordingly, Defendant intends to oppose any and all of Plaintiff's requested relief. In addition, Defendant intends to seek attorneys' fees where appropriate. The Plaintiff denies Defendant is entitled to any such relief.

**12.    Settlement and ADR:**

The Parties have had informal discussions regarding potential ADR. Plaintiff is willing to participate in any ADR, with a preference for a mediation. Defendant is open to informal discussions at this point but believes that it is premature for formal ADR at this time. Should informal discussions prove unsuccessful, Defendant will participate in the ADR procedures that seem most appropriate for this case. The parties appeared for telephonic conferences pursuant to the Court's ADR Program on August 13, 2009 and September 21, 2009 and are scheduled to have an additional conference on December 1, 2009.

**13.    Consent to Magistrate Judge for All Purposes:**

Pursuant to Defendant's filing of March 20, 2009 (Dkt. No. 5), all parties do not consent to proceed before a magistrate judge for all purposes.

**14.    Other References:**

The Parties do not believe this case is suitable for reference to binding arbitration or a special master at this time. As to the suitability on the reference to the Judicial Panel on Multidistrict Litigation, Defendant's position is that the proceedings are still in preliminary stages and determinations on this issue have not been made.

**15.    Narrowing of Issues:**

The Parties can discuss, through the discovery process and any dispositive motions, the potential narrowing of issues.

---

**JOINT CASE MANAGEMENT STATEMENT**

Case No.:  C 09-00350 MMC

**16.**    **Expedited Schedule:**

     This case is not suitable for an expedited process or streamlined procedures.

**17.**    **Scheduling:**

     The Parties intend to discuss proposed dates for the designation of experts, a discovery cutoff, hearing of dispositive motions, pretrial conference and trial at some future date. At this point, Plaintiff's position is that class discovery should be bifurcated from merits-based discovery. Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint. Accordingly, it is Defendant's position that discovery should be stayed pending resolution of the motion to dismiss. If Defendant answers, Defendant agrees that class discovery should be bifurcated from merits-based discovery.

     Plaintiff's position is that separate eDiscovery relating to Citibank's repositories of electronically stored information relevant to this case should commence first for a period of 60 days. Following completion of eDiscovery, class discovery, followed by briefing on Class certification issues, should then commence. Following a decision on Class Certification, the case should proceed to merits-based discovery.

     Defendant disagrees with Plaintiff's position on the progression of discovery, including, but not limited to, eDiscovery. Defendant will examine and appropriately respond to Plaintiff's discovery requests. Defendant's position is that discovery should proceed in a tailored and reasonable way based upon the allegations in the Complaint. With respect to eDiscovery specifically, this process is often expensive, complicated, unduly burdensome, overbroad and potentially unnecessary. Defendant believes that a limited exchange of information could be appropriate but, to simplify discovery and the Court's efficient management of the case, Defendant needs to review Plaintiff's discovery requests before responding to any document production request.

**18.**    **Trial:**

     Plaintiff anticipates a jury trial that would last approximately ten days to two weeks.

     At this juncture and without knowing the scope of the issues (if any) that will proceed to trial, Defendant cannot reasonably estimate the length of trial. Defendant reserves its right to object to a jury trial to the extent inappropriately requested on any given claim.

**19.**    **Disclosure of Non-party Interested Entities or Persons:**

     Plaintiff knows of no person, firm, partnership, corporation or other entity to have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**JOINT CASE MANAGEMENT STATEMENT**

Case No.: C 09-00350 MMC

Defendant states as follows:

1. The parent company of Citibank, N.A. is Citicorp Holdings, Inc.;
2. Citicorp Holdings, Inc. owns 100% of the stock of Citibank, N.A.;
3. The parent company of Citicorp Holdings, Inc. is Citigroup Inc.; and
4. Citigroup Inc. owns 100% of the stock of Citicorp Holdings, Inc.

**20.   Other Matters:**

Other than a mediation, Plaintiff does not know of any other matter that may facilitate the just, speedy and inexpensive disposition of this matter.

Defendant is open to informal discussions at this point but believes that it is premature for formal ADR at this time. Should informal discussions prove unsuccessful, Defendant will participate in the ADR procedures that seem most appropriate for this case.

Dated: November 25, 2009                  Dated: November 25, 2009

/s/  DAVID C. PARISI_____        /s/  DEBRA BOGO-ERNST_____
[Plaintiff's Counsel]                      [Defendant's Counsel]

DAVID C. PARISI (SBN 162248)               DEBRA BOGO-ERNST (*pro hac vice*)
PARISI & HAVENS, LLP                       MAYER BROWN LLP
15233 Valleyheart Drive                    71 South Wacker Drive
Sherman Oaks, California 91403             Chicago, Illinois 60606
Telephone: (818) 990-1299                  (312) 701-7403
Facsimile: (818) 501-7852                  (312) 706-8474 (fax)
dparisi@parisihavens.com                   dernst@mayerbrown.com

*Attorneys for Plaintiff*                   *Attorneys for Defendant*
DAVID LEVIN                                 Citibank, N.A.

JOINT CASE MANAGEMENT STATEMENT

Case No.:  C 09-00350 MMC