MAYER BROWN LLP
CHRISTOPHER P. MURPHY (SBN 120048)
cmurphy@mayerbrown.com
LISA W. CORNEHL (SBN 232733)
lcornehl@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, California  90071-1503
Telephone:   (213) 229-9500
Facsimile:   (213) 625-0248

MAYER BROWN LLP
LUCIA NALE (*pro hac vice pending*)
LNale@mayerbrown.com
DEBRA BOGO-ERNST (*pro hac vice pending*)
DErnst@mayerbrown.com
71 South Wacker Drive
Chicago, Illinois  60606
Telephone:   (312) 782-0600
Facsimile:   (312) 701-7711

Attorneys for Defendants
CITIGROUP INC., CITIMORTGAGE, INC. and
CITIBANK, N.A.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK WINKLER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP INC., a Delaware corporation; CITIMORTGAGE, INC., a New York corporation; and CITIBANK N.A.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 09-cv-1999-BTM-CAB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY**<br><br>[Filed concurrently with Notice of Motion and Motion to Dismiss and Request for Judicial Notice]<br><br>***Per Chambers, No Oral Argument Unless Requested By The Court***<br><br>Date:       March 12, 2010<br>Time:       11:00 a.m.<br>Place:      Courtroom 15<br>            940 Front Street, 15th Floor<br>            San Diego, CA  92101-8900<br><br>**Honorable Barry Ted Moskowitz**<br><br>Complaint Filed:  September 11, 2009 |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY (09cv1999)

28811774.1

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 2

III. ARGUMENT ..................................................................................................... 3

    A. Claims One, Two, And Three Must Be Dismissed For Failure To State A Claim ............................................................................................... 4

        1. Claims One And Two, Which Allege That The Reduction Of Winkler's Credit Limit Violated TILA, Fail Because They Are Untimely And Because Winkler Fails To Allege That His Home's Value Did Not Significantly Decline. ........................... 4

        2. Plaintiff Fails To Allege A Breach Of Contract Claim ............................ 7

    B. Plaintiff's Claims For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Under Claim Four Must Be Dismissed Because It Alleges Nothing More Than A Breach Of Contract ........................... 8

    C. Claim Six Under The UCL—Which Merely Bootstraps From Winkler's Other Claims—Must Be Dismissed Because Winkler Has Not Alleged Any Conduct That Was Not Authorized By TILA And The Contract .................................................................................... 10

    D. Claim Five Must Be Dismissed Because A Claim For Unjust Enrichment Is Not Actionable Where A Contract Governs The Parties' Transaction ....................................................................... 12

    E. Claim One Must Be Dismissed In Its Entirety And Claim Six Must Be Dismissed To The Extent It Seeks Injunctive Relief Because Winkler Lacks Standing To Pursue Prospective Relief ....................... 13

    F. Winkler's Claims Against Citigroup, CitiMortgage, And Does 1 Through 50 Must Be Dismissed Because He Has Not Alleged Any Wrongs By Those Defendants. ............................................................. 16

IV. CONCLUSION ................................................................................................. 17

28811774.1

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4
*Anderson Bros. Ford v. Valencia*,

5
452 U.S. 205 (1981)........................................................................................................5

6
*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)...........................................................................................3, 6, 11

7
*Bell Atlantic Corp. v. Twombly*,

8
550 U.S. 544 (2007)........................................................................................................3

9
*Cal. Med. Ass'n v. Aetna U. S. Healthcare of Cal., Inc.*,
94 Cal. App. 4th 151 (2001)....................................................................................12, 13

10

11
*Casey v. U.S. Bank Nat'l Ass'n*,
127 Cal. App. 4th 1138 (2005) .....................................................................................16

12
*Cattie v. Wal-Mart Stores, Inc.*,

13
504 F. Supp. 2d 939 (S.D. Cal. 2007)...........................................................................15

14
*Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ..................................................................................................11

15

16
*City of L.A. v. Lyons*,
461 U.S. 95 (1983).........................................................................................................14

17
*Comet Theatre Enters., Inc. v. Cartwright*,

18
195 F.2d 80 (9th Cir. 1952) ...........................................................................................13

19
*Deitz v. Comcast Corp.*,
Case No. 06-6352 WHA,

20
2006 U.S. Dist. LEXIS 94333 (N.D. Cal. Dec. 21, 2006).............................................15

21
*Dinosaur Dev., Inc. v. White*,

22
216 Cal. App. 3d 1310 (1989) .......................................................................................12

23
*Doe v. Wal-Mart Stores, Inc.*,
572 F.3d 677 (9th Cir. 2009) ..........................................................................................3

24
*Ford Motor Credit Co. v. Milhollin*,

25
444 U.S. 555 (1980)........................................................................................................5

26
*Gest v. Bradbury*,

27
443 F.3d 1177 (9th Cir. 2006) .......................................................................................14

28

-ii-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY (09cv1999)

28811774.1

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*Guz v. Bechtel Nat'l, Inc.*,
   24 Cal. 4th 317 (2000) ...................................................................................................8

*Hirsch v. Bank of Am.*,
   107 Cal. App. 4th 708 (2003) .......................................................................................12

*Hodgers-Durgin v. De La Vina*,
   199 F.3d 1037 (9th Cir. 1999) (en banc) ......................................................................14

*Hougue v. Holtville*,
   Case No. 07cv2229 WQH (WMc),
   2008 U.S. Dist. LEXIS 35258 (S.D. Cal. Apr. 30, 2008)............................................8, 9

*Hubbard v. Fid. Fed. Bank*,
   91 F.3d 75 (9th Cir. 1996) ..............................................................................................4

*In re Actimmune Mktg. Litig.*,
   No. C 08-02376 MHP,
   2009 U.S. Dist. LEXIS 103408 (N.D. Cal. Nov. 6, 2009).............................................11

*In re Cal. Title Ins. Antitrust Litig.*,
   No. C 08-01341 JSW,
   2009 U.S. Dist. LEXIS 43323 (N.D. Cal. May 21, 2009) .............................................17

*In re Wash. Mut. Overdraft Prot. Litig.*,
   539 F. Supp. 2d 1136 (C.D. Cal. 2008) ..........................................................................5

*Jogani v. Superior Court*,
   165 Cal. App. 4th 901 (2008) .......................................................................................12

*Jung v. Ass'n of Am. Med. Coll.*,
   300 F. Supp. 2d 119 (D.D.C. 2004)...............................................................................17

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .......................................................................................11

*Lazar v. Hertz Corp.*,
   69 Cal. App. 4th 1494 (1999) ........................................................................................11

*Le v. Cal. Nurses Ass'n*,
   Civ. No. S-05-2625 DFL KJM,
   2006 U.S. Dist. LEXIS 77321 (E.D. Cal. Oct. 12, 2006) .............................................15

*LeasePartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*,
   113 Nev. 747 (1997) .....................................................................................................12

-iii-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY (09cv1999)

28811774.1

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Levin v. Citibank, N.A.,*
No. C-09-0350 MMC,
2009 U.S. Dist. LEXIS 85332 (N.D. Cal. Sept. 17, 2009) ............................................6, 7, 9, 15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...........................................................................................................4

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004) ..........................................................................................12

*McCoy v. Chase Manhattan Bank*,
559 F.3d 963 (9th Cir 2009) ..............................................................................................8

*Melchior v. New Line Prods., Inc.*,
106 Cal. App. 4th 779 (2003)...........................................................................................12

*Nelsen v. King County*,
895 F.2d 1248 (9th Cir. 1990) ..........................................................................................14

*Nelson v. Heer*,
163 P.3d 420 (Nev. 2007)...................................................................................................8

*Penner v. Chase Bank USA, N.A.*,
Case No. C06-5092 FDB, 2006 U.S. Dist. LEXIS 53179
(W.D. Wash. Aug. 1, 2006) ................................................................................................6

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) ........................................................................................13

*Quest Commc'n v. Herakles, LLC,*
No. 2:07-cv-00393-MCE-KJM,
2008 WL 3864826 (E.D. Cal. Aug. 19, 2008)..................................................................16

*Rubio v. Capital One Bank (USA)*,
572 F. Supp. 2d 1157 (C.D. Cal. 2008) ...........................................................................10

*Rust v. Quality Car Corral, Inc.*,
614 F.2d 1118 (6th Cir. 1980) ............................................................................................4

*Stickwrath v. Globalstar, Inc.*,
527 F. Supp. 2d 992 (N.D. Cal. 2007) ..............................................................................15

*Suzuki v. Hitachi Global Storage Techs., Inc.*,
No. C 06-07289 MHP,
2007 U.S. Dist. LEXIS 51605 (N.D. Cal. July 17, 2007).................................................11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY (09cv1999)

28811774.1

## **TABLE OF AUTHORITIES**
### (*continued*)

Page(s)

*United States v. Bestfoods*,
  524 U.S. 51 (1998)....................................................................................................16, 17

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .................................................................................1, 2

*Waisbein v. UBS Fin. Servs., Inc.*,
  No. C-07-02328 MMC,
  2007 WL 2348699 (N.D. Cal. Aug. 15, 2007) ......................................................1

*Walker v. Gates*,
  No. CV-01-10904-GAF (PJWx),
  2002 U.S. Dist. LEXIS 27443 (C.D. Cal. May 23, 2002) .................................14, 15

*Williams v. Wash. Mut. Bank,*
  No. Civ. 07-2418 WBS GGH,
  2008 U.S. Dist. LEXIS 5325 (E.D. Cal. Jan. 11, 2008)......................................11

**STATUTES**

United States Code, title 15
  § 1640(e) ..............................................................................................................4
  § 1647(c)(2)(B) ................................................................................................5, 11

United States Code, title 28
  § 1404(a) ..............................................................................................................9

United States Code, title 42
  § 1983...................................................................................................................14

California Business & Professions Code
  § 17200................................................................................................................1, 11

**RULES AND REGULATIONS**

Code of Federal Regulations, title 12
  Part 226 ................................................................................................................5
  Part 226, Supp. I...............................................................................................5, 6

Federal Rules of Civil Procedure
  Rule 9(b) ..............................................................................................................11
  Rule 12(b)(1)........................................................................................................3
  Rule 12(b)(6)......................................................................................................2, 3

28811774.1

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

**FEDERAL GUIDELINES**

Federal Deposit Insurance Corporation
    FIL-58-2008 ...........................................................................................................................7
    October 5, 2006 (FIL-89-2006) ............................................................................................7
    May 24, 2005 (FIL-45-2005) ...............................................................................................7

**OTHER AUTHORITIES**

CACI 325 (Dec. 2008 Edition) ........................................................................................................8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY (09cv1999)

28811774.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Mark Winkler ("Winkler") signed a home equity line of credit agreement ("HELOC") with Citibank, N.A. ("Citibank") in April 2007.  Under the HELOC, Citibank provided Winkler with a line of credit secured by a mortgage on Winkler's primary residence. The HELOC permits a credit limit reduction, and Citibank reduced Winkler's credit limit because Winkler's home had declined "significantly" below its appraised value.  Winkler responded by terminating his HELOC and filing this putative class action.  He alleges that Citibank's actions violated the Truth in Lending Act ("TILA") and California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) ("UCL"), breached the duty of good faith and fair dealing, and resulted in unjust enrichment.  For the reasons explained below, and as demonstrated by the HELOC which plaintiff fails to provide the Court,[1] Winkler's claims must be dismissed.

First, Winkler's TILA claims (Claims One and Two) fail because they are untimely and because Winkler fails to allege facts to support his conclusion that the reduction of his credit limit violated the statute or its implementing regulations.  Second, Winkler's breach of contract claim (Claim Three) likewise fails because he has not pleaded facts sufficient to allege that Citibank violated the contract, which (like TILA) permitted Citibank to reduce his credit limit. Third, Winkler cannot state a claim for breach of the implied covenant of good faith and fair dealing (Claim Four) because the matters at issue are governed by the express terms of his HELOC.  Fourth, plaintiff's claim under the California Business & Professional Code (Claim Six) is defeated by the failure of his TILA and breach of contract claims.  Fifth, Winkler's unjust enrichment claim (Claim Five) fails because such a claim is not actionable where, as here, a

---

[1]      Plaintiff alleges his "individual" claim based on his HELOC (Compl. ¶ 21), and relies upon that document pervasively throughout the complaint. *Id.* ¶¶ 22-23, 25, 30, 46, *et seq.* Since the HELOC is central to plaintiff's claim, it may fairly be considered in connection with this 12(b)(6) motion. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Defendants request that the Court take judicial notice of the HELOC (Exhibit A to Request for Judicial Notice ("RFJN")). *See Waisbein v. UBS Fin. Servs., Inc.,* No. C-07-02328 MMC, 2007 WL 2348699, at *2 (N.D. Cal. Aug. 15, 2007) (collecting 9th Circuit authorities).

1   contract governs the parties' transaction.  Sixth, Winkler lacks standing to request declaratory or

2   injunctive relief under TILA (Claim One) and the UCL (Claim Six) because he has terminated

3   his HELOC with Citibank and therefore cannot demonstrate that he is threatened by any

4   repetition of the alleged violation.  Finally, Winkler's unspecified and vague claims against the

5   other defendants in this matter – Citigroup, CitiMortgage, and Does 1 through 50 – must be

6   dismissed for failure to state a claim.  Accordingly, Winkler's complaint should be dismissed in

7   its entirety.

8   **II.    BACKGROUND**

9          In April 2007, Winkler entered into a HELOC with Citibank under which Citibank

10  provided a $250,000 line of credit secured by a mortgage on Winkler's primary residence.[2]  *See*

11  Ex. A to RFJN.  Paragraph 10(c) of the HELOC provided that Citibank could reduce Winkler's

12  credit limit during any period in which "[t]he value of the Property [securing the mortgage]

13  declines significantly below the Property's appraised value for purposes of the Account."  *See*

14  *id*., ¶ 10(c).  It further stated that "if the value of the Property declines such that the initial

15  difference between the Credit Limit and the available equity (based on the Property's appraised

16  value) is reduced by fifty percent, such an event would constitute a significant decline in the

17  value of the Property."  *Id*.

18         On April 14, 2008, Citibank reduced Winkler's credit limit by $240,000.  Compl. ¶ 22;

19  *see also* RFJN, Ex. B.[3]  The next day, Citibank mailed Winkler a letter notifying him that it had

20  "determined that home values in your area, including your home value, have significantly

21  declined," and that, as a result, "your home's value no longer supports the current credit limit for

22

23  [2]        For purposes of this motion to dismiss, Citibank is required to treat plaintiff's allegations
    as true.  However, Citibank expressly denies all of plaintiff's claims.

24  [3]        In his complaint, Winkler does not provide the exact date of the HELOC reduction,
25  stating instead that "[i]n 2008, Plaintiff learned that Citi unilaterally reduced his HELOC."
    Compl. ¶ 22.  Because this letter is central to Winkler's claims and because it demonstrates that
26  Winkler filed this action outside of TILA's statute of limitations, it may fairly be considered as
    part of this 12(b)(6) motion.  *See Ritchie*, 342 F.3d at 908 (documents may fairly be considered
27  as part of a 12(b)(6) motion when it forms the basis of the plaintiff's claim").  Defendants
    request that the Court take judicial notice of the Reduction Letter (Exhibit B to the RFJN).

28

28811774.1

1   your home equity line of credit."  RFJN, Ex. B.  Purportedly based on "Plaintiff's belief,"

2   Winkler alleges that Citibank's decision "was solely based on a geographic area survey covering

3   home values in the area where Plaintiff's home was located" and that "had Citi assessed

4   Plaintiff's home, it would have seen that at least $1,000,000 in equity secured the $250,000

5   HELOC."  Compl. ¶ 22.  Critically, Winkler does not allege:  (i) the precise value of his home at

6   the time the HELOC was opened; (ii) the value of his home at the time of the alleged reduction;

7   or (iii) that there was not a significant decline in value during that time.  Accordingly, the

8   Complaint does not reveal any factual basis sufficient to conclude that either the value of the

9   "Property" or "the initial difference between the Credit Limit and the available equity (based on

10  the Property's appraised value)" (RFJN, Ex. A, ¶ 10(c)) had not significantly declined.

11          After receiving notification that his credit limit had been reduced, Winkler terminated his

12  HELOC with Citibank and filed this lawsuit.  Compl. ¶ 24.

13  **III.**     **ARGUMENT**

14          Defendants move to dismiss plaintiff's complaint in its entirety under Federal Rule of

15  Civil Procedure 12(b)(6) for failure to state a claim.  In addition, Defendants move to dismiss

16  Claim One and Claim Six (to the extent it seeks equitable relief) pursuant to Federal Rule of

17  Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because plaintiff lacks standing to

18  seek prospective relief.

19          To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual

20  allegations that, when accepted as true, "state a claim to relief that is plausible on its face."  *Bell*

21  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to

22  raise a right to relief above the speculative level."  *Id.* at 555.  "Threadbare recitals of the

23  elements of a cause of action, supported by mere conclusory statements, do not suffice."

24  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Doe v. Wal-Mart Stores, Inc.*, 572 F.3d

25  677, 683 (9th Cir. 2009) ("We need not accept Plaintiffs' unwarranted conclusion[s] in

26  reviewing a motion to dismiss.").

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY (09cv1999)

28811774.1

1       To survive a motion to dismiss for lack of standing, a complaint must plead the elements

2  of standing in "the manner and degree of evidence required" at the pleading stage of litigation

3  and provide "factual allegations of injury resulting from the defendant's conduct."  *Lujan v.*

4  *Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Winkler's complaint fails to satisfy these

5  standards.

6    **A.**    **CLAIMS ONE, TWO, AND THREE MUST BE DISMISSED FOR FAILURE TO STATE**

7          **A CLAIM**

8        **1.**    **Claims One And Two, Which Allege That The Reduction Of**

9               **Winkler's Credit Limit Violated TILA, Fail Because They Are**

10              **Untimely And Because Winkler Fails To Allege That His Home's**

11              **Value Did Not Significantly Decline.**

12       Claims One and Two, which allege violations of TILA and Regulation Z, must be

13  dismissed because the purported TILA violation occurred outside of the statute's one-year

14  limitations period and because Winkler fails to allege that his home's value did not significantly

15  decline.

16       First, a TILA action must "be brought in any United States district court . . . within one

17  year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also Hubbard v.*

18  *Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996).  "The phrase 'within one year from the date of

19  occurrence' is straightforward," and means that a plaintiff has one year from the date of the

20  alleged violation to file a TILA suit.  *Rust v. Quality Car Corral, Inc*., 614 F.2d 1118, 1119 (6th

21  Cir. 1980) (internal citations omitted).  Here, the alleged violation occurred when Citibank

22  reduced Winkler's HELOC on April 14, 2008 and subsequently notified him of that fact on

23  April 15, 2008.  RFJN, Ex. B.  However, Winkler failed to file his complaint until September 11,

24  2009.  Accordingly, because he did not bring this action within TILA's one-year limitations

25  period, the TILA counts must be dismissed.

26       Second, Winkler has failed to allege that a TILA violation actually occurred.  TILA

27  permits the provider of a HELOC to decrease the borrower's credit limit "during any period in

28

28811774.1

1    which the value of the consumer's principal dwelling which secures any outstanding balance is

2    significantly less than the original appraisal value of the dwelling." 15 U.S.C. § 1647(c)(2)(B).

3    Winkler concedes that Regulation Z[4] permits the lender to reduce the credit limit on a HELOC if

4    the value of the dwelling "declines significantly." Compl. ¶ 4. The Federal Reserve Board's

5    Official Staff Commentary to Regulation Z (12 C.F.R. Part 226, Supp. I) ("FRB's Official

6    Commentary") states that "what constitutes a significant decline . . . will vary according to

7    individual circumstances," but that "in any event," a "significant decline" has occurred "if the

8    value of the dwelling declines such that the initial difference between the credit limit and the

9    available equity (based on the property's appraised value for purposes of the plan) is reduced by

10   fifty percent." *Id.*, ¶ 5b(f)(3)(vi) at 6. The FRB's Official Commentary then provides an

11   example of a "significant decline": "[A]ssume that a house with a first mortgage of $50,000 is

12   appraised at $100,000 and the credit limit is $30,000. The difference between the credit limit and

13   the available equity is $20,000, half of which is $10,000. The creditor could prohibit further

14   advances or reduce the credit limit if the value of the property declines from $100,000 to

15   $90,000." *Id.*, ¶ 5b(f)(3)(vi) at 6. Thus, a significant decline may occur when there is either a

16   significant decline in the home's overall value or when there is a significant decline in the

17   amount of equity in the home (even if there is a relatively small overall decline).

18        Here, Winkler fails to allege that his home has not significantly declined in overall value

19   or in equity. Rather, Winkler asserts only that when the HELOC was opened he had a "first

20   _____

21   [4]        Regulation Z is the Federal Reserve Board's regulation implementing TILA. 12 C.F.R.
     Part 226. The Board also issues Official Staff Interpretations, which provide additional guidance
22   regarding implementation. 12 C.F.R. Part 226, Supp. I. The Supreme Court has said that,
     because "Congress . . . delegated expansive authority to the Federal Reserve Board to elaborate
23   and expand the legal framework governing commerce in credit," "absent a clear expression to
     the contrary" the Board's interpretations of TILA are entitled to deference. *Ford Motor Credit
24   Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980); *see also In re Wash. Mut. Overdraft Prot. Litig.*,
     539 F. Supp. 2d 1136, 1145 (C.D. Cal. 2008) ("[R]egulations issued by the Board under TILA
25   are entitled to an even greater degree of deference than that set forth in Chevron due to TILA's
     complexity, the need for uniformity, and evident Congressional intent."); *Penner v. Chase Bank
26   USA, N.A.*, Case No. C06-5092 FDB, 2006 U.S. Dist. LEXIS 53179, at *7 n.3 (W.D. Wash. Aug.
     1, 2006) ("The Commentary, which is put forth by the Board of Governors of the Federal
27   Reserve System is entitled to a great deal of deference.") (citing *Anderson Bros. Ford v.
     Valencia*, 452 U.S. 205, 219 (1981)).

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY (09cv1999)
28811774.1

1   mortgage for approximately $500,000 and a HELOC for $250,000" and that at that time his

2   home was worth "*over* $1,000,000."  Compl. ¶ 21 (emphasis added).  Winkler then alleges that at

3   the time of the reduction his "home was fully paid off and still worth *at least* $1,000,000."

4   Compl. ¶ 22 (emphasis added).  Not only does Winkler fail to provide the precise values of his

5   home at the time the HELOC was opened and when it was allegedly reduced, but he also fails to

6   allege that there was not a significant decline in his home's value or equity.[5]

7        Moreover, while Winkler claims that his first mortgage was paid off at the time of the

8   reduction, he neither alleges that he informed Citibank of the payoff nor alleges that the lien

9   securing the $500,000 first mortgage was released.  Accordingly, Winkler has not pleaded any

10  facts suggesting that  Citibank should have concluded that the decline in the value of his property

11  was offset in whole or in part by a reduction in the first mortgage.  Thus, Winkler has failed to

12  plead facts that, if true, would demonstrate that a violation of TILA occurred.  *See Iqbal*, 129 S.

13  Ct. at 1949 ("Where a complaint pleads facts that are merely consistent with a defendant's

14  liability, it stops short of the line between possibility and plausibility of entitlement to relief.")

15  (internal quotation marks omitted).

16       Nor can Winkler establish a TILA violation predicated on his baseless allegation that a

17  geographic area survey, as opposed to an appraisal, was used by Citibank to support reduction of

18  his line.  Compl. ¶¶ 35, 41.  As a preliminary matter, because Winkler has not alleged that his

19  home's value did not significantly decline, there can be no violation of TILA.  Moreover, as

20  plaintiff himself admits, the FRB's Official Commentary provides that Regulation Z "does not

21  require a creditor to obtain an appraisal before suspending credit privileges. " 12 C.F.R. Part 226,

22  Supp. I, ¶ 5b(f)(3)(vi) at 6; Compl. ¶ 5.  Instead, the relevant federal regulatory agencies

23
      [5]   In *Levin v. Citibank*, a case substantially similar to this one, the Northern District of
24    California considered a similar TILA claim predicated on the alleged reduction of HELOC credit
      limits.  *Levin v. Citibank, N.A.,* No. C-09-0350 MMC, 2009 U.S. Dist. LEXIS 85332 (N.D. Cal.
25    Sept. 17, 2009).  Although the *Levin* court dismissed substantial portions of the complaint (*see* p.
      13 *infra*), the court denied Citibank's motion to dismiss the TILA claim.  Notably, the TILA
26    allegations in Levin were different than Winkler's TILA allegations in one material respect.
      Levin specifically alleged that the property securing the HELOC "did not decline significantly in
27    value."  Levin Compl. ¶ 39.  Here, Winkler makes no such allegation.  Accordingly, Winkler's
      TILA claim must be dismissed.

28

28811774.1

1  governing lending institutions such as Citibank[6] expressly provide that valuation models are an

2  acceptable means of determining property values in this exact context.  *See* Federal Deposit

3  Insurance Corporation, FIL-58-2008, at 1 ("[A]utomated valuation models . . . may be used.");

4  *see also* May 24, 2005 (FIL-45-2005); October 5, 2006 (FIL-89-2006).  Accordingly, plaintiff's

5  allegations are insufficient to support a TILA claim.

6          **2.**        **Plaintiff Fails To Allege A Breach Of Contract Claim.**

7          Winkler's breach of contract claim (Claim Three), which is also premised on Citibank's

8  reduction of the HELOC and imposition of fees, suffers from the same flaws.  Winkler's

9  HELOC incorporated the FRB's Official Commentary, and therefore clearly provided that a

10  "significant decline" in home value permitted Citibank to reduce Winkler's credit limit.

11  Conspicuous by its absence is any allegation that Winkler's home did not significantly decline in

12  value or in equity.  Accordingly, Winkler's breach of the contract claim is not supported by the

13  factual allegations.[7]

14          Winkler's additional theories that Citibank breached the HELOC by "continuing to

15  charge fees and penalties associated with maintaining or closing reduced or frozen HELOCs"

16  and "refusing to rescind, prorate or refund any imposed fees, costs or penalties" after the

17  reduction are similarly defective.  Compl. ¶ 49.  The contract unambiguously states that Citibank

18  will charge an annual maintenance fee of $50 for the life of the HELOC and that Citibank will

19  impose an early termination fee to recoup its closing costs if the account is terminated "within 36

20  months of the date of this Agreement."  RFJN, Ex. A ¶ 5(a) and (f).  Winkler's HELOC is dated

21  April 16, 2007 (*id.*) and Winkler alleges that he closed it some time before filing the lawsuit – a

22

23  [6]     Citibank, N.A. is governed by the OCC because it is a national bank.  Complaint ¶ 11(c) (demonstrating that Citibank, N.A. is a national bank).

24  [7]     As discussed in note 5 *supra*, the Northern District of California has already considered a substantially similar action based on the alleged reduction of HELOC credit limits in *Levin*.

25  *Levin*, 2009 U.S. Dist. LEXIS 85332.  Levin also alleged a claim for breach of the HELOC. Although the *Levin* court denied Citibank's motion to dismiss that claim, the Levin allegations

26  were different than those alleged here.  Levin specifically alleged that the property securing the HELOC "did not decline significantly in value."  Levin Compl. ¶ 39.  Here, Winkler makes no

27  such allegation and, accordingly, his breach of contract claim must be dismissed.

28

28811774.1

1  date less than 36 months thereafter.  Compl. ¶ 24.  Therefore, the purported grounds for

2  Winkler's breach of contract claim fail, and the claim must be dismissed.

3  **B.**   **PLAINTIFF'S CLAIMS FOR BREACH OF THE IMPLIED COVENANT OF GOOD**

4  **FAITH AND FAIR DEALING UNDER CLAIM FOUR MUST BE DISMISSED BECAUSE**

5  **IT ALLEGES NOTHING MORE THAN A BREACH OF CONTRACT**

6  Under Claim Four, Winkler alleges that Citibank breached the implied covenant of good

7  faith and fair dealing by "reducing or freezing credit limits and "continuing to impose fees, costs,

8  and penalties associated with maintaining or closing the reduced or frozen HELOCs."  Compl.

9  ¶ 55.  Winkler's cause of action must be dismissed because the conduct allegedly underlying it is

10  governed by express contractual provisions.[8]

11  In order to assert a claim for breach of the implied covenant of good faith and fair

12  dealing, a plaintiff must allege: 1) the existence of a contract; 2) the plaintiff did all, or

13  substantially all of the significant things the contract required; 3) the conditions required for the

14  defendant's performance had occurred; 4) the defendant unfairly interfered with the plaintiff's

15  right to receive the benefits of the contract; and 5) the plaintiff was harmed by the defendant's

16  conduct.  CACI 325 (Dec. 2008 Edition); *see also Hougue v. Holtville*, Case No. 07cv2229

17  WQH (WMc), 2008 U.S. Dist. LEXIS 35258, at *9 (S.D. Cal. Apr. 30, 2008).  The covenant of

18  good faith and fair dealing cannot be "endowed with an existence independent of its contractual

19  underpinnings."  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000) (internal quotation marks

20  omitted).  Thus, a plaintiff "cannot state an implied duty of good faith claim [] where the subject

21  at issue is expressly covered by the contract, or where the contract is intentionally silent as to that

22  subject."  *McCoy v. Chase Manhattan Bank*, 559 F.3d 963, 971 (9th Cir 2009) (internal quotation

23  marks omitted); *see also Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007).

24

25

---

26  [8]      Winkler's HELOC states that "[t]he Agreement will be governed . . . by the laws of the State of Nevada."  RFJN, Ex. A ¶ 19.  However, Winkler resides in California and the conduct at

27  issue occurred there.  Thus, for purposes of this motion, we refer to both California and Nevada law.

28

-8-

1    Moreover, "[i]f the allegations do not go beyond the statement of a mere contract breach

2  and, relying on the same alleged acts, simply seek the same damages or other relief already

3  claimed in a companion contract cause of action, they may be disregarded as 'superfluous' as no

4  additional claim is actually stated." *Hougue*, 2008 U.S. Dist. LEXIS 35258, at *10 (quoting

5  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc*., 222 Cal. App. 3d 1371, 1393 (1990)).  In order to

6  state an additional claim for breach of the covenant of good faith and fair dealing, the plaintiff

7  must also allege conduct attributable to the defendant "that was prompted by a conscious and

8  deliberate act, which unfairly frustrated the purposes of the parties' written contract." *Id.* at *11

9  (internal quotations and alternation omitted).

10    In *Levin v. Citibank*,[9] the Northern District of California dismissed the plaintiff's claim

11  for breach of the implied covenant of good faith and fair dealing.  2009 U.S. Dist. LEXIS 85332.

12  There, the plaintiff alleged that the defendant "breached the implied covenant of good faith and

13  fair dealing implicit in [plaintiff's] HELOC" by reducing the HELOC limit and then "charging

14  him the early termination fee" to close the account.  *Id.* at *17.  The court noted that the HELOC

15  expressly stated that the defendant would impose an early termination fee if the account was

16  closed less than 36 months after it was opened (a provision identical to the one found in

17  Winkler's HELOC (RFJN, Ex. A ¶ 5(f)), and dismissed the good faith and fair dealing claim

18  finding that the defendant "was expressly permitted by the terms of the HELOC to charge

19  [plaintiff an early termination] fee." *Levin*, 2009 U.S. Dist. LEXIS 85332, at *17.

20    Winkler's claim for breach of the implied covenant of good faith and fair dealing is

21  identical to the one brought in *Levin*.  Like *Levin*, Winkler alleges that Citibank breached the

22  covenant by "reduc[ing] or freez[ing] HELOCs," continuing to charge "fees and penalties

23  associated with maintaining or closing reduced or frozen HELOCs," and "refusing to rescind,

24  prorate or refund any imposed fees, costs, or penalties."  Compl. ¶ 55.  All of these matters,

25

26  [9]    Levin's and Winkler's claims are so similar that Citibank is asking this Court to transfer
     Winkler's case to the Northern District of California.  See Citibank's Motion For Transfer to the
27  Northern District of California Pursuant to 28 U.S.C. § 1404(a) filed concurrently herewith.

28
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MEMORANDUM TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY (09cv1999)

however, are specifically governed by contract terms that are identical to ones in Levin.  *See* RFJN, Ex. A, ¶¶ 5, 10.

In sum, Winkler seeks to bootstrap a breach of contract action into a claim for breach of the implied covenant of good faith and fair dealing.  Because Winkler alleges that a contract governs the transaction between the parties, he cannot also pursue claims for breach of fair dealing based on alleged conduct explicitly governed by that contract.  As a result, Claim Four must be dismissed.

**C.      CLAIM SIX UNDER THE UCL—WHICH MERELY BOOTSTRAPS FROM WINKLER'S OTHER CLAIMS—MUST BE DISMISSED BECAUSE WINKLER HAS NOT ALLEGED ANY CONDUCT THAT WAS NOT AUTHORIZED BY TILA AND THE CONTRACT**

Winkler contends that the same conduct that allegedly underlies his TILA and breach of contract claims—i.e., the reduction of his credit limit and the imposition of fees—also supports a UCL claim.  More specifically, Winkler asserts (on behalf of himself and several alleged subclasses) a UCL claim based on allegations that (1) "Citi's reduction of Plaintiff and the Class' HELOC limits violated TILA and Regulation Z" (Compl. ¶ 64), (2) that "Citi continued to charge fees and penalties associated with maintaining or closing the significantly reduced or frozen HELOCs" (*id.* ¶ 65), and (3) that "Citi engaged in unfair, unlawful and fraudulent business acts and practices" (*id.* ¶ 66).

As we discuss above, however, Winkler's TILA claim falls outside the one year statute of limitations, and he has not alleged that the reduction of his credit limit departed from the explicit authorizations in TILA and the contract.  Thus, Winkler has not alleged any statutory violation that could support a claim of an unlawful business practice under the UCL. "Where a plaintiff cannot state a claim under the 'borrowed' law, [he] cannot state a UCL claim [for an unlawful business practice] either." *Rubio v. Capital One Bank (USA)*, 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008).

-10-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY (09cv1999)

28811774.1

1    More broadly, a defendant cannot be held liable for *any* UCL violation when another

2    statute "clearly permit[s] the conduct." *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.,* 20

3    Cal. 4th 163, 183 (1999); *see also*, *e.g.*, *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505

4    (1999) ("a business practice cannot be unfair if it is permitted by law"); *Williams v. Wash. Mut.*

5    *Bank,* No. Civ. 07-2418 WBS GGH, 2008 U.S. Dist. LEXIS 5325, *14 (E.D. Cal. Jan. 11, 2008)

6    (dismissing claims under the UCL after concluding that defendant's practices were authorized by

7    TILA; "plaintiff cannot assert a UCL claim if a federal or state law legalizes defendant's

8    practice"); *Suzuki v. Hitachi Global Storage Techs., Inc.*, No. C 06-07289 MHP, 2007 U.S. Dist.

9    LEXIS 51605, at *7-8 (N.D. Cal. July 17, 2007) ("Under California law, a defendant is not liable

10   under Section 17200 of the California Business and Professions Code for conduct that is clearly

11   permitted by the legislature."). As discussed above, TILA expressly *authorizes* the provider of a

12   HELOC to decrease the borrower's credit limit when the value of his property or the equity in

13   his home significantly decreases. *See* 15 U.S.C. § 1647(c)(2)(B)). Because the complaint does

14   not include factual allegations raising a "reasonable inference" of conduct falling outside these

15   express legislative authorizations (*Iqbal*, 129 S. Ct. at 1949), the UCL's safe harbor applies and

16   the UCL claim must be dismissed.

17   Furthermore, to the extent that Winkler attempts to premise his UCL claim on allegedly

18   "fraudulent" conduct, his claim fails for the additional reason that he has not plead with

19   specificity any facts that would support an allegation of fraud. A § 17200 claim based on a

20   theory of deceptive conduct is subject to Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

21   1125-27 (9th Cir. 2009) (dismissing UCL claim premised on fraudulent conduct because

22   complaint was not pled with specificity and "Rule 9(b)'s heightened pleading standards apply to

23   claims for violations of the . . . UCL."); *see also In re Actimmune Mktg. Litig.,* No. C 08-02376

24   MHP, 2009 U.S. Dist. LEXIS 103408, at *23-41 (N.D. Cal. Nov. 6, 2009). Here, Winkler makes

25   the bald assertion that Citibank purportedly engaged in fraudulent conduct by making

26   "representations about the availability of credit through the HELOCs and the associated fees,

27   costs, and penalties [that] were false[.]" Compl. ¶ 66. This assertion is not supported by any

28

-11-

1    factual allegations.  Thus, Winkler's UCL claim also must be dismissed to the extent that it is

2    premised on allegedly fraudulent conduct.

3        **D.    CLAIM FIVE MUST BE DISMISSED BECAUSE A CLAIM FOR UNJUST**

4             **ENRICHMENT IS NOT ACTIONABLE WHERE A CONTRACT GOVERNS THE**

5             **PARTIES' TRANSACTION**

6            Winkler's unjust enrichment claim alleges that defendants "received and retained benefits

7    from Plaintiff" (Compl. ¶ 59) by "reducing and freezing HELOCs and continuing to charge fees

8    and penalties associated with" them (*id*. ¶ 60).[10]  This claim fails as a matter of law.  First,

9    certain California courts have determined that "there is no cause of action in California for unjust

10   enrichment."  *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003); *see also*

11   *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008) ("[U]njust enrichment is not a

12   cause of action."); *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) ("Unjust enrichment

13   is not a cause of action . . . or even a remedy, but rather . . . a general principle, underlying

14   various legal doctrines and remedies. . . .  It is synonymous with restitution.") (internal quotation

15   marks omitted); *but see Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 721-22 (2003) (upholding

16   cause of action for unjust enrichment).  "Unjust enrichment is a 'general principle, underlying

17   various legal doctrines and remedies,' rather than a remedy itself."  *Melchior*, 106 Cal. App. 4th

18   at 793 (quoting *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (1989)).

19   Accordingly, Winkler's claim fails as a matter of law.

20           Second, even to the extent that California courts recognize unjust enrichment as an

21   independent cause of action, Winkler's claim would still fail because such courts have stated that

22   an  unjust enrichment claim "does not lie where, as here, express binding agreements exist and

23   define the parties' rights."  *Cal. Med. Ass'n v. Aetna U. S. Healthcare of Cal., Inc.*, 94 Cal. App.

24   4th 151, 172 (2001); *see also LeasePartners Corp. v. Robert L. Brooks Trust Dated Nov. 12,*

25

26   [10]    As discussed in relation to Winkler's claim for breach of the duty of good faith and fair
     dealing (note 8 *supra*), the HELOC states that it is governed by Nevada law while the conduct at
27   issue occurred in California.  For this reason, this memorandum refers to both Nevada and
     California law.

28

-12-

1    *1975,* 113 Nev. 747, 755-56 (1997).  "When parties have an actual contract covering a subject, a

2    court cannot–not even under the guise of equity jurisprudence–substitute the court's own

3    concepts of fairness regarding that subject in place of the parties' own contract."  *Cal. Med.,* 94

4    Cal. App. 4th at 172 (internal quotation marks omitted).  The HELOC in this case expressly

5    permits line of credit reductions prompted by a significant decline in the value of a home

6    securing the account.  *See* RFJN, Ex. A ¶ 10.  The HELOC also expressly provides for the

7    imposition of fees associated with the HELOC.  See *id*. ¶ 5.  Thus, because Winkler alleges that a

8    contract governs the transaction between the parties, he cannot seek the quasi-contractual remedy

9    of unjust enrichment.

10          Finally, Winkler's unjust enrichment claim also fails because he cannot establish that

11   Citibank's alleged retention of annual fees or early termination fees was unjust.  As explained

12   above, the HELOC clearly states that an early termination fee will be imposed if the account is

13   terminated "within 36 months of the date of the Agreement," and nothing in the agreement

14   creates an exception to that general term.  RFJN, Ex. A ¶ 5(f).  Likewise, the HELOC also

15   expressly provides for the imposition of an annual fee, and nothing in the agreement provides

16   that payment of that fee would secure Winkler's right to draw from his account for any period of

17   time.  *Id.*  Instead, Winkler's HELOC expressly permits Citibank to reduce the HELOC limit

18   where his property value significantly declines.  "There is no equitable reason for invoking

19   [unjust enrichment] when the plaintiff gets the exchange which he expected."  *Peterson v. Cellco*

20   *P'ship,* 164 Cal. App. 4th 1583, 1593 (2008) (citing *Comet Theatre Enters., Inc. v. Cartwright*,

21   195 F.2d 80, 83 (9th Cir. 1952)).  Accordingly, Winkler's unjust enrichment claim must be

22   dismissed.

23          **E.      CLAIM ONE MUST BE DISMISSED IN ITS ENTIRETY AND CLAIM SIX MUST BE**

24                  **DISMISSED TO THE EXTENT IT SEEKS INJUNCTIVE RELIEF BECAUSE WINKLER**

25                  **LACKS STANDING TO PURSUE PROSPECTIVE RELIEF**

26          Winkler's claim for declaratory relief under TILA (Claim One) and for injunctive relief

27   under the UCL (Claim Six) also must be dismissed because Winkler does not have standing to

28

-13-

28811774.1

1   pursue prospective relief.  A federal court's power to act is limited by Article III's standing

2   requirements, which restrict federal jurisdiction to those cases in which the plaintiff can maintain

3   that his or her injury or the threat of future injury is "both real and immediate, not conjectural or

4   hypothetical."  *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted).

5   The plaintiff bears the burden "to establish his standing to seek an injunction."  *Walker v. Gates*,

6   No. CV-01-10904-GAF (PJWx), 2002 U.S. Dist. LEXIS 27443, at *21 (C.D. Cal. May 23, 2002)

7   (citing *Lujan*, 504 U.S. at 561).  In order to establish standing for injunctive or declaratory relief,

8   a plaintiff must demonstrate a "real and immediate threat of repeated injury."  *Lyons*, 461 U.S. at

9   102 (internal quotation marks omitted).  Thus, where plaintiffs seek "declaratory and injunctive

10  relief, they must demonstrate that they are realistically threatened by a *repetition* of the

11  violation."  *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (internal quotation marks

12  omitted).

13       The fact that a plaintiff seeks to represent a class of plaintiffs does not alter the

14  requirement to show real injury.  "[E]ven named plaintiffs who represent a class must allege and

15  show that they personally have been injured, not that injury has been suffered by other,

16  unidentified members of the class to which they belong and which they purport to represent . . . .

17  Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not

18  represent a class seeking that relief."  *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th

19  Cir. 1999) (en banc) (internal quotation marks omitted).

20       In *Nelsen v. King County*, 895 F.2d 1248, 1252 (9th Cir. 1990), for example, the Ninth

21  Circuit held that former treatment center residents who filed a class action alleging violations of

22  their civil rights under 42 U.S.C. § 1983 did not have standing to seek injunctive relief.  The

23  court concluded that in order to show a likelihood of repeated injury, the named plaintiffs would

24  have to demonstrate a real probability of returning to the center in the future, which would

25  require that they "remain within King County, remain indigent, begin drinking uncontrollably

26  several years after their discharge from the Center (and after they have testified that they are

27  *recovering* alcoholics) commit an alcohol-related offense, be prosecuted for that offense, be

28

-14-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY (09cv1999)

28811774.1

convicted, be offered the choice to reenter the Center, make that choice, *and* find that the conditions at the Center were the same as they allegedly were when Nelsen and Bullene were there in 1985 and 1986." *Id.* The court held that the named plaintiffs did not have standing to pursue injunctive relief because standing cannot be established based on "an extended chain of highly speculative contingencies." *Id.* at 1252.

Similarly, in *Levin v. Citibank*,[11] the Northern District of California dismissed a class action prayer for declaratory relief in an action nearly identical to this one. 2009 U.S. Dist. LEXIS 85332, at *5-6. In *Levin*, the named plaintiff sought "a declaration that [defendant's] use of AVMs and related mass reduction of HELOC credit limits, and/or failure to reinstate HELOC credit limits based on its own AVMs, violates TILA and Regulation Z." *Id.* at *5 (internal quotation marks omitted). Noting that the plaintiff had terminated his HELOC, the court concluded that "[b]ecause [plaintiff] and [defendant] no longer have a contractual relationship of any type, and because [plaintiff] does not include any allegation suggesting that, in the absence of such a relationship, there exists any possibility [defendant] will violate [plaintiff's] rights under TILA and/or Regulation Z in the future, the Court finds [plaintiff] has failed to allege facts sufficient to support a claim for declaratory relief." *Id.* at *5-6.

---

[11]     This court, like other courts within this Circuit, has been similarly faithful to Article III's standing requirements for injunctive relief. See, e.g., *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951-52 (S.D. Cal. 2007) (dismissing class action requesting injunctive relief under the UCL for alleged false advertising where it was unclear how prospective relief would redress the named plaintiff's injury when she was fully aware of the alleged misrepresentation and failed to allege that she intended to buy the advertised product in the future); *Stickwrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 997 (N.D. Cal. 2007) (dismissing an action for injunctive relief in a class action against a telephone provider where the named plaintiffs did not allege they subscribed to the defendant's service or that they intended to subscribe in the future); *Deitz v. Comcast Corp.*, Case No. 06-6352 WHA, 2006 U.S. Dist. LEXIS 94333, at *9 (N.D. Cal. Dec. 21, 2006) (dismissing claim for injunctive relief against a cable company where the named plaintiff in a class action no longer subscribed to defendant's cable services making possible future injury "too speculative and attenuated to warrant prospective relief"); *Walker*, 2002 U.S. Dist. LEXIS 27443, at *22 (dismissing claims for injunctive and declaratory relief where "[n]othing in [plaintiff's] complaint suggests that he faces an immediate threat of [repeated wrong]"); *Le v. Cal. Nurses Ass'n*, Civ. No. S-05-2625 DFL KJM, 2006 U.S. Dist. LEXIS 77321, at *10 (E.D. Cal. Oct. 12, 2006) (dismissing request for declaratory and injunctive relief against defendant's union policies where plaintiff was not employed by defendant and "[i]t [was] highly speculative that [plaintiff would] again ever apply for a union position with [defendant]").

-15-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY (09cv1999)

28811774.1

1    Here, too, Winkler cannot demonstrate a basis for future harm because he and Citibank

2  "no longer have a contractual relationship."  Winkler has paid off his HELOC and all related

3  fees.  Thus, in order to suffer injury again, Winkler would have to apply for a new HELOC from

4  Citibank and Citibank would have to decrease Winkler's credit limit based on a reduction in the

5  value of his home.  Because the possibility of future harm based on these contingencies is far too

6  speculative to support Article III standing, plaintiff's claim for declaratory and injunctive relief

7  must be dismissed.

8    **F.    WINKLER'S CLAIMS AGAINST CITIGROUP, CITIMORTGAGE, AND DOES 1**

9    **THROUGH 50 MUST BE DISMISSED BECAUSE HE HAS NOT ALLEGED ANY**

10    **WRONGS BY THOSE DEFENDANTS.**

11    Winkler does not allege any stand-alone claims against Defendants Citigroup (Citibank's

12  parent company, *see* Compl. ¶ 15), CitiMortgage (another Citigroup subsidiary, *see id.* ¶ 17), or

13  Does 1 through 50 (unidentified agents of defendants, *see id.* ¶ 19).  Instead, he impermissibly

14  seeks to impute the purported actions of Citibank to its parent company, another subsidiary, and

15  other unidentified John Does without alleging any facts that support wrongdoing.[12]  These

16  allegations fail, and all claims against these other defendants should be dismissed.

17    First, with regard to Citigroup, it is black letter law that a "parent corporation (so-called

18  because of control through ownership of another corporation's stock) is not liable for the acts of

19  ─────────────────────

20  [12]    In paragraph 20 of the complaint, Winkler makes conclusory allegations that "[a]ll
defendants . . . aided and abetted, encouraged and rendered substantial assistance to other
defendants in breaching their obligations to Plaintiff . . . [and] acted with an awareness of the

21  primary wrongdoing and realized that its conduct would substantially assist the accomplishment
of the wrongful conduct."  Compl. ¶ 20.  "Under California law, liability for aiding and abetting

22  depends on proof that defendant had actual knowledge of the specific primary wrong the
defendant substantially assisted.  Liability is found when the defendant knew that a tort had been,

23  or was to be, committed, and acted with the ***intent*** of facilitating the commission of that tort."
*Quest Commc'n v. Herakles, LLC,* No. 2:07-cv-00393-MCE-KJM, 2008 WL 3864826, at *7

24  (E.D. Cal. Aug. 19, 2008) (emphasis added; internal quotation marks and citation omitted).
"Mere knowledge that a tort is being committed and the failure to prevent it does not constitute

25  aiding and abetting."  *Id.*  Winkler's conclusory allegation that defendants "acted with
awareness" (Compl. ¶ 20) "does not satisfy the actual knowledge pleading requirement" because

26  it "fails to identify the primary wrong and is not otherwise supported by the rest of the complaint,
which fails to allege the [defendants] knew" about the alleged wrongdoing.  *Casey v. U.S. Bank*

27  *Nat'l Ass'n,* 127 Cal. App. 4th 1138, 1153 (2005).

28

-16-

1   its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (describing corporate

2   separateness as "a general principle of corporate law deeply 'ingrained in our economic and legal

3   systems'").   "[T]he corporate veil may be pierced and the shareholder held liable for the

4   corporation's conduct" only in certain situations, such as where "the corporate form would

5   otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the

6   shareholder's behalf." *Id.* at 62. Because Winkler does not allege the rare circumstances that

7   might authorize the corporate veil to be pierced, the Court should dismiss all claims against

8   Citigroup.

9          Second, with regard to all defendants other than Citibank, Winkler does not allege that he

10   entered into a contract with or became indebted to any of them or that they made or failed to

11   make any representations to him.  Instead, Winkler lumps these defendants with Citibank

12   through the use of the catch-all "Citi" tag.  "Plaintiffs cannot escape" their pleading burdens "by

13   using the term 'defendants' to apply to numerous parties without any specific allegations as to [a

14   particular defendant]." *Jung v. Ass'n of Am. Med. Coll.*, 300 F. Supp. 2d 119, 163 (D.D.C.

15   2004); *see also In re Cal. Title Ins. Antitrust Litig.*, No. C 08-01341 JSW, 2009 U.S. Dist.

16   LEXIS 43323, at *27-29 (N.D. Cal. May 21, 2009).  Yet, that is precisely how Winkler proceeds,

17   asserting claims against "Citi" without alleging the defendants' specific purported roles.  Such

18   group pleading cannot survive, and the Court should grant this motion to dismiss with respect to

19   all defendants.

20   **IV.    CONCLUSION**

21          For the foregoing reasons, defendants' motion should be granted and plaintiff's complaint

22   dismissed in its entirety.

23   DATED:   December 14, 2009                    MAYER BROWN LLP

24

25                                                        By: s/ *Christopher P. Murphy*
                                                                Christopher P. Murphy
                                                                Lisa W. Cornehl

26
                                                        Attorneys for Defendants
27                                                      CITIGROUP INC., CITIMORTGAGE, INC. and
                                                        CITIBANK, N.A.

28

-17-